PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>KENNETH BASH,<br><br>                              Defendant. | CASE NO.  1:20-CR-00238-JLT<br><br>UNITED STATES' OPPOSITION TO THE DEFENDANT'S MOTION TO SEVER<br><br>DATE: July 15, 2024<br>TIME: 10:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.      INTRODUCTION

The United States files this Opposition to defendant Kenneth Bash's Motion to Dismiss.  ECF 1053.  The defendant's motion to dismiss should be denied because the defendant has failed to demonstrate that he is entitled to such relief.  Defendant Bash is an Aryan Brotherhood (AB) associate working for and directly under AB members in order to gain membership into the AB.  As such, Bash conspired with AB members in order to conduct the affairs of the AB enterprise and to promote and further that enterprise.

## II.      BACKGROUND

Between September 17, 2020 and November 19, 2020, defendant Kenneth Bash and others were targets of a wiretap investigation conducted by federal and state law enforcement agencies. During the course of the wiretap, Bash was intercepted communicating over contraband cell phones which defendant was using while incarcerated at Salinas Valley State Prison. Throughout the two-month

1  wiretap, numerous calls and texts were intercepted detailing Bash's criminal activity for and on behalf of

2  the Aryan Brotherhood (AB).  During these communications, Bash directly communicated with AB

3  members Todd Morgan, Jayson Weaver, Waylon Pitchford, and others. Bash followed orders from the

4  AB members, sought approval of activity from AB members, and facilitated criminal activity both

5  within California state prisons and on the streets of California as elsewhere, in order to advance within

6  the enterprise.

7        On November 19, 2020, Bash and others were arrested after the conclusion of the wiretap

8  investigation. A subsequent Indictment charged Bash and others with drug trafficking and other related

9  offenses.

10        On May 11, 2023, a grand jury returned a detailed Second Superseding Indictment against the

11  defendant and co-defendants charging them with participating in a RICO conspiracy in violation of 18

12  U.S.C. § 1962(d), and other related charges, in violation of 18 U.S.C. § 1959.  ECF 641, 656.  The

13  Second Superseding Indictment contains a detailed description of the government's theory and evidence

14  of the Aryan Brotherhood as a criminal enterprise, including facts about its formation, membership,

15  command structure, codes of conduct, purposes, symbols, and method and means of operation.  ECF

16  656, at 2–5.  The Second Superseding Indictment also describes defendant's and co-defendants' roles

17  and activities within the enterprise.  ECF 656, at 5–8.  The Second Superseding Indictment additionally

18  contains information regarding the murder of four individuals, and the conspiracy to murder an

19  additional individual, as contained in Counts Two through Six, and drug trafficking related charges

20  stemming from the 2020 wiretap investigation, as contained in Counts Seven through Fourteen.  ECF

21  656, at 12-22.  Further, the Second Superseding Indictment contains allegations of conduct relating to

22  the furtherance of the Aryan Brotherhood (AB) enterprise and the affairs of the enterprise, detailed

23  within the RICO conspiracy charged in Count One, and also charged in the subsequent counts within the

24  Second Superseding Indictment.

25        On May 2, 2024, defendant Bash filed the instant motion requesting the dismissal of Count One

26  of the Second Superseding Indictment.  The motion argues that Bash's at no time "knowingly agreed to

27  facilitate a scheme which includes the operation or management of a RICO enterprise" or "conspire with

28  AB members to conduct AB affairs in any particular manner", nor did Bash take part in "any agreement

UNITED STATES' OPPOSITION TO
DEFENDANT BASH'S MOTION TO DISMISS

by AB members as to how the affairs of the Aryan Brotherhood should be conducted."  Mtn. at 2-4.

## III.   ARGUMENT

Bash is charged with RICO conspiracy as alleged in Count One because he and others committed a series of acts and transactions conducted in furtherance of Aryan Brotherhood (AB) enterprise activity. The offenses charged in the Second Superseding Indictment name AB members or associates, working on behalf of and for the furtherance of the AB.

At the time of the charged offenses, Bash was an incarcerated AB associate who had been ordering and facilitating criminal activity on the streets throughout areas of California and other states. During the course of the conduct alleged in the Second Superseding Indictment, defendant was working on behalf of the AB in order to gain membership into the AB. He exercised influence over members of white criminal street gangs, such as co-defendant Derek Smith, that associate with the AB, and is closely entwined with the structure and activity of the AB enterprise.

Count One of the Second Superseding Indictment charges defendant and co-defendants with conspiring to violate 18 U.S.C. § 1962(c) – conspiring "to conduct and participate, directly and indirectly, in the conduct of the affairs of the Aryan Brotherhood through a pattern of racketeering activity," in violation of § 1962(d). ECF 656. To prove a violation of § 1962(c), the government must prove four elements:

1. There was an on-going enterprise with some sort of formal or informal framework for carrying out its objectives consisting of a group of persons associated together for a common purpose of engaging in a course of conduct;

2. The defendant was employed by or associated with the enterprise;

3. The defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. To conduct or participate means that the defendant had to be involved in the operation or management of the enterprise; and

4. The enterprise engaged in or its activities in some way affected commerce between one state and another state.

Ninth Cir. Model Crim. Jury Instr. No. 8.161.

