PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>KENNETH BASH,<br><br>                Defendant. | CASE NO. 1:20-CR-238-JLT<br><br>MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(C)(1)(C) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

### I.   INTRODUCTION

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America, by and through Phillip A. Talbert, the United States Attorney for the Eastern District of California, and Assistant United States Attorney Stephanie M. Stokman, and Defendant, Kenneth Bash, and his attorney, Scott Quinlan, have agreed as follows:

    A.   **Scope of Agreement**

The defendant Kenneth BASH ("defendant") will enter guilty pleas to Counts One and Nine of the Third Superseding Indictment. Count One of the Third Superseding Indictment charges the defendant with a violation of 18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise. Count Nine of the Third Superseding Indictment charges the defendant with a violation of

21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Heroin. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence he will receive.

### C. Rule 11(c)(1)(C) Specific Sentence Agreement

The government and the defendant agree that a sentence of 324 months imprisonment, or the low end of the calculated guideline range, whichever is lower, would be appropriate in this case. Consequently, this plea agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Under the provisions of Rule 11(c)(3), the Court may accept or reject the Plea Agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the Court accepts the Plea Agreement, the Court will inform the defendant that it will embody in the judgment and sentence the disposition provided for in this Plea Agreement. If the Court rejects the Plea Agreement, the Court shall so advise the parties, allow either party the opportunity to withdraw from this Plea Agreement, and advise this defendant that

PLEA AGREEMENT 2

if he persists in a guilty plea, the disposition of the case may be less favorable to him than is contemplated by this Plea Agreement. In addition, under this agreement, if the Court rejects the Plea Agreement, the government reserves the right to withdraw from this Plea Agreement and proceed on the charges outlined in the Third Superseding Indictment.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the defendant will enter guilty pleas to Counts One and Nine of the Third Superseding Indictment. Count One of the Third Superseding Indictment charges the defendant with a violation of 18 U.S.C. § 1962(d) – Conspiracy to Participate in a Racketeering Enterprise. Count Nine of the Third Superseding Indictment charges the defendant with a violation of 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Heroin. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached as Exhibit A are true and correct. Exhibit A is incorporated here by reference.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and agrees that he will remain into custody upon the entry of his plea.

### B. Sentencing Recommendation

The government and the defendant will jointly recommend a sentence of 324 months incarceration, or the low end of the calculated guideline range, whichever is lower.

## C. Fine

The parties agree that the defendant does not have the ability to pay a fine and is not likely to become able to pay a fine. Therefore, imposition of a fine should be waived. U.S.S.G. § 5E1.2(a).

## D. Special Assessment

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

## E. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph,

notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.   THE GOVERNMENT'S OBLIGATIONS

#### A.   Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts as to the defendant in the Third Superseding Indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.E (Defendant's Violation of Plea Agreement) and VII.B (Waiver of Appeal) herein.

#### B.   Recommendations

##### 1.   Incarceration Range

The government and the defendant will jointly recommend a sentence of 324 months imprisonment, or the low end of the calculated guideline range, whichever is lower.

#### C.   Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement

PLEA AGREEMENT                                    5

bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.  ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty.

Count One - Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d):

(1)   The Aryan Brotherhood is a criminal enterprise;

(2)   The enterprise or its activities affected interstate or foreign commerce;[1]

(3)   The defendant knowingly agreed that either the defendant or another person would be associated with the enterprise;[2] and

(4)   The defendant knowingly agreed that either he or another person would conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have some sort of framework, formal or informal, for carrying out the enterprise's objectives.

The government is not required to prove that the parties to or members of the alleged agreement or conspiracy were successful in achieving any or all of the objects of the agreement or conspiracy.

"Racketeering activity" refers to certain felonies under state or federal law, including any crimes involving murder, robbery, or drug trafficking. A "pattern of racketeering activity," requires proof of

---

[1] It is not necessary for the defendant himself to have engaged in interstate or foreign commerce or for him to have known that the enterprise was engaged in interstate or foreign commerce. Only a minimal effect on commerce is required, and the effect need only be probable or potential, not actual. It is not necessary to prove that the defendant's own acts affected interstate commerce as long as the enterprise's acts had or would have had such an effect.

