PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON BANNICK, et al,<br><br>Defendants. | CASE NO. 1:20-CR-00238-JLT<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S REQUEST FOR TRIAL GROUPING<br><br>DATE:<br>TIME:<br>COURT: Hon. Jennifer L. Thurston |

### I.    INTRODUCTION

The United States files this Response to defendant Brandon Bannick's request for the Court to order trial groupings.  ECF 1181.

### II.    STATEMENT OF FACTS

On May 29, 2024, a grand jury returned a detailed Third Superseding Indictment against the defendants charging them with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), and Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959.  ECF 1098.  The Third Superseding Indictment contains a detailed description of the government's theory and evidence of the Aryan Brotherhood as a criminal enterprise, including facts about its formation, membership, command structure, codes of conduct, purposes, symbols, and method and means of operation.  ECF 1098, at 2–5. The Third Superseding Indictment also describes the specific defendants' roles and activities within the enterprise.  ECF 1098, at 5–9.  The Third Superseding Indictment additionally contains information

regarding the murder of six individuals, and the conspiracy to murder an additional individual, as charged in Counts Two through Seven. ECF 1098, at 14-18. Further, the Third Superseding Indictment alleges conduct relating to the furtherance of the Aryan Brotherhood (AB) enterprise and its affairs, detailed within the RICO conspiracy charged in Count One, and also charged in the subsequent counts.

On March 9, 2023, the Court designated this matter complex. ECF 549. On January 17, 2024, the Court set this matter for a jury trial to begin on January 14, 2025. ECF 916.

On July 26, 2024, defendant Bannick filed the instant request, asking the Court to order trial groupings, ostensibly to aid the orderly presentation of this case. The government opposes this request, however, as it is essentially a motion to sever without a proper basis. The Court has denied previous requests for severance in this case, as severance in a complex case of this nature, charging RICO conspiracy and murder in aid of racketeering, is not appropriate. ECF 818, 1009.[1] Nothing about the charges has changed sufficiently since the Court denied those severance motions to warrant a different ruling on this one. Finally, with trial approximately five months away, it is premature to designate trial groups in any event, as a final list of defendants taking the matter to trial is not yet known.

### III.  ANALYSIS

**A. All Defendants Should Proceed to Trial Together Because this Case Involves Legal and Factual Issues Common to Each.**

As this court has recognized, the defendants in this case are properly joined together and should be tried together. ECF 1009 at 3-4. Joint trials are the "preference in the federal system," for defendants indicted at the same time via one indictment. ECF 1009 at 3, citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Hernandez-Orellana*, 539 F.3d 994, 1001-02 (9th Cir. 2008) (There is a "well-established ... preference for joint trials where defendants have been jointly indicted"); *United States v. Baker*, 10 F.3d 1374, 1386 (9th Cir. 1993). "[J]oint trials of persons charged with committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve

---

[1] On October 13, 2023, the Court denied Johnson's motion to sever, which included a denial of severance requested on speedy trial grounds. On March 19, 2024, the Court denied Bash's motion to sever.

on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978).[2] For these reasons, joint trials remain the "rule," absent compelling countervailing reasons. *United States v. Brashier*, 548 F.2d 1315, 1324 (9th Cir. 1976) ("Joint trials are the rule rather than the exception.") (citing *United States v. Cruz*, 536 F.2d 1264, 1267 (9th Cir. 1976); *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir.), cert. denied, 425 U.S. 995 (1976)).

Given the preference for joint trials, Federal Rule of Criminal Procedure 14 permits a district court to grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) ("Rule 14 provides that, at the discretion of the trial judge, a severance may be ordered when it appears that a defendant may be significantly prejudiced by a joint trial with his codefendants").

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553-54 (9th Cir. 1986)). "Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials." *Id.* (citation omitted). As such, defendants carry a "heavy burden" to show that a joint trial is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy." *United States v. Moreno*, 618 F. App'x. 308, 310 (9th Cir. 2015).

