JAMES S. THOMSON
California SBN 79658
Attorney and Counselor at Law
732 Addison Street, Suite A
Berkeley, California 94710
Telephone: (510) 525-9123
Facsimile:  (510) 525-9124
Email: james@ycbtal.net

TIMOTHY J. FOLEY
California SBN 111558
Attorney at Law
1017 L Street, Number 348
Sacramento, California 95814
Telephone: (916) 599-3501
Email: tfoley9@earthlink.net

Attorneys for Defendant
JUSTIN GRAY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cr-00238-JLT-SKO |
| Plaintiff, | **JUSTIN GRAY'S REPLY TO OPPOSITION TO MOTION FOR SEVERANCE** |
| vs. | **(Motion, Doc. # 1283)** |
| JUSTIN GRAY, et al. | Date: October 23, 2024 |
| Defendants. | Time: 1:30 pm |
| | Place: Hon. Jennifer L. Thurston |

Defendant Justin Gray, through counsel, has filed a motion for severance.  Doc. # 1283.  The government opposes the motion and has filed an opposition.  Doc. # 1296 ("Opposition").  Mr. Gray submits this reply.

## I.    SEVERANCE IS NECESSARY TO ASSURE A FAIR TRIAL.

The government's opposition relies primarily upon the standard argument that there is a preference for joint trials and the defendant bears a heavy burden to demonstrate prejudice and gain severance.  However, the government fails to acknowledge the enormity of the potential disparity in the charges and in the evidence here.

1    Preliminarily, it should be noted that the government devotes much of the

2    opposition to arguing that Federal Rule of Criminal Procedure 8(b) allows joinder.

3    Opposition, at 4-6.  As noted in the Motion, Mr. Gray is not asserting that Rule 8 has been

4    violated.  See Doc. # 1283, at 5, fn 4.

5    Rather, Mr. Gray is asserting that he cannot receive a fair trial, and any attempt at a

6    joint trial will violate the Constitution, in light of the disparity of evidence, the anticipated

7    admission of prejudicial evidence not relevant to the charges against him, and the

8    spillover effect of the government's presentation concerning the host of other charges and

9    other defendants.  Federal Rule of Criminal Procedure Rule 14 gives this Court the power

10   to separate Mr. Gray's trial from the RICO conspiracy trial if the joinder "appears to

11   prejudice" him.

12   The standard is not disputed.  Under *Zafiro v. United States*, 506 U.S. 534, 539

13   (1993), severance should be granted where there is a "serious risk" that joinder will

14   "prevent the jury from making a reliable judgment about guilt or innocence." *United*

15   *States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996).  "The prime consideration in assessing

16   the prejudicial effect of a joint trial is whether the jury can reasonably be expected to

17   compartmentalize the evidence as it relates to separate defendants, in view of its volume

18   and the limited admissibility of some of the evidence." *United States v. Escalante,* 637

19   F.2d 1197, 1201 (9th Cir. 1980); see *United States v. Brady*, 579 F.2d 1121, 1128 (9th

20   Cir. 1978).

21   "[G]rouping defendants who are part of a single conspiracy into a single trial

22   makes intuitive sense." *United States v. Green*, __ F.3d __, 2024 WL 3945118, at *7 (3d

23   Cir. Aug. 27, 2024).[1]  But Mr. Gray is not charged with the RICO conspiracy set forth in

24   Count 1, nor is he charged in Counts 4 through 13, nor is his name mentioned in the

25   forfeiture allegations.

26   _____

27   [1] As noted in the Motion, this Court's prior orders denying the severance motions
     brought by codefendant Johnson and codefendant Bash relied upon the fact that those
28   defendants are charged in the conspiracy count.  Doc. ## 818, 1009.

Justin Gray's Reply to Opposition to Motion for Severance

1    Importantly, Mr. Gray is not a "member" of the targeted enterprise, the Aryan

2    Brotherhood (AB).  Nor, despite the government's erroneous assertions otherwise, is he

3    an "associate" of this enterprise.  See Third Superseding Indictment, Doc. # 1098, at 2,

4    paragraph 3.

5         The Third Superseding Indictment does not charge Mr. Gray as a member or an

6    associate of the AB. On the contrary, the Indictment contains a paragraph that specifically

7    alleges the "defendants" who "knowingly agreed to associate with, and were each in fact

8    a member or an associate of, the AB."  Doc. # 1098, at 2, paragraph 3.  Paragraph 3 lists

9    those defendants as Messrs. Stinson, Johnson, Clement, Weaver, Pitchford, Collins,

10   Perkins, Bash, Bannick, and Smith.  Justin Gray is not in that group.

11        The Opposition nonetheless argues that "a joint trial of Gray and his co-defendants

12   is appropriate because they face charges related to and involving gang-related activity . . .

13   and crimes committed within the structure and rules of the enterprise, *of which Gray was*

14   *an associate*."  Opposition, at 9 (emphasis supplied).  This assertion is simply wrong.

15        Elsewhere the government claims that Mr. Gray's "association with the AB"

16   provides a "nexus" to the other "activities" in the indictment and thus reduces the unfair

17   prejudice.  Opposition, at 6.  Again, the actual allegations contradict the government's

18   assertion.

19        Mr. Gray is charged only with the Lomita double-homicide, Count 2 and Count 3,

20   that occurred on a single day in 2020.[2]  Yet, at the joint trial, the government would

21   introduce evidence of four additional murders (Counts 4 through 7), four further

22   conspiracies or orders to commit murder (Count 8, Paragraphs 20(b), 20(e), 20(t)), a

23   stabbing (Paragraph 20(c)), robberies (Paragraphs 20(g), 20(l)), a beating (Paragraph

24   20(m)), an arson (Paragraph 20(i)), and a legion of other violent or deceptive criminal

25

26

27        [2] Third Superseding Indictment, Doc. # 1098, at 14-15. The disclosed discovery
     indicates that the alleged murders of Victim-1 and Victim-2 set forth in these counts
28   occurred in Lomita, California.

1   acts that occurred over an eight year period, all inadmissible as to Mr. Gray.  The

2   prejudice is manifest and the unfairness is striking.

> This kind of prejudice is particularly injurious to defendants who are
> charged in only a few of the many counts, who are involved in only a small
> proportion of the evidence, and who are linked with only one or two of
> their co-defendants. The jury is subjected to weeks of trial dealing with
> dozens of incidents of criminal misconduct which do not involve these
> defendants in any way. As trial days go by, "the mounting proof of the guilt
> of one is likely to affect another."

7   *United States v. Branker*, 395 F.2d 881, 888 (2d Cir. 1968).

8   The court in *United States v. Gallo* discussed a similar situation in a RICO

9   conspiracy case involving multiple defendants, including some who only had minor roles:

> The difficulties of a complex, multifarious case such as this are
> compounded for those defendants against whom only a small portion of the
> evidence is relevant. The prejudice concomitant with the case's complexity
> is "particularly injurious" to defendants charged in a small proportion of
> the counts and who are implicated by only bits and pieces of the evidence.
> . . . "Inevitable prejudice" to the peripheral defendants is caused by "the
> slow but inexorable accumulation of evidence" against the major players.
> *United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965). The sheer volume
> of such evidence against cocconspirators, especially when the prejudiced
> defendants sit in court for weeks or months on end without their names so
> much as being mentioned, id., can so unbalance the scales that "no amount
> of cautionary instructions could . . . undo [ ] the harm. . . ." Id. at 758.
> Where the evidence against the "minor" defendants is "'so little or so
> vastly disproportionate' in comparison to that admitted against the
> remainder of the defendants," [Citation] . . . , the likelihood of spillover
> prejudice is greatly enhanced. See *United States v. Gilbert*, 504 F.Supp.
> 565 (S.D.N.Y.1980) (severing one of three defendants where
> "disproportionate involvement" in overall scheme raised substantial risk of
> prejudice by accumulation of evidence against codefendant). The courts
> must be scrupulous to avoid the spectre of guilt by association—or, more
> likely, guilt by confusion.

21   *United States v. Gallo*, 668 F. Supp. 736, 750 (E.D.N.Y. 1987); see *United States v.*

22   *Sampol*, 636 F.2d 621, 645-47 (D.C.Cir. 1980); *United States v. Donaway*, 447 F.2d 940,

23   943 (9th Cir. 1971); *United States v. Gray*, 173 F.Supp.2d 1, 9 (D.D.C. 2001).

24   Application of legal rules should not defy common sense.  The idea that a jury

25   could "compartmentalize" the evidence regarding the Lomita shootings and resist the

26   spillover taint of the four other murders and the bevy of violent criminal acts is utterly

27   fantastic.  The chance for confusion and spillover prejudice will be heightened by the fact

28   that three of the alleged RICO conspirators (Messrs. Johnson, Clement, and Bannick) are

1   also charged with Mr. Gray in Count 2 and Count 3, creating an indecipherable overlap in

2   the evidence.  "[T]he practical and human limitations of the jury system cannot be

3   ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968).

4   **II.     THE ASSERTED EFFICIENCY OF HAVING MR. GRAY JOINED**
        **WITH THE RICO CONSPIRACY TRIAL IS OVERSTATED.**

5

6       Mr. Gray is charged with two "VICAR" counts, 18 U.S.C. § 1959.  Such charges

7   necessitate some proof of the racketeering enterprise and its activities.  *United States v.*

8   *Banks*, 514 F.3d 959, 964 (9th Cir. 2008).

9       The government uses this aspect as a toehold to argue that any severance would

10  still require the prosecution to present evidence regarding the activities of the AB.  Thus,

11  even if the trial were limited to the double-shooting, the government would be "entitled to

12  present evidence at trial beyond the murder at the center of the charge" and could present

13  evidence of "crimes related to the proof of a racketeering enterprise."  Opposition, 11.[3]  It

14  is inconceivable, however, that a court would allow the government to introduce evidence

15  of four additional murders – none of which have any connection with Mr. Gray – to

16  demonstrate the nature of the racketeering enterprise.  See Rule of Evidence 403.

17      Rather, "[t]he government would not be able to introduce unlimited 'enterprise'

18  evidence at the individual trial of each defendant."  *Gallo*, 668 F. Supp. at  757.  "Despite

19  the alleged conspiracy, not all of the evidence as to each defendant comes in against each

20  codefendant."  *Id.*  "When the government introduces every bad act of an enterprise,

21  including those in which the defendant does not participate, it magnifies the potential for

22  imputing guilt to a defendant solely on the basis of the company he keeps and Fed.R.Evid.

23  403 is implicated."  *United States v. Flynn*, 852 F.2d 1045, 1054 (8th Cir. 1988),

24

25  ───────────────

26      [3] As the government puts it: "the evidence of the Aryan Brotherhood enterprise
    and its racketeering activity – including murders and conspiracies to commit murder –

27  will still be admissible at trial against defendant even if his case is severed because this
    evidence is direct proof of the elements of the existence of the AB enterprise."

28  Opposition, at 12.

abrogated by *Nat. Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994).

In fact, while pretrial preparation and investigation is ongoing, it appears that the evidence going to the Lomita shootings will be relatively limited when weighed against the fourteen separate violent racketeering acts set forth in the indictment.  See Doc. # 1283, at 8-9.  The notion that the government would repeat the full RICO conspiracy evidence, including the other murders and conspiracies to murder, at a trial on the two single-event VICAR counts (even if a court would allow such a thing) is not believable.

The *Gallo* opinion noted that, in such a situation, the inefficiency alleged by the government is overstated. There is every reason to believe that the admission of the "enterprise" evidence in a trial after the full RICO conspiracy trial would not be burdensome:

> The primary duplicative evidence . . . is the "enterprise" evidence which is introduced to show the existence, structure, and operations of the [criminal enterprise] . . . . The [later] trial is much smoother and more concise. The evidence in each case does not scatter about the various contours of the conspiracy. . . . More significantly, the later trials are certain to be shortened or even precluded by the earlier trial or trials. The government will get a better sense of what is effective, and where the strength of its proof lies. Prosecutors are more aware of what the jury responds to, and what it ignores. The court itself becomes much more familiar with the nature of the case and the evidence, thus enabling more expeditious and more efficient rulings. Duplicative and cumulative evidence becomes easier to identify and exclude. . . . Each successive trial moves at a quicker and smoother pace than the last.

*Gallo*, 668 F. Supp. at 757.

Weighed against the enormous unfairness of joining Mr. Gray in the RICO conspiracy trial, the burden of a second trial focused solely on the Lomita shootings is minimal, indeed minuscule.

## III.   INSTRUCTIONS CANNOT CURE THE UNFAIR PREJUDICE.

The government's additional argument is that the jury can be instructed to compartmentalize the avalanche of irrelevant, harmful evidence in such a way that Mr. Gray's small part in this complex and massive series of criminal activity can be properly assessed.  The government reminds us that juries are presumed to be able to follow instructions and that severance should only be granted where there has been a

1  demonstration that instructions will be insufficient to neutralize the prejudicial effect.

2  Opposition, at 9.

3     Yet, it is also true that the law recognizes situations where the risk that the jury

4  cannot follow instructions is real and must be acknowledged. *Bruton*, 391 U.S. at 135;

5  *United States v. Mayfield*, 189 F.3d 895, 905 (9th Cir. 1999).  This is such a situation.

6  Here, where ten other defendants are in a conspiracy, where fourteen different violent

7  criminal acts unrelated to Mr. Gray will be introduced, "[i]t is difficult for the individual

8  to make his own case stand on its own merits in the minds of jurors who are ready to

9  believe that birds of a feather are flocked together." *Krulewitch v. United States*, 336

10  U.S. 440, 454 (1949)(Conc. opn. of Jackson, J.).

11     In *Sampol*, the court rejected the idea that limiting instructions could have cured

12  the erroneous joinder.  "Although the judge faithfully instructed the jury to consider the

13  evidence against [the defendant] only in the light of the charges against him, such

14  instructions could not provide their intended protection against prejudice . . ." *Sampol,*

15  636 F.2d at 647.  As one court has noted: "The ultimate question is whether, under all the

16  circumstances of the particular case, as a practical matter, it is within the capacity of the

17  jurors to follow the court's admonitory instructions and accordingly to collate and

18  appraise the independent evidence against each defendant solely upon that defendant's

19  own acts, statements and conduct." *United States v. Kahaner*, 203 F. Supp. 78, 81

20  (S.D.N.Y. 1962).

21     Under the circumstances here, the Court should recognize that the jurors will be

22  unable to judge Mr. Gray's culpability in isolation if he is joined with the RICO

23  conspiracy trial.  Indeed, it is worth noting that the government, in its opposition to this

24  very motion, asserted that Mr. Gray is an AB associate even though the indictment does

25  not charge him as such.  There is a "substantial risk" that the jury would fare no better.

26  **IV.   CONCLUSION**

27     The constitutional right to a fair trial in front of an unbiased jury is not something

28  that should be brushed aside so that the judicial system can "resolve cases as quickly or

Justin Gray's Reply to Opposition to Motion for Severance

1  inexpensively as possible." *Green*, 2024 WL 3945118, at *5.  Rather than allow Mr.

2  Gray's constitutional rights to be violated, this Court should grant the motion for

3  severance and allow Mr. Gray's trial to go forward after the RICO conspiracy trial.

4

5  Dated: September 22, 2024                    Respectfully submitted,

6                                               */s/ James S. Thomson*

7                                               */s/ Timothy J. Foley*

8                                               _____
                                                JAMES J. THOMSON
                                                TIMOTHY J. FOLEY
9                                               Attorneys for JUSTIN GRAY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28