PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
JAMES R. CONOLLY
Assistant United States Attorneys
JARED ENGELKING
Trial Attorney, U.S. Department of Justice
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-00238-JLT-SKO |
| Plaintiff, | UNITED STATES' RESPONSE TO MOTION FOR SPECIFIC DISCOVERY [Docket No. 1348] |
| v. | DATE: December 4, 2024 |
| EVAN PERKINS, et al., | TIME: 1:00 p.m. |
| Defendants. | COURT: Hon. Sheila K. Oberto |

## I.      INTRODUCTION

The United States, by and through Assistant United States Attorneys Stephanie M. Stokman and James R. Conolly, and Trial Attorney Jared Engelking, submits its response to the motion for specific discovery, filed by defendant Evan Perkins, and joined by defendants Kenneth Johnson, Francis Clement, and Brandon Bannick ("defendants"). ECF 1348, 1356, 1370, and 1359.

## II.      FACTUAL BACKGROUND

### A.      Defendants are charged in a Third Superseding Indictment with RICO conspiracy offenses, including Murder in Aid of Racketeering

On May 29, 2024, a grand jury returned a detailed Third Superseding Indictment against the defendants charging them with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), and Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959. ECF 1098. The Third

Superseding Indictment contains a detailed description of the government's theory and evidence of the Aryan Brotherhood as a criminal enterprise, including facts about its formation, membership, command structure, codes of conduct, purposes, symbols, and method and means of operation.  ECF 1098, at 2–5. The Third Superseding Indictment also describes defendants' roles and activities within the enterprise. ECF 1098, at 5–9.

<b>B.   The Government Has Produced Extensive Discovery</b>

The government has produced extensive discovery relating to all aspects of the government's case against defendants.  As of the filing of this brief, the United States has produced items of discovery which include written reports, autopsy reports, search warrant affidavits, a large volume of audio recordings, photographs, videos, cell phone and social media search warrant returns, and other data and documents. Additionally, since the filing of defendant's Motion, and pursuant to the scheduling order governing such a production, the government produced on November 5, 2024, an extensive amount of Jencks material, Bates numbered PM_BASH_00000001 through PM_BASH_00003804.  This production included the names and statements of witnesses, including statements pertaining to the defendants' conduct and roles in the crimes charged in the Third Superseding Indictment.

The government remains committed to communicating with defense counsel and the coordinating discovery attorney, as well as complying with its discovery obligations.  The government has had extensive discussions with counsel regarding discovery, and as this Court is aware, those conversations have led to a multitude of discovery requests being worked out between the parties prior to the Court's involvement. Also due to those discussions, the government has sought discovery from the multitude of outside agencies involved in this investigation and has obtained discovery requested by counsel to the extent the government can do so.

As background to the issues in this motion for specific discovery, the government produced a large amount of discovery relating to the Lomita and Pomona murders, the incidents at issue in the Motion and joinder of the Motion at dockets 1348 and 1359, in November 2022 (beginning at Bates number BASH_0001212593), May and June 2023 (beginning at Bates number BASH_00017081), and July 2024 (beginning at Bates number BASH_00041537), as well as smaller productions of materials

relating to these incidents throughout the two year period since the filing of the First Superseding Indictment in September 2022.

### III.   <u>LEGAL STANDARDS</u>

"There is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Rather, discovery is limited by statute, rules of criminal procedure, and case law to four categories: (1) materials discoverable under Rule 16 of the Federal Rules of Criminal Procedure; (2) material exculpatory information discoverable under *Brady*; (3) evidence relating to a witness's credibility or bias that is discoverable under *Giglio*; and (4) witness statements related to the subject matter of the witness's testimony, discoverable under the Jencks Act.  *See* Fed. R. Crim. P. 16; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); 18 U.S.C. § 3500 and Fed R. Crim. P. 26.2 (Jencks Act).

Under Rule 16(a)(1)(E), a criminal defendant is entitled to discovery of materials "within the possession, custody, or control of the government," which are "material to preparing the [defendants'] defense."  Fed. R. Crim. P. 16(a)(1)(E).  Defendants are entitled to discover only those materials that are helpful to the defendants' response to the government's case–in–chief.  *United States v. Armstrong*, 517 U.S. 456, 462 (1996) ("[W]e conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."); *accord United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (quoting *Armstrong*, 517 U.S. at 462).[1]

To obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984)).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Mandel*, 914 F.2d at 1219 (citing *Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466–68).  In fact, "[i]t is defendant's obligation . . . to provide specific facts that

---

[1]   At the time of *Armstrong* and *Chon*, that provision was numbered 16(a)(1)(C). Rule 16 was renumbered in 2002.

1  demonstrate the prima facie materiality of its specific requests to specific trial issues." *United States v.*

2  *Yandell*, No. 2:19-CR-00107-KJM, 2022 WL 1607923, at *8 (E.D. Cal. May 20, 2022), *citing United*

3  *States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010) (finding discovery appropriate where defendant made

4  factual showing that evidence existed to support a specific affirmative defense).

5      Broadly worded document requests that "might be consistent with expansive civil discovery" are

6  "not permitted under the more restrictive criminal discovery standards."  *United States v. Dossman*, No.

7  2:05–cr–270–DFL, 2006 WL 2927484, at *2 (E.D. Cal. Oct. 12, 2006).

8      "Material" under Rule 16(a)(1)(E) is not synonymous with "relevant."  For a document or other

9  item to be "material to preparing the defense" it must "'significantly alter the quantum of proof in his

10  favor,'" *id.*, at *2 (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975)), or "'play an

11  important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony,

12  or assisting impeachment or rebuttal.'"  *Dossman*, 2006 WL 2927484, at *2 (quoting *United States v.*

13  *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).  "[R]equests which are designed to generally cast for

14  impeachment material…are not material. Such requests are instead simply speculative inquiries without

15  basis in fact to believe that the information acquired will be significantly helpful." *United States v.*

16  *Liquid Sugars, Inc*., 158 F.R.D. 466, 472 (E.D. Cal. 1994).

17      "Nonetheless, where the government has shown that complying with a criminal defendant's

18  discovery request under Rule 16 would be unduly burdensome, 'it is incumbent on the district court to

19  consider the government interests asserted in light of the materiality shown.'" *Yandell*, No. 2:19-CR-

20  00107-KJM, 2022 WL 1607923, at *8, citing *Mandel*, 914 F.2d at 1219 (citing *United States v. Cadet*,

21  727 F.2d 1453, 1468 (9th Cir. 1984)).

22      Additionally, *Brady* "requires disclosure only of evidence that is both favorable to the accused

23  and material either to guilt or to punishment." *United States v. Bagley*, 473 U.S. 667, 674 (1985).

24  Evidence is "material" when there is "a reasonable probability that, had the evidence been disclosed, the

25  result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009).

26  Undisclosed evidence is material only if it "could reasonably be taken to put the whole case in such a

27  different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

28

*Brady* does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant. *Smith v. Secretary, Dept. of Corrections*, 50 F.3d 801, 823-24 (10th Cir. 1995) (citing *Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.")). The disclosure requirement in *Brady* extends to potential impeachment information regarding witness credibility or bias. *Giglio v. United States*, 405 U.S. 150 (1972). "*Brady* does not overcome the strictures of the Jencks Act. When the defense seeks evidence which qualifies as both Jencks Act and *Brady* material, the Jencks Act standards control." *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979).

## IV.    ARGUMENT

### A.    Defendants Have Failed to Make a *Prima Facie* Showing of Materiality Under Rule 16(a)(1)(E)

The Motion does not provide a request–by–request "factual showing" (*Mandel*, 914 F.2d at 1219) for how any of the "documents" or materials sought are "material to preparing a defense." Fed. R. Crim. P. 16(a)(1)(E). Instead, defendants rely entirely on the generalized contention that because all of the requests would help counsel effectively prepare for trial, that they are "material" to preparing a defense. This generalized assertion fails to establish materiality warranting disclosure under Rule 16(a)(1)(E).

The documents "sought must not only be relevant… [they] must also be material." *Tsarnaev*, 2013 WL 6196279, at *4. As explained above, documents are "material" under Rule 16(a)(1)(E) only if they "significantly alter the quantum of proof in [defendant's] favor," or "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Dossman*, 2006 WL 2927484, at *2 (quotation marks and citations omitted). Defendants have not attempted to carry the burden of showing that any of the documents sought are "material to preparing a defense" in either of these ways. "It is defendant's obligation . . . to provide specific facts that demonstrate the prima facie materiality of its specific requests to specific trial issues." *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2022 WL 1607923, at *8 (E.D. Cal. May 20, 2022), *citing United States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010) (finding discovery appropriate where

defendant made factual showing that evidence existed to support a specific affirmative defense). As noted above, the Motion's general statements cannot substitute for Rule 16's requirement that defendants provide a specific explanation of materiality. The Court should deny any request that fails to meet Rule 16's materiality requirement.

This Court has not addressed materiality of discovery requests in the past. However, the defendants filed the Motion within days of the date the government was ordered to produce Jencks material despite the ability to address these matters months ago. In addition, defendants Perkins and Bannick have used the late filing of this request to also request a severance and continuance of the trial date. Dkts. 1360 and 1367. The requests here fail to demonstrate the materiality of the items sought and are again wrapped up in a generalized description of evidence that would help counsel prepare for trial. The late request for items for which defendants have failed to make a showing of materiality should be taken into consideration by the Court.

**B.** **Defendants' requests have been addressed by the Government and either have been produced, do not exist, or are not within the government's possession or control.**

Defendants request discovery pertaining to 25 items associated with defendant Perkins' Motion, and nine categories of items associated with defendant Bannick's joinder to the Motion. Dkts. 1348 and 1359. The government received discovery letters from defendants Perkins and Bannick on June 10, 2024 and October 3, 2023, respectively. Both discovery letters detailed a very similar list to the requests made in the Motion and joinder to the Motion now before the Court.

Regarding the general nature of discovery in this case, the government has spoken with counsel for Bannick and Perkins many times (by telephone, in person, and less frequently via email) in an effort to clarify what items fell within Rule 16 and which did not (for example, those that were not in the government's possession because they resided with state or local authorities). The government also arranged to obtain and make available to counsel for each defendant several items of requested discovery. This included a set of discovery produced in July 2024 that contained additional reports, search warrants, search warrant returns, laboratory results, photos, videos, and witness interviews for the Lomita, Lancaster, and Pomona homicides. Following production of this additional material in July 2024, the government received no further inquiries from counsel for either defendant, until the filing of

the Motion.

The following items are responses to the requests made by defendant Perkins, referenced by the request number included in the Motion at pages 10-17.

1. **Evidence of fraud allegations against Mr. Perkins in Count One.**

"Count One, subsection n of the Third Superseding Indictment charges Mr. Perkins with furthering racketeering activity by committing fraud between February 1, 2022, and May 20, 2022, in connection with identification documents and access devices. Doc. 1098 at 9. We request all evidence of such fraud, including the specific identities of people or corporations that were defrauded, access accounts and devices used, and evidence that the fraud was committed to further the racketeering enterprise."

The government believes that is has produced extensive material regarding these allegations. In particular, items relevant to the fraud allegations were produced in May/June 2023 starting at Bates number BASH_00017497, July 2024 starting at Bates number BASH_00042706 and BASH_00048501, and within the Jencks production on November 5, 2024. Moreover, the government made physical items regarding the fraud allegations available for inspection and copying by the defense, and the defense reviewed such materials April/May 2024 during an in-person review. During that evidence viewing investigators and/or counsel for defendants took photos of each item. The government does not believe it is in possession of any further items related to this request that were not affirmatively produced or made available for inspection and copying.

2. **Full identity and contact information for "W-Norris".**

"The Pomona police reports identify "W-Norris" as a resident of a motorhome in the area where the murders occurred who heard gunshots. Police officers identified him by his California identification card. BASH_00017366. We request his full identity and contact information."

The government believes that this information has been produced within the recent production of Jencks materials. The material was produced as an unredacted police report related to the Pomona homicides, within a file path labeled "Pomona", upon Jencks production on November 5, 2024. Personal identifying information (PII) remains redacted, including contact information.

3. **Full identity and contact information of "SJ-Jarnagin".**

"The Pomona police reports identify "SJ-Jarnagin" as being in a parked Ram Van 2500 that was within the Pomona crime scene. He provided his identification to the police officers who interviewed him. BASH_00017369-17370. We request his full identity and contact information."

The government believes that this information has been produced within the recent production of Jencks materials. The material was produced as an unredacted police report related to the Pomona homicides, within a file path labeled "Pomona", upon Jencks production on November 5, 2024. Personal identifying information (PII) remains redacted, including contact information.

4. **Los Angeles County Fire Department records regarding their response to the Pomona crime scene**.
"The Pomona police reports indicate that the LA County Fire Department responded to the scene of the crime. BASH_00017366. We request all reports from the department, including paramedic reports."

The government does not believe any such records are within its possession and control, if any such records in fact exist. Los Angeles County Fire Department is a non-law enforcement agency and is not part of the prosecution team. Should any such documents come within the government's possession it will produce those to defendants.

5. **Coroner's Office records regarding their involvement in the investigation of the Pomona crime scene and homicides**.
"The Pomona police reports also indicate that the Coroner's office investigators Mercado and McCracken were involved in the investigation of the crime scene. BASH_00017364. We request any reports related to the investigation of the scene. We acknowledge receipt of the autopsy reports for the two Pomona homicide victims."

As the Motion notes, the government produced the autopsy reports produced in May/June 2023. Mot. at 11. The reports are found beginning at Bates number BASH_00021749 and BASH_00021780. The government does not possess additional reports. It is unaware of whether investigators Mercado and McCracken authored any report. If any such report exists, the government does not believe it is within its possession, custody, or control.

6. **Los Angeles Sheriff Department Crime Analyst Danielle Ponce de Leon reports and communications regarding the instant case**.
"The government provided notice that Ms. Ponce de Leon will be testifying regarding 'cellular telephone data analysis, including location data, call detail records, subscriber information, social media research and analysis, and cell tower and toll analysis.' The Pomona police reports indicate that Ms. Ponce de Leon provided analysis of the geofencing and Cellebrite data for the police officers. BASH_00017377-17379, 17383. We acknowledge receipt of a Hawk Analytics report run by the analyst. BASH_00017480-17484. We request all other reports, notes, emails and communications with officers regarding the case."

Ms. Ponce de Leon is a newly noticed expert witness, pursuant to the trial scheduling order filed

in this matter. The government is creating summary charts to be used during Ms. Ponce de Leon's testimony and will produce that material as it is obtained and prior to Ms. Ponce de Leon's testimony. Such materials summarize evidence produced in May/June 2023 around Bates numbers BASH_00017081, BASH_00017485, BASH_00017627, BASH_00020022, BASH_00020039, and in July 2024 around Bates number BASH_00046556. The government remains aware of its potential Jencks Act and Rule of Criminal Procedure 26.2 obligations related to Ms. Ponce de Leon.

7. **Documentation and notes regarding any testing of bullets, cartridges and casings found at Pomona crime scene**.
   "The Pomona Police Department report indicates that a "live unexpended bullet" was found at the crime scene. BASH_00017367. The same report also indicates that there were "several 9mm shell casings" near the body of victim 1. The evidence collection report lists several casings and cartridges collected at the scene. BASH_00017372. We request any reports and underlying bench notes of any ballistics testing that may have been conducted of this evidence, including, but not limited to, any microscopic examinations of the evidence. We also request information and documentation regarding whether any firearms seized during the investigation have been tested in an attempt to link them to the evidence collected at the scene."

The government believes that ballistics test information was provided to the extent the government has such reports. See reports beginning at Bates number BASH_00017357 and BASH_00042664.

8. **Documentation regarding DNA testing of evidence collected at the Pomona crime scene**.
   "The Pomona police reports indicated Touch DNA swabs were collected from evidence at the crime scene. BASH_00017372. We acknowledge receipt of police report regarding DNA test results, BASH 42684, and DNA analysis report regarding comparisons to Mr. Perkins's DNA, BASH 42685-42691. We request the bench notes, photos, and any other documentation of the testing and results of this DNA testing. We also request information whether any additional DNA testing was conducted comparing crime scene evidence to other suspects."

The government believes that DNA test information was provided to the extent the government has such reports. See reports beginning at Bates number BASH_00017357 and BASH_00042664.

9. **Police reports under incident DR#22-024168**.
   "Pomona police reports indicate that in response to the call regarding shots fired at 11:25 p.m. on March 8, 2022, officers arrived at the scene and "were unable to locate any victims and cleared the area. The incident was logged under DR#22-024168." BASH_00017369. We request all reports regarding that incident."

After receiving the Motion, the government conferred with a local law enforcement entity to

confirm what records existed.  The local law enforcement entity related that it had no records of reports pertaining to that incident number.  It indicated that it would provide to the government the call for service printout.  The government will produce that printout to the defense by November 20, 2024.

10. **Documentation of the "numerous tips" from anonymous sources and confidential informants regarding the Pomona homicides received by law enforcement**.

"Pomona police reports indicate that following the murders, investigators received 'numerous 'tips' from anonymous sources and other law enforcement agencies working with confidential informants" regarding the murders.  BASH_00017383. We acknowledge receipt of BASH_00017471 regarding a report of one such tip.  We request any additional documentation regarding this tip, including recordings or notes about this tip.  We also request further information regarding how the tip was conveyed (i.e. in person, via internet, or by phone); what exactly was said by the tipster; and any follow up or further reports from the same tipster.

We also request more specific information and any documentation, recordings, notes or the like of each of the "numerous 'tips'" from both anonymous sources and confidential informants.  Specifically, we request the date, time, form of communication, identity of the informant, and to whom the information was disclosed, in addition to the actual information that was given."

The government believes that to the extent this material exists or is within the possession of the government, it has been previously produced. See reports beginning at Bates number BASH_00017357 and BASH_00042664.

11. **Information regarding law enforcement's access to the License Plate Reader in City of West Covina**.

"Pomona police reports indicate that investigators "learned" that at 11:05 p.m. on March 8, 2022, a Dodge Charger and Silver Mercedes Benz drove through a License Plate Reader (LPR) in the City of West Covina (W/Pacific Avenue/N Bromley Avenue).  BASH_00017383. We acknowledge receipt of photos that are alleged to have come from this LPR. BASH_00017477-00017479. We request information regarding how such information was "learned," what steps were taken to access that information, and any reports, notes, emails, or any other documentation regarding how this information was discovered and provided to investigators."

The government believes that to the extent this material exists or is within the possession of the government, it has been previously produced See reports beginning at Bates number BASH_00017357 and BASH_00042664.

12. **Search warrant, affidavit in support of the warrant, and court order for Facebook accounts of Evan Perkins (screen name "Eric Blinko"), Brandon Bannick (screen name "Ram Rebel"), Joseph Bruton (screen name "Joseph Brunton"), and David Frey (screen name "David Frey")**.

"Pomona Police reports indicate that Detective Estrada authored a search warrant on July 14, 2022, for the Facebook accounts of the people listed above.

BASH_00042674.  We request the search warrant, affidavit in support of the warrant, and court order.  We acknowledge receiving the return to the warrant."

The government will produce the search warrants by November 20, 2024

13. **Search warrant, affidavit in support of warrant, and court order for Facebook accounts of Brianna Briles (screen name "Brie Gilliland"), Brandon Gilliland (screen name "Brandon Gilliland"), and Aaron Bluemel (screen name "Aaron Bluemel").**
"Pomona Police reports indicate that Detective Estrada authored a search warrant on July 17, 2022, for the Facebook accounts of the people listed above.
BASH_00042674.  We request the search warrant, affidavit in support of the warrant, and court order.  We acknowledge receiving the return to the warrant."

The government will produce the search warrants by November 20, 2024

14. **Information regarding law enforcement's contact with Joseph Brutonreal.**
"Pomona police reports indicate Joseph Bruntonreal[e] was identified as being present during the murders.  BASH_00017383.  We request information, including reports, notes, audio recordings regarding any contacts or attempted contacts with Joseph Bruntonreal[e]."

The government believes that to the extent any information was within its possession, it was material that was produced pursuant to the trial scheduling order regarding production of Jencks materials on November 5, 2024.

15. **Missing documentation regarding execution of search warrant of 9831 Park St., Apt. 3 Bellflower, California.**
"In May 2022, law enforcement executed a search warrant at Mr. Perkins' apartment in Bellflower, California. We acknowledge receipt of the warrant and affidavit in support of the warrant to search the premises, BASH_00017461, a police report regarding execution of the warrant, BASH_00042664, and some photos that appear to have been taken during the search. However, we have not received the search warrant return.  We request the search warrant return and any other reports related to the search, including reports or recordings of witnesses interviewed at the premises, inventory reports of evidence seized, and any additional photos/videos taken."

As noted in the defendants' request, reports and information regarding this request were previously produced.  In addition, reports and photos produced May/June 2023 and July 2024 around Bates number BASH_00017497, BASH_00020969, BASH_00042706, and BASH_00048501 may contain information relevant to the request.  The government is not aware of any search warrant return .  Should a return exist, it is not within the government's possession.  However, the items seized are reflected in the documents falling within these Bates ranges.

16. **Missing documentation regarding execution of search warrant of Mr. Perkins's Dodge Charger**.

"Also in May 2022, law enforcement executed a warrant to search a car belonging to Mr. Perkins. We have received the warrant to search the Dodge Charger, BASH_00017461, and some photos that appear to have been taken during the search. However, we have not received the search warrant return. We request the search warrant and any other reports related to the search."

As noted in the defendants' request, reports and information regarding this request were previously produced. In addition, reports and photos produced May/June 2023 and July 2024 around Bates number BASH_00017497, BASH_00020969, BASH_00042706, and BASH_00048501 may contain information relevant to the request. The government is not aware of any search warrant return. Should a return exist, it is not within the government's possession. However, the items seized are reflected in the documents falling within these Bates ranges.

17. **Criminal history of Ronald Ennis**.

"Ronald Ennis is one of the alleged victims of the Pomona homicide. The government has not provided his history despite repeated requests."

The government understood the Court's previous order to require the victim's criminal history to be disclosed as it pertained to mitigation for the potential seeking of the death penalty. The government is not seeking the death penalty. Dkt. 950. If the government misunderstood the Court's previous order, it will produce the criminal histories of the victims of the homicides.

18. **Telephone records for Ronald Ennis**.

"It is unclear whether a telephone was recovered from Mr. Ennis after the homicide. We request the records if they were obtained and reviewed by the government or, if they were previously produced, identification of the Bates number(s) of this evidence."

The government is unaware of records indicating whether or not a telephone was recovered. The government reviewed local law enforcement reports; they do not indicate that a phone was recovered. The government has confirmed with local law enforcement that neither a phone nor records were obtained.

19. **Social media records for Ronald Ennis**.

"The government sought and obtained the social media records of many people associated with Mr. Ennis's homicide. It is unclear whether Mr. Ennis's social media records were obtained and reviewed. We request the records if they were sought and obtained."

The government does not possess social media records related to Mr. Ennis.

20. **Criminal history of James Yagle**.
"James Yagle is one of the alleged victims of the Pomona homicide.  The government has not provided his history despite repeated requests."

The government understood the Court's previous order to require the victim's criminal history to be disclosed as it pertained to mitigation for the potential seeking of the death penalty. The government is not seeking the death penalty. Dkt. 950. If the government misunderstood the Court's previous order, it will produce the criminal histories of the victims of the homicides as stated above.

21. **Telephone records for James Yagle**.
"It is unclear whether a telephone was recovered from Mr. Yagle after the homicide. We request the records if they were obtained and reviewed by the government or, if they were previously produced, identification of the Bates number(s) of this evidence."

The government is unaware of records indicating whether or not a telephone was recovered. The government reviewed local law enforcement reports; they do not indicate that a phone was recovered. The government has confirmed with local law enforcement that neither a phone nor records were obtained.

22. **Social media records for James Yagle**.
"The government sought and obtained the social media records of many people associated with Mr. Yagle's homicide. It is unclear whether Mr. Yagle's social media records were obtained and reviewed. We request the records if they were sought and obtained."

The government does not possess social media records related to Mr. Yagle.

23. **CDCR records for Mr. Perkins**.
"We have not received Mr. Perkins California Department of Corrections and Rehabilitation (CDCR) file despite repeated requests and this Court's order on August 30, 2023, to provide such information to defendants."

The government will produce records to each defendant under Protective Order as they are provided to the government by CDCR. Records now in the possession of the government will be produced by November 20, 2024. The government has been in the process of obtaining the records from CDCR, and has received much, but not all, of the records up to this point.

24. **Evidence of Mr. Perkins's alleged possession of a fraudulently obtained vehicle and fictitious identification card during his arrest on May 24, 2023, which the government intends to introduce under Federal Rule of Evidence 404(b)**.

1         "We request copies of the alleged fraudulent identification and documentation that
2         the vehicle and identification were fraudulently obtained. We also request
        information regarding which witnesses will be testifying regarding this evidence."

3     The government understands that this defense counsel viewed items seized from Perkins during

4 his arrest during the evidence viewing at the ATF office in Fresno and that material falling within this

5 request may have been within those items. The government has requested reports from the outside

6 agency investigating Perkins' use of a fraudulent identification card to obtain the vehicle he was driving

7 upon arrest. Once obtained, the government will provide any information it obtains in discovery.

8         25. **Native file for BASH_00049383-00050625**.
        "BASH_00049383-00050625 is a pdf file of messages extracted from a phone
9         belonging to a suspected key government witness, which was disclosed for the first
        time on September 18, 2024. Coordinating Discovery Attorney Julie de Almeida
10         requested the native file for this extraction but it has not been produced as of the date
        of this motion. We request prompt disclosure of this native file as it is necessary to
11         fully review this data."

12     The government will obtain the native files if they exist from the outside agency that

13 downloaded the phone and produce said files as soon as that is within the government's possession.

14 Meanwhile, the government produced the above-referenced document of the consolidated conversations

15 extracted from the phone at issue on September 17, 2024[2] starting at Bates number BASH_00049383.

16     The following item groupings are requested by defendant Bannick and referenced by number as

17 reflected in the joinder to the Motion (docket 1359) at pages 5-9.

18         1. **Search Warrant and Extraction Evidence related to Bannick**.
        "Search Warrant, Affidavit in Support of Search Warrant and Search Warrant Return
19         to retrieve and download the phone associated with Mr. Bannick and all extraction
        evidence recovered therefrom. Pomona Police Department Detective Michael
20         Rodriguez authored the Search Warrant on May 26, 2022 (BASH_00042665)."

21     As part of its trial preparation, the government is reviewing whether defendant Bannick was the

22 primary user of any phones seized and analyzed in the investigation   If a search warrant was obtained

23 and a phone associated with Bannick was extracted, the government will either obtain those items and

24 produce as soon as it is within the possession of the government. If a search warrant was obtained, the

25 government anticipates being able to produce that by November 20, 2024.

26

27         [2] Despite this production being Jencks material, the government produced the extraction of this
28 phone and consolidated conversations months prior to the Jencks deadline, which only just passed on
November 5, 2024.

2. **Witness statements/Interviews.**

"Mr. Bannick has requested the non-redacted or redacted statements of witnesses but has not been provided with any written, recorded, and/or transcribed witness statements. Mr. Bannick now requests the full identity and contact information for all witnesses and all notes, recordings, reports, and/or narratives of all witness statements, including but not limited to the following:

Resident on 255th St.: Witness saw a red sedan drive westbound on 255th St., make a U-turn in the west driveway of the parking lot of Calvary Church, and then drive east bound on 255th St. at a high rate of speed (also has fixed camera faced southbound covering driveway and possibly 255th St.).

Resident on 255th St.: Witness saw a lifted silver Chevy Silverado parked in front of 25520 Woodward Ave. Then after hearing a door close, saw the truck drive northbound on Woodward Ave. and out of view. Mr. Bannick received a narrative report of the interview with the resident (BASH_00041692) but is requesting any follow-up statements, written or otherwise, made by this witness.

Pastor at 25501 Oak Street, Calvary Church: Witness told police camera was inoperable.

Victim Allan Roshanski's brother: Witness was telephonically interviewed by Det. Macial on 10.4.20. While it was noted that this interview was not recorded, Mr. Bannick is requesting any follow-up statements, written or otherwise, made by this witness.

Heather LNU: Witness called victim Roshanski's brother on 8.29.20 regarding finding Roshanski's laptop and iPad.

Friend of both Victims: Witness was interviewed by Investigators on 10.7.20 regarding her interactions with victim Roshanski on 10.2.20 and 10.3.20.

Confidential Drug Informant: Witness gave statement to Officer Makari (LAPD Narcotics).

Informant: Witness interview is completely redacted in the disclosed discovery. Immediately after said redaction (last page of Report; BASH_00012867), there is an "Investigators' note" that reads: Investigators were advised that AFT agents discovered

"additional" info regarding Brand Bannick's involvement with the double homicide; supplemental report of Brandon Bannick's arrest and indictment will become a permanent part of investigative file.

G.S.: 10.7.20 interview by LASD investigators as described in the November 19, 2020 Search Warrant for cell phone call records (BASH_00022183)."

The government believes that this material was produced in unredacted form as part of its Jencks production on November 5, 2024, within a file path labeled "Lomita", to the extent the government is in possession of the requested items. Personal identifying information (PII) remains redacted.

3. **Co-defendant statements/Interviews**.

"Mr. Bannick requests the any and all recordings (audio or video), reports, notes, or transcripts of any interview/statement of all Codefendants in this case, including but not limited to:

Codefendant Justin Gray: Any recording (audio or video), report, notes, or transcript of any interview/statement of Mr. Gray, including statements from interview room at the South Los Angeles Sheriff's Station on December 10, 2020 (BASH_00012865) and at the time of his arrest on May 15,2022 and September 30, 2022 on an unrelated case (BASH_00013083)."

This request is beyond the scope of Rule 16 as Rule 16(a)(1)(A) provides for disclosure of "statements made by the defendant" and does not include statements made by co-defendants or co-conspirators. Fed. R. Crim. P. 16(a)(1)(A); *see United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988) ("Nothing in the Federal Rules of Evidence or in the Jencks Act requires [] disclosure [of co-conspirator statements] – we think it clear that as used in Fed. R. Crim. P. 16(a)(1)(A) the phrase 'statements made by the defendant' does not include statements made by coconspirators of the defendant, even if those statements can be attributed to the defendant for purposes of the rule against hearsay.") Additionally, defendant Gray is no longer a co-defendant in a trial with defendant Bannick.

4. **Crime scene reports/diagrams/photos**.
"Crime Scene Diagram (related to CSI Report Bates 41619).
Report and Supplemental Report by FIS Michele Marmolejo #287358 who photographed and documented various pieces of evidence (referenced in BASH_00012855).
Supplemental Report by FIS Michael Bayer and a complete set of photos taken of the black Volkswagen Passat towed from the Lomita crime scene area (referenced in BASH_00012841 and BASH_00012861)
Supplemental Report by Deputy J. Romero #619422 who contacted resident at 2121 225th St. who had Ring doorbell (referenced in BASH_00012841).
Global Positioning System Monitoring Report from Codefendant Gray's cell phone (BASH_00012864).
Los Angeles Fire Department (LAFD) Reports of the various paramedics/personnel that arrived on scene, attended to the gunshot victims, pronounced deaths, removed items from decedents, and placed said items on the sidewalk.
Supplemental Report of Brandon Bannick's arrest (referenced in BASH_00012867)."

The government believes that any such material within its possession was produced in July 2024 to the extent items exist. See reports beginning at Bates number BASH_00041692 and BASH_00041693.

5. **Search warrants/affidavits/returns**.
"12.10.20 Search at La Quinta Inn & Suites in Ontario (room #318). Mr. Bannick has been provided with the incident report and property returns from the Gray/Free arrests but is missing the Search Warrant, an Affidavit in support, and a Return related to this search (BASH_00041622, BASH_00012865 and BASH_00012849-00012857).
12.10.20 Search of beige Gio Prizm associated with Free and the surveillance at La Quinta Inn & Suites in Ontario (BASH_00041668-00041676)
Global Positioning System (GPS) monitoring of Codefendant Gray's cell phone (BASH_00012864).
Missing pages 5-9: 10.27.20 Search warrant for Roshanski/Magomedgadzhiev phone records."

The government believes that any such material within its possession was produced in July 2024 beginning at Bates number BASH_00041668, BASH_00041677, BASH_00041686.

6.  **Surveillance/camera/video evidence**.

"Ring doorbell camera located at 2121 225th Street residence: Investigators viewed surveillance and saw black Volkswagen arrive and park at approx. 0104 hours. Mr. Bannick received a narrative report of the interview with the resident (BASH_00041692) and a still photo of the victims, but no associated footage.
Ring doorbell camera located at 255th Street residence angled away from street.
Camera at Woodward Ave. residence: Resident initially stated his camera did not capture anything and refused to provide his name or contact information.
Ring doorbell camera and secondary camera located at Woodward Ave. residence: Resident could not access footage at the time but told investigators he would make it available.
Camera facing Oak Street at Oak Street residence.
Fixed camera at Oak Street residence facing southbound covering driveway and 255th Street.
Camera under eve of roof at 255th Street residence.
Cameras on corners of building at 255th Street.
Wyze camera in front window at Oak Street residence.
Video of pre/post video of Gray/Free arrest (conducted by Sgt. White and provided to Homicide Detectives Aguilera and Maciel).
Body Cams/Body Worn Video worn by police authorities during the investigation."

As counsel for the government has previously informed defense counsel, review of discovery and discussions with local investigators have not revealed that any such recordings exist or were gathered by law enforcement. The video regarding Free/Gray arrest was produced in November 2022 starting around Bates number BASH_00012828.

7.  **Forensic/lab reports**.

"Mr. Bannick requests any and all forensic/lab reports and associated raw data and bench notes, including but not limited to the following:
Ballistics
Fire testing of all firearms, including fire testing recovered in Gray/Free arrest (referenced in Operation Safe Streets Bureau Evidence and Property Page booking by Castellanos #452437 on 12.10.20 of EV-1.1 (9mm) and EV-14.1 (.45 KAHR Arms P45)).  Mr. Bannick was notified via email that "there were no NIBIN hits on the firearms recovered by the various agencies involved in this investigation," but was not provided with any reports regarding the corresponding analysis and findings.
Any and all reports, bench notes, photographs, or other writings or documentation prepared in connection with any microscopic examination of any and all casings recovered at or around the scene of the Lomita homicides.
Prints
Additional latent print reports (other than the 12.24.20 Laboratory Examination Report-analysis of Item#3/EV-1 One Cartridge Case "FC 9mm Luger"), including but not limited to print analysis from the Volkswagen Passat that was held as evidence and for prints.
DNA
Additional DNA analysis reports (other than 2.20.21 DNA Analysis Report- analysis of One Expended Cartridge Case "FC 9mm Luger" and buccal reference from Justin Gray).
Telecommunications/Phones
UFED Reader report prepared by Homicide Detective Thomas Ferguson #407309 (referenced in his 11.2.20 Supplemental Report).
GSR/hair/nail kits

Analysis reports for kits collected by the Coroner Investigator at the scene.
Controlled Substance
Additional controlled substance reports (other than the 10.7.20 Laboratory
Examination Report- analyzation of container, Item #13 containing
Methamphetamine and the 12.14.20 Laboratory Examination Report from the arrest
of Gray/Free, BASH_00041658).  There were several substances seized from various
people/places (i.e., paraphernalia, white powdery substances, and green leafy
substance from the victims/vehicle at the scene)."

The government believes it has produced reports related to testing of any items to the extent the

government has such reports in its possession. See around Bates number BASH_00013832,

BASH_00041619, BASH_00041658, BASH_00041660, BASH_00041662. In January 2024, NIBIN

reports were produced, pursuant to this Court's order, starting at Bates number BASH_00022341. The

government is not in possession of any other reports.

8.  **Other incident reports**.
"Any and all reports and Body Cams/Body Worn Video in reference to victim
Roshanski's stolen vehicle/items report to the Eau Claire Police Department, Incident
#20PD16740."

The government believes any such information in its possession was produced in November

2022 to the extent the such items exist. See around Bates number BASH_00013832.

9.  **Criminal history records and custody records**.
"Criminal history of named victims, Ruslan Magomedgadzhiev and Allan Roshanski.
Criminal history of all government witnesses named in the witness list expected to be
filed by the prosecution on today's date.
Custody/incarceration records of all government witnesses named in the witness list
expected to be filed by the prosecution on today's date who have been or are
incarcerated in the California Department of Corrections Records (CDCR), including,
but not limited to, records of housing, crimes of incarceration, institutional
misconduct, gang affiliation, and confidential file materials, including interviews,
reports of investigation, safety investigations, and debriefing reports.
Custody/incarceration records available regarding Bannick's incarcerations, including
but not limited to, his incarceration in the California Department of Corrections
Records
(CDCR).  The records requested are including, but not limited to, records of housing,
crimes of incarceration, institutional misconduct, gang affiliation, and confidential
file materials, including interviews, reports of investigation and safety
investigations."

The government understood the Court's previous order to require the victim's criminal history to

be disclosed as it pertained to mitigation for the potential seeking of the death penalty. The government

is not seeking the death penalty. Dkt. 950. As stated above, if the government misunderstood the Court's

previous order, it will produce the criminal histories of the victims of the homicides. Giglio material was

produced pursuant to the trial scheduling order on November 5, 2024, and continues to be produced. CDCR records will be produced under protective order as provided to the government by CDCR. Records now in the possession of the government will be produced by November 20, 2024.

## V.    CONCLUSION

Discovery has been provided and continues to be provided as ordered by the Court and as obtained by the government as outlined above.

Many of the defendants' outstanding demands fail to state a reason to believe that the items demanded are in the government's possession, and as stated above, items that defendants have deemed as "missing" are not within the government's possession. Furthermore, defendants have failed to provide a sufficient showing of materiality as required under Rule 16. "Without a factual showing there is no basis upon which the court may exercise its discretion, and for it to ignore the requirement is to abuse its discretion." *Mandel*, 914 F.2d at 1219; *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984). In addition to providing the Court with a basis to evaluate the defendants' discovery demand, the defendant's obligation to make a factual showing also guards against discovery litigation gumming up trial scheduling as the parties prepare. It would otherwise allow the defense simply to issue a hailstorm of broad and non-specific discovery requests—akin to those in civil practice—to which the government is forced to respond.

The government has outlined for the Court and counsel the items it will further produce and the anticipated date of that production.

Dated:  November 12, 2024

PHILLIP A. TALBERT
United States Attorney


By:  /s/ *Stephanie M. Stokman*
STEPHANIE M. STOKMAN
Assistant United States Attorney