PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
JAMES R. CONOLLY
Assistant United States Attorneys
JARED ENGELKING
Trial Attorney, U.S. Department of Justice
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH JOHNSON, et al.,<br><br>Defendants. | CASE NO. 1:20-CR-238-JLT<br><br>UNITED STATES' OPPOSITION TO MOTION FOR SPECIAL JURY QUESTIONNAIRE<br><br>DATE: December 4, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.     INTRODUCTION

The United States Opposes Defendant Kenneth Johnson's motion for the use of jury questionnaires in this non-capital case. ECF 1346. While the United States may not oppose a questionnaire to collect some basic biographical and hardship information, the Court should deny the defense request for questions beyond that, including the case related questions under the headings "Courts and Community," and "Gangs and Prisons." ECF No. 1346-1, at 3–7. Such case-specific questions are generally disfavored by the Ninth Circuit Jury Trial Improvement Committee, because the risk of undue prejudice and imposition on the jurors outweighs the minimal benefit of such questionnaires. Ultimately, the government believes that the Court can gather and vet biographical and hardship information most efficiently in court, as it does for most trials, so no questionnaire appears necessary in this case.

## II.  LEGAL STANDARD

District courts have "ample discretion in determining how best to conduct the voir dire." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981).  "No hard-and-fast formula dictates the necessary depth or breadth of voir dire." *Skilling v. United States*, 561 U.S.C 358, 386 (2010).  The court has discretion "not only to see that the voir dire is effective in obtaining an impartial jury but also to see that this result is obtained with reasonable expedition." *United States v. Jones*, 722 F.2d 528, 529 (9th Cir. 1983) (internal quotation and citation removed).

Notably, the Ninth Circuit Jury Trial Improvement Committee "discourages the use of generic questionnaires for every trial because they do not offer sufficient benefits to justify the imposition on the jurors, the additional expenditure of staff time, and extra operational costs."   Judicial Counsel of the Ninth Circuit Jury Trial Improvement Committee, Second Report: Recommendation and Suggested Best Practices at 8, ECF No. 1528-1.  The Committee notes that such questionnaires can still be useful to "pre-screen[]" potential jurors when the case "is anticipated to be unusually long." *Id.*  And it suggests that "focused questionnaires" may be useful in the limited cases "where the jurors' personal experiences might have a significant impact on their ability to be fair, such as those involving sexual assault, or child pornography." *Id.*

## III.  DISCUSSION

In this case, the use of extensive, case-specific questionnaires will not aid in this Court's duty to obtain an impartial jury with reasonable expedition.  First, while a questionnaire for biographic and hardship information would not likely increase efficiency significantly in jury selection, the government would not oppose a questionnaire limited to these areas if the Court determines that this trial's anticipated length could impose unusual hardship on the jurors. *Id.* (noting that questionnaires can still be useful to "pre-screen[]" potential jurors when the case "is anticipated to be unusually long").  But no case-specific questions are needed because this case is not the type of rare case in which a juror's personal experience would likely have a "significant impact" on his ability to be fair and impartial.  Unlike cases involving sexual assault or child pornography, it is unlikely that a significant number of jurors would have personal experience with gangs or murder such that they would be unable to be fair or weigh the evidence impartially.  In other words, if a juror were to hear on the first day of jury selection

that this case involves RICO or murder charges, that fact alone would prompt few jurors, if any, to have such strong feelings that they would need to be excluded from the jury because of the case's subject matter.  And if there were a potential juror with such a reaction, the Court could address it with that individual juror, rather than subject the entirety of the jury pool to multiple questions in this regard that the Court would have to review and then address with that juror.  There is therefore no need to screen jurors in advance of trial through a questionnaire because, in this case, the questionnaires would "not offer sufficient benefits to justify the imposition on the jurors, the additional expenditure of staff time, and extra operational costs." *Id.*  The government notes that in the case to which defendant Johnson cites, *United States v. Yandell*, 2023 WL 5596441 *1 (E.D. Cal. Aug. 29, 2023), the Court allowed the use of a questionnaire but confined its scope to juror hardship and basic biographical information.

      Second, because the Court must educate jurors and assess their demeanor and credibility, a jury questionnaire will not be as effective in selecting a fair and impartial jury as in-court questioning.  To assess a juror's impartiality, judges are often influenced by a host of factors such as "the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Skilling*, 561 U.S. at 386.  These factors are "impossible to capture fully in the record." *Id.*  Nor can the Court assess these factors simply by reading written responses to a questionnaire.  As such, sending a written questionnaire to jurors about case-specific facts will often require the Court to ask duplicative follow-up questions to jurors to assess their credibility and sincerity about their answers. *Id.* at 395 (noting that the court followed-up with individual questions to each juror about their responses on questionnaires). Indeed, the parties would likely encourage such follow-up questions, given that jurors are often "more forthcoming" in response to questions to the court. *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022)  ("[A]s Judge Weinfeld opined, 'based on more than three decades of judicial service,' that he was 'persuaded beyond peradventure of doubt' that court-led voir dire 'without exception, has resulted in the empanelling of fair and impartial juries . . . selected expeditiously and with full protection of a defendant's constitutional right to an impartial jury' even in cases involving 'the widest publicity in the news media over extended periods of time.'").  Sending a questionnaire that will require the Court to re-ask many of the same questions in court will unnecessarily delay jury selection for little or no benefit.

Finally, in addition to risking the expediency and candor of the jury selection process, sending a case-specific questionnaire to jurors also risks exposing jurors to pretrial publicity from its own questions. If jurors receive a case-specific questionnaire from the Court without first hearing the Court's admonitions about avoiding pretrial publicity and not discussing the case with others, many jurors will likely seek out information about the case. *See Skilling*, 561 U.S. at 454 (noting that many prospective jurors likely talked about case-specific issues "particularly once they learned upon receiving the written questionnaire that they might end up on Skilling's jury") (Sotomayor, J., concurring in part). Just as the Court found in *Yandell*, this case does not have the level of publicity that defense contends, even in the wake of the *Yandell* trial itself. 2023 WL 5596441 at *2. It is unlikely that the panel of potential jurors will exhibit a level of prejudice from prior publicity anywhere near the cases defendant cites to support his motion. ECF 1346, at 4 (citing *United States v. Collins*, 109 F.3d 1413, 1417 (9th Cir. 1997)). A case-specific jury questionnaire could therefore cause some jurors to be tainted by pretrial publicity.

The United States therefore asks this Court to follow the best practices outlined by the Ninth Circuit Jury Trial Improvement Committee and either simply use the jury questionnaire to screen potential jurors for availability and basic biographic information, or not use one at all. This practice is the best way for the Court to "obtain[] an impartial jury . . . with reasonable expedition." *Jones*, 722 F.2d at 529.

## IV.   CONCLUSION

The United States asks this Court to deny the defendants' motion for a jury questionnaire, or to limited granting of the request to basic hardship and biographic information questions, if the Court finds that such questions will significantly improve efficiency in jury selection.

Dated: November 14, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ JAMES R. CONOLLY
JAMES R. CONOLLY
Assistant United States Attorney