"A RICO conspiracy under § 1962(d) requires only that the defendant was 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *United States v.*

UNITED STATES' OPPOSITION TO
DEFENDANT BASH'S MOTION TO DISMISS

*Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005)).  "[T]he point of making the government show that the defendants ha[d] some knowledge of the nature of the enterprise[ ] is to avoid an unjust association of the defendant with the crimes of others." *Id.* (citation omitted).  "Nonetheless, the definition of a RICO enterprise has wide reach and is to be liberally construed to effectuate its remedial purposes." *Id.* (quotation omitted).[1]  RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "An associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.' " *Christensen*, 828 F.3d at 780 (quotations omitted).

Proof of an overall RICO agreement is drawn from admissions and substantial layers of evidence demonstrating "that the key participants and the method of operation remained constant throughout the conspiracy." *Fernandez*, 388 F.3d at 1226.

The AB and the individuals, like the defendant, who associate with it for criminal purposes constitute an "enterprise" as defined by § 1961(4).  Specifically, defendant was part of a group of people associated in fact, who engaged in, and whose activities affected, interstate commerce.

Throughout the course of the wiretap investigation described above, defendant was intercepted in text and calls repeatedly using the term "Brand" to describe the AB enterprise, and referenced drugs or profits from criminal activity defendant was conducting as belonging to "the Brand".  Wiretap interceptions also indicated that defendant was working directly under AB member Todd Morgan, as well as at times for Jayson Weaver and Waylon Pitchford, and various intercepted communications indicated that Bash knew that his membership into the AB was influenced by Morgan, Weaver, and Pitchford.  Furthermore, intercepted communication indicated that defendant knew that co-defendants, including Kenneth Johnson, were AB members.  Moreover, because defendant knew about Morgan's

---

[1]       "The RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise." *United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002).  For example, the Ninth Circuit affirmed a RICO conspiracy conviction where the wife of a gang member "collected protection money for the [enterprise] on behalf of her husband," "passed messages" among enterprise members, "smuggled drugs into prison[,] and accepted payment for drugs sold on the street." *Christensen*, 828 F.3d at 781 (quoting *Fernandez*, 388 F.3d at 1230).

UNITED STATES' OPPOSITION TO
DEFENDANT BASH'S MOTION TO DISMISS

and the co-defendants' status in the AB, interceptions made it clear that defendant understood that the drugs that he arranged to be trafficked, and the profits gained from other criminal ventures, such as robberies and fraud, belonged to the enterprise.  In such circumstances, a jury can reasonably infer that defendant "knew, or had reason to know, that [his] benefits were probably dependent upon the success of the entire operation." *Fernandez*, 388 F.3d at 1226.

Wiretap interceptions show that on various occasions, Bash and previous co-defendant Stephanie Madsen arranged for the transportation and distribution of methamphetamine, which Madsen acquired and then transferred to individuals working for defendant.  Communications between Bash and Smith discussed the acquisition of heroin and methamphetamine and a plan to throw those drugs over the prison wall at Salinas Valley State Prison, where Bash was housed with Morgan and other AB members. Also intercepted were communications between defendant and AB members Jayson Weaver and Todd Morgan, where defendant expressly discussed drugs and other profits from criminal ventures belonging to the AB, such as describing drugs at various times during the conspiracy as belonging to the "big homies", referring to AB members.

In intercepted text messages on October 14, 2020, defendant asked previous co-defendant Jacob Renshaw where Renshaw and others went after picking up "the rest of the Brand's dope", referring to Renshaw picking up methamphetamine to transport it to Montana. Defendant, again, referred to the drugs as belonging to the AB. When the drugs Renshaw and others were transporting were seized by law enforcement, defendant made numerous calls in which he (Bash) expressed the trouble he would be in with the AB because the drugs had been seized before Bash could make money from the sale of those narcotics.

Finally, intercepted communications during the course of the wiretap indicate that defendant was working on behalf of the AB in order to gain membership into the enterprise.  In a September 24, 2020 call, Bash told previous co-defendant Joseph McWilliams that co-defendant Derek Smith is like Bash in that they are both intertwined with "the homies", and defendant explained that he (Bash) has to remind people that Bash and Smith are acting on behalf of the brothers, referring to the AB.  Additionally, multiple intercepted communications between Weaver and defendant discussed defendant becoming an AB member.  Also intercepted were calls between Morgan and other known AB members, where

UNITED STATES' OPPOSITION TO
DEFENDANT BASH'S MOTION TO DISMISS

Morgan discussed on numerous occasions that Morgan was pushing Bash as a member, referring to making Bash an AB member.

The conduct of defendant during the course of this investigation, as evidenced by communications intercepted during the wiretap, indicate that Bash "knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise", and "conspire[d] with AB members to conduct AB affairs," predominantly, the trafficking of narcotics. Moreover, the intercepted communications indicate that defendant did take part in an "agreement by AB members as to how the affairs of the Aryan Brotherhood should be conducted" by conducting business on behalf of and for the benefit of the AB in order to gain membership.

Finally, defendant's motion should be denied because it asks this court to decide questions of fact that should be left to a jury. "A motion to dismiss is generally 'capabale of determination' before trial 'if it involves question of law rather than fact.' Although the court may make preliminary findings of fact necessary to decide the legal questions presented by [a] motion, the court may not 'invade the province of the ultimate finder of fact.'" *United States v. Nukida,* 8 F.3d 665, 669, (9th Cir.) (1993), *quoting United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.) (*Shortf*), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986).

## A.  CONCLUSION

For the reasons stated above, dismissal is not warranted, and defendant's motion should be denied.


Dated:  May 16, 2024                                   PHILLIP A. TALBERT
                                                       United States Attorney


                                                By:  /s/ STEPHANIE M. STOKMAN
                                                     STEPHANIE M. STOKMAN
                                                     Assistant United States Attorney