[2] A person is "associated with" an enterprise when, for example, he joins with other enterprise members and knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.

the following beyond a reasonable doubt:

    (1)    At least two acts of racketeering were committed;

    (2)    The acts of racketeering had a relationship to each other that posed a threat of continued criminal activity; and

    (3)    The acts of racketeering embraced the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics.

The government is not required to prove that the defendant personally committed, or agreed to personally commit, two or more racketeering acts.

The following special sentencing factors apply:

    (1)    Beginning on a date no later than on or about October 1, 2020, and continuing to on or about October 4, 2020, defendant unlawfully, willfully, and intentionally aided and abetted a conspiracy to kill Victim-3 with malice aforethought.

    (2)    ~~Beginning on a date no later than on or about December 1, 2019, and continuing to on or about February 1, 2020, defendant unlawfully, willfully, and intentionally aided and abetted a conspiracy to kill Victim-8 with malice aforethought.~~ [initialed KS 8/19/24]

    (3)    Beginning on a date no later than on or about September 1, 2020, and continuing through at least on or about November 19, 2020, defendant conspired with others to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine (actual), and 500 grams or more of a mixture or substance containing methamphetamine.

PLEA AGREEMENT         7

Count Nine - Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1):

(1) Beginning no later than on or around September 1, 2020 and continuing to at least November 19, 2020, there was an agreement between two or more persons to distribute and possess with intent to distribute at least 50 grams of methamphetamine (actual), and 500 grams or more of a mixture or substance containing methamphetamine, and at least 100 grams or more of a mixture or substance containing heroin; and

(2) The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

"To distribute" means to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in that transaction.

The defendant fully understands the nature and elements of the crimes charged in Counts One and Nine of the Third Superseding Indictment to which he is pleading guilty, together with the possible defenses to those charges, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty on Count One

The maximum sentence that the Court can impose on Count One is up to 20 years in prison, a fine of up to $250,000, a period of supervised release of at least 3 years, and a special assessment of $100.

### B. Maximum Penalty on Count Nine

The maximum sentence that the Court can impose on Count Nine is a mandatory minimum of 10 years up to life in prison, a fine of up to $10,000,000, a period of supervised release of at least 5 years, up to life, and a special assessment of $100. The charge in Count nine carries a 10- year mandatory minimum sentence, absent a motion by the government for reduction under 18 U.S.C. § 3553(e). In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### C. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during

PLEA AGREEMENT                                8

the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five additional years in prison per revocation.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives him a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his pleas, however, to give up the right to appeal any aspect of the guilty pleas, conviction, or sentence imposed in this case.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

understands that these two circumstances occur infrequently and that in all other cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.E (Defendant's Violation of Plea Agreement) herein.

### VIII.   ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

### IX.   APPROVALS AND SIGNATURES

**A.   Defense Counsel:**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 8-19-24

_____
W. SCOTT QUINLAN
Counsel for Defendant

**B.   Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

PLEA AGREEMENT                           10

Finally, I am satisfied with the representation of my attorney in this case.

Dated: 8/19/24

KENNETH BASH
Defendant

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: August 20, 2024

PHILLIP A. TALBERT
United States Attorney

STEPHANIE M. STOKMAN
Assistant United States Attorney

EXHIBIT "A"
Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Kenneth BASH admits that beginning no later than on or about November 2019 and continuing to November 2020, there was an agreement between two or more persons to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(c). BASH joined the agreement knowing of its purpose and intending to help accomplish that purpose.

More specifically, BASH admits that he knew that co-conspirators were Aryan Brotherhood ("AB") members based upon their long-time association and based upon admissions made by the co-conspirators to BASH, and BASH's association with the AB. During this conspiracy, both BASH and the co-conspirators were incarcerated. BASH understood that the drugs that he was trafficking and the proceeds from that trafficking and from theft related proceeds predominantly belonged to the AB. Between September 1, 2020 and November 19, 2020, BASH knowingly and intentionally arranged for the transportation and distribution of drugs and collected drug money, as well as money from theft including fraud, for AB members, including AB members who were incarcerated.

As part of this criminal agreement, BASH admits that (1) he knowingly associated with the AB; (2) the AB was a criminal enterprise regularly engaging in a pattern of racketeering activity including murder, assault, conspiracy to commit murder, burglary, extortion, and drug trafficking; (3) he knowingly agreed to participate in the conduct of the affairs of the AB by conspiring to acquire and distribute methamphetamine and heroin on behalf of the AB and delivering the proceeds from this drug trafficking to the AB and its members, conspiring to commit and committing violent acts on behalf of the AB and to gain status with the AB, and conspiring to commit and committing theft related offenses on behalf of the AB; (4) these activities affected interstate commerce in that they took place in a number of different states; and (5) he was aware of the essential nature and scope of the AB's criminal enterprise and intended to participate in it.

Beginning no later than on or about October 1, 2020 and continuing to October 4, 2020, BASH knowingly agreed with others to provide a firearm to a co-conspirator at the direction of other AB member co-conspirators in order for the firearm to be used against an individual who disrespected the AB by harming one of the co-conspirator's family members.

Beginning no later than on or about May 2020 and continuing to June 2020, BASH knowingly agreed with others to arrange and commit a robbery of a residence in Alabama in order to obtain money, firearms, and/or others items of value.

Beginning no later than on or about September 1, 2020 and September 20, 2020, BASH knowingly agreed with others to arrange and commit an arson of a vehicle of an individual who owed debts to BASH.

~~Beginning no later than on or about January 2020, and continuing to January 6, 2020, BASH knowingly agreed with others to arrange and commit the stabbing of an individual as punishment for breaking the rules of the enterprise.~~

Beginning no later than on or about September 1, 2020 and continuing to November 19, 2020, BASH knowingly agreed with others to arrange and distribute methamphetamine and heroin to

# EXHIBIT "A"
## Factual Basis for Plea - Continued

individuals in various parts of California and elsewhere. BASH arranged the trafficking of methamphetamine and heroin through the Eastern District of California. Between September 2020 and November 2020, BASH communicated with AB member co-conspirators and committed drug trafficking crimes to benefit and enrich the co-conspirators and other AB members.

The drugs stored, transported, and distributed at the direction of BASH were purchased with resources provided by AB members and their associates, including BASH. Because BASH was incarcerated, he depended upon others to distribute, transport, and store the AB's drugs outside of prison. BASH was also critical to the AB's drug operations because he arranged the purchase of large quantities of drugs, the transportation and storage of those drugs in various locations throughout California and elsewhere, and set up the distribution of those drugs along with directing others to distribute. BASH understood he was an important cog in the larger AB criminal enterprise.

BASH also admits that, between September 1, 2020 and November 19, 2020, there was an agreement between two or more persons to distribute and possess with intent to distribute methamphetamine and heroin. Specifically, BASH agreed with co-conspirators and other associates to knowingly and intentionally distribute methamphetamine and heroin in Fresno County, to Salinas Valley State Prison, in Southern California, and to Montana. BASH joined the agreement knowing of its purpose and intending to help accomplish that purpose. As part of that drug trafficking agreement, BASH admits that he committed the following criminal acts:

(1) Between September 1 and September 22, 2020, BASH arranged for approximately 7 pounds of methamphetamine to be brough to Fresno, California for further distribution.

(2) Between September 1 and September 24, 2020, BASH arranged for one pound of methamphetamine and 114 grams of heroin to be brought into Salinas Valley State Prison through co-conspirators. *This meth was part of the 7 pounds referred to in paragraph 1.*

(3) Between September 1 and November 9, 2020, BASH arranged for approximately 21 pounds of methamphetamine to be distributed to Montana.

I have reviewed the Factual Basis in Exhibit A and, as far as my own conduct is concerned, I adopt it as a true and correct statement of my crimes.

Dated: 8/19/2024

KENNETH BASH
Defendant

PLEA AGREEMENT                                A-2