In denying defendant Bash's motion for severance, the Court rightly reasoned that prejudice is not established by some difference in the evidence amongst defendants, because there is "overlap" between the government's proof of the AB enterprise and various acts done in furtherance of that enterprise. ECF 1009 at 4. Indeed, all the conduct charged in the Third Superseding Indictment is alleged to have been conducted in furtherance of AB activity, and thus constituted the same series of

---

[2] This presumes that the charging document properly joins defendants under Federal Rule of Criminal Procedure 8. That is the case here: the requirements of Rule 8(b) are satisfied in a RICO conspiracy indictment when each defendant participated in the affairs of the same enterprise through the commission of the alleged predicate racketeering acts that related to the same enterprise, even when the defendants are charged with different racketeering acts. *See United States v. Irizarry*, 341 F.3d 273, 287-90 (2d Cir. 2003). Rule 8(b) is construed liberally in favor of joinder. *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993).

acts or transactions. *See Felix–Gutierrez*, 940 F.2d at 1208 (noting that the term "transaction" is interpreted flexibly, and whether a "series" exists depends on whether there is a "logical relationship" between the transactions). Here, the RICO conspiracy is related to the other counts charged, and thus are part of the "same series of acts and transactions," making joinder proper. Accordingly, a single presentation of this overlapping evidence promotes efficiency.

### B. A Single Joint Presentation of Evidence Promotes Judicial Efficiency

As the Ninth Circuit and this Court have concluded, efficiency concerns counsel a single joint trial in conspiracy cases. In *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 1994), *modified*, 425 F.3d 1248 (9th Cir. 2005), the Court noted that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." (Citations omitted); ECF 1009 at 4 (quoting *Fernandez*). The substantial public interest in joint trials is that a joint trial expedites "the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1968), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602 (1968), *rehearing denied*, 395 U.S. 941, 89 S.Ct. 1602 (1969).

The Supreme Court has emphasized the concern that the government should not be unnecessarily put to the burden of presenting the same evidence and testimony twice either in the same trial (*McCree*, 476 U.S. at 181) or in separate trials (*Buchanan*, 483 U.S. at 418-19). *See Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933 (1993) (and authorities cited therein) (antagonistic or "mutually exclusive" defenses do not require severance as a matter of law; joint trials play a vital role in the criminal justice system by promoting efficiency and serving the ends of justice).

Moreover, "[t]here is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence." *Fernandez*, 388 F.3d at 1243.

UNITED STATES' RESPONSE TO DEFENDANT
BANNICK'S REQUEST FOR TRIAL GROUPINGS

4

In this case, a joint trial of Bannick and his co-defendants is appropriate because they are charged with a RICO conspiracy involving gang-related activity, crimes committed on behalf of and in furtherance of the enterprise, and crimes committed within the structure and rules of the enterprise. The very nature of evidence necessary to prove a RICO enterprise includes evidence of criminal activities engaged in by other members and associates of the Aryan Brotherhood. The Court should therefore deny Bannick's request for grouping and continue forward with a joint trial for all defendants.

### C. Grouping Would Not Promote Efficiency

Severing defendants into separate "grouped" trials at this stage would create inefficiency, expense, and could create danger to witnesses. Courts have discretion to sever multi-defendant trials into smaller grouped trials based on efficiency concerns, a process one court termed "Severance for Judicial Economy." *United States v. Bundy*, No. 216CR00046PALGMN, 2016 WL 7227882, at *13 (D. Nev. Dec. 13, 2016); *see also United States v. Mancuso*, 130 F.R.D. 128, 134 (D. Nev. 1990). Like any other type of severance, however, "grouping" must be supported by compelling circumstances to overcome the preference for joint trials. *See United States v. Dodd*, No. CR-13-6016-EFS-01, 2013 WL 5316182, at *1 (E.D. Wash. Sept. 19, 2013) (denying joint motion by government and defense to sever trial into three "allegedly factually distinct[] groupings"). No such compelling circumstance exists in this case at this time.

Bannick argues that the logistics of an 11-defendant trial would be challenging, and speculates that trial would be extended because any witness could face up to 11 cross-examinations. ECF 1181 at 8. But even if the trial were to involve all 11 defendants, Bannick's proffered reasons are insufficient. After all, each of those defendants would presumably have the right to cross-examine each witness, whether as part of a joint trial or in one of the multiple grouped trials. The difference is that, in the latter case, the government will have had to call the witness back to court multiple times for direct examination.

Additionally, trial groupings would result in two or more separate trials where the same evidence demonstrating the Aryan Brotherhood's membership, command structure, codes of conduct, purposes, and pattern of racketeering activity would have to be introduced to multiple different juries. Given this,

1  significant resources would be expended because of multiple, duplicative trials, while at the same time
2  creating the potential for a heightened risk to witness safety if some defendants are tried before others.

3  Indeed, Bannick's request for grouping highlights a another significant risk in doing so.  Bannick
4  notes that a trial of three Aryan Brotherhood members in the Sacramento Division of this Court required
5  37 court days, spread over more than two calendar months.  ECF 1181 at 3.  Should this case be severed
6  and grouped, it is unlikely that each group would require substantially less trial time.  This case does not
7  present a circumstance in which some small trials could last an appreciably shorter amount of time than
8  others; trying the case in multiple groups runs the risk of consuming court time for the better part of a
9  year.  Though a larger trial might very well last somewhat longer that the previous trial in the
10 Sacramento Division, it is not clear that any efficiency would be gained with multiple grouped trials.

11 Indeed, the nature of this trial weighs in favor of a single joint trial.  The case is complex,
12 involves voluminous discovery, and the government's reliance on the same evidence to prove the RICO
13 conspiracy allegations in Count One, as well as the murder allegations in Counts Two through Seven.
14 Witness safety concerns arise if witnesses are required to testify twice. The case here involves one count
15 of RICO Conspiracy, six counts of murder in aid of racketeering, occurring on four different instances,
16 and the conspiracy to murder in aid of racketeering. Given the structure of the AB, defendants charged
17 in the Third Superseding Indictment are both AB members charged with giving orders to murder, and
18 the AB associates who carried out those orders. These acts, along with other acts by defendants, and
19 defendants themselves are interwoven within the larger proof of the AB enterprise. Thus, the
20 government is opposed to trial groupings and the Court should deny the request by Bannick and other
21 defendants to sever and group the defendants in this case.

22 Should the Court be inclined to consider grouping the defendants at trial, the government is
23 prepared to discuss the most efficient and sensible way to do so.  As it is the government's evidence that
24 will drive much of the trial, the government is best positioned to understand which defendants logically
25 group with others, given the charges alleged and the evidence required to prove them.  The parties will
26 not be able to realize those efficiencies most completely, however, until trial is closer and the Court has
27 more clarity about which defendants will remain.

28

### D. Defendant Weaver's Motion to Continue

Additionally, the government acknowledges that defendant Weaver has filed a motion for continuance of the trial date due to the appointment of new counsel. The government believes that severing Weaver's case from those of the other AB members, at the very least but also as to the AB associates charged in this case, is not appropriate in this matter for the reasons set forth both above and within the government's opposition to the two defense severance motions filed previously and denied by this Court[3]. The government is aware that to represent defendant Weaver effectively, newly appointed counsel will need time to prepare. The government has been in communication with Weaver's new counsel and will continue to provide the assistance requested to facilitate counsel's preparation.

Given that, and the anticipation of the production of a large volume of discovery related to proof of the AB enterprise, the government is not opposed to a short continuance of the trial. It is the government's position that it would benefit all counsel on this matter to have additional time to review and prepare. Additionally, defendants continue to file motions for discovery, to which the government is responding. In the meantime, the government has been actively working with outside agencies to acquire any items that exist and are obtainable related to those discovery demands.[4]

### A. **CONCLUSION**

There is a strong preference for joint trials in the federal system and the defendant has presented no compelling reason to deviate from that norm at this time. A joint trial in this matter remains appropriate. If the Court determines at some point to grant the defense request, the government is prepared to advise the Court of the trial groupings that would create the most efficient and logical presentation(s) of the case.

---

[3] Additionally, any Speedy Trial concerns have been addressed by the Court in previous orders. The Speedy Trial Act excludes a "reasonable period of delay" for joint trials and when the ends of justice so require. 18 U.S.C. § 3161(h)(6), (h)(7). Section 3161(h)(7) excludes "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." Under this provision, "an exclusion [from the speedy trial clock] for one defendant applies to all co-defendants." *United States v. Butz,* 982 F.2d 1378, 1381 (9th Cir.1993).

[4] The government does not concede that all the defendants' discovery requests are warranted. To the extent there is a legal basis for any given request, however, and the government assesses there is not a risk to the safety or integrity of the case arising from the request, the government will provide all available materials requested that are within its discovery obligations.

The government does not oppose the motion to continue trial as, in either situation, newly-appointed counsel for Weaver will need additional time to prepare for this extensive trial. Weaver is intertwined with the other charged defendants in such a way that severance would not be appropriate, as it was not appropriate for the other defendants for whom the Court denied it.

Dated:  August 20, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ STEPHANIE M. STOKMAN
STEPHANIE M. STOKMAN
Assistant United States Attorney