THERESA M. DUNCAN
Admitted *Pro Hac Vice*
Law Office of Theresa M. Duncan LLC
P.O. Box 2769
Santa Fe, NM 87504
(505) 710-6586
teri@duncanearnest.com

CRISTINA BORDÉ
Admitted *Pro Hac Vice*
Law Office of Cristina Bordé
33 E. Main Street
Suite 400
Madison, WI 53703
608-620-3307
cristinaborde@gmail.com

Attorneys for Evan Perkins

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **EVAN PERKINS**, <br><br> Defendant. | No. 1:20-cr-0238 JLT SKO <br><br> **DEFENDANT EVAN PERKINS' REPLY IN SUPPORT OF MOTION TO CONTINUE AND SEVER TRIAL** <br><br> **DATE: NOV. 18, 2024** <br> **TIME: 9:00A.M.** <br> **PLACE: HONORABLE JENNIFER THURSTON** <br> **COURTROOM 4** |

Defendant Evan Perkins respectfully submits this reply in response to the government's opposition to his motion to continue and sever his trial. ECF No. 1385. For the reasons stated in that motion and in this reply, Mr. Perkins asks the Court to continue his trial for at least six months and to sever his trial from the co-defendants proceeding to trial on January 14, 2025.

# ARGUMENT

**I. Given the Late Disclosure of Voluminous and Exculpatory Discovery, Mr. Perkins Will Not Be Prepared for Trial in January 2025.**

*A. The Exculpatory Cell Phone Data Should Have Been Disclosed Long Ago, and Mr. Perkins Needs Additional Time to Process It and Potentially Obtain an Expert to Analyze It.*

It is undisputed that on September 19, 2024, less than four months before trial, the government disclosed for the first time over 1200 pages of selected messages from a cellphone belonging to a participant in the murders for which Mr. Perkins is charged. These messages are contemporaneous with the charged murders and are exculpatory of Mr. Perkins. They are discoverable under Fed. R. Crim. P. 16(a)(1)(E) because they are material to preparation of the defense. The cellphone itself and the native data collected using Cellebrite are also discoverable under Rule 16(a)(1)(E)(i) (documents and objects) and (a)(1)(F) (reports of examinations and tests). Yet, the government still has not produced the native data from this cellphone. As Mr. Perkins explained in his motion, the native data is important because the cellphone belonged to the shooter in the murders with which Mr. Perkins is charged and may contain important information such as additional communications and location data.

The government seeks to excuse its late production of this evidence by arguing it contains Jencks material. ECF No. 1385 at 6. It does not. None of the text messages are "statements" within the meaning of the Jencks Act. *See* 18 U.S.C. § 3500 (e) (1) (indicating that a written statement made by a witness only qualifies as "statement" covered by the statute if it is "signed or otherwise adopted or approved by him"); *United States v. Yarber,* No. Misc. Dkt. 2013-25, 2014 WL 843602, at *5 (A.F. Ct. Crim. App. Feb. 20, 2014) ("We do not see

how text messages constitute 'statements' [under the Jencks Act], as [the witness] did not sign or otherwise adopt or approve them by incorporating them into an official statement to the Government . . ."); *see also Palermo v. United States*, 360 U.S. 343, 345 (1959) (noting that the purpose of the Jencks Act was to allow the defense "under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses"). The cellphone extraction would be discoverable regardless of whether its owner became a government witness, and the Jencks Act does not shield from discovery all evidence related to a witness the government may call at trial. The government knows this. Indeed, when asked about the pdf file containing the selected text messages the government explained that it thought it previously had disclosed the native data when it disclosed Cellebrite reports from other relevant cell phones. *See* Trans. of Oct. 30, 2024, Status Conference, at 24-25.  That the government's discovery failures may have been inadvertent, does not make them any less prejudicial to Mr. Perkins.

Moreover, this evidence contains purported statements by Mr. Perkins and thus should have been disclosed last year (by September 8, 2023) pursuant to Judge Oberto's discovery order.[1]  See Trans. of Aug. 30, 2023, Motion Hearing, at 10-11.; *see also* Fed. R. Crim. P. 16(a)(1)(B)(1).

---

[1] Indeed, the Jencks material contains another cellphone containing purported statements by Mr. Perkins (again around the time of the shootings with which he is charged), which the government had not previously disclosed. Counsel has not yet been able to access the full download of this phone as it is still being processed by the CDA. The late disclosure of this evidence has further prejudiced Mr. Perkins and made a January trial more impossible.

3

In sum, the government's late and incomplete disclosure of the exculpatory cellphone evidence violated discovery orders and continues to prejudice counsel's ability to prepare for trial.

### B. The Voluminous Wiretap Data Should Have Been Disclosed Long Ago, and Mr. Perkins Needs Additional Time to Review It.

It is equally undisputed that the government waited until October 23, 2024, less than three months before trial, to disclose 316.8 gigabytes of wiretap data, including at least 221 gigabytes (Sacramento Wiretaps) that had not been previously produced. Defense counsel has not even received the Sacramento Wiretaps as they are still being processed by the coordinating discovery attorney to make them accessible to counsel. This is a massive amount of information that counsel cannot review in the weeks left before trial. The government does not deny this, but rather argues that it is no big deal because Mr. Perkins was not intercepted on any of those wiretaps. ECF No. 1385 at 5-6. The government misses the point. Mr. Perkins' phone calls are not the only ones that matter to his defense. Phone calls in which he or others related to the alleged homicides and racketeering acts are discussed also matter. However, the timing of the disclosures has made it impossible for Mr. Perkins to review those wiretaps and integrate relevant information into his defense by January 2025.

Moreover, the government's assertion that it will continue to provide information in the weeks remaining before the January trial date provides no comfort; the defense is already behind, and the continued late disclosures will only further prejudice Mr. Perkins if he is not granted a continuance.

4

### *C. The Government Created the Need for the Continuance.*

In its response, the government repeatedly criticizes Mr. Perkins for not seeking a continuance sooner. ECF No. 1385 at 5-6, 7. However, the need for the continuance did not arise until after the government late-disclosed the evidence described herein, which occurred on September 17, 2024, and October 23, 2024. Mr. Perkins did not seek a continuance earlier because he did not know he would need one. At a hearing on October 30, 2024, Defendant Brandon Bannick on behalf of himself and Mr. Perkins notified the government that they would be seeking a continuance due to the late disclosures. And Mr. Perkins filed his motion to continue the following week.

Mr. Perkins is not seeking a continuance for the sake of a continuance; to the contrary, he wants his case to be resolved expeditiously. At the same time, he wants it to be resolved fairly, which means after his counsel have had time to review and process the voluminous and highly relevant late disclosures.

The government also criticizes Mr. Perkins for not filing his discovery motion sooner. ECF No. 1385 at 4. This criticism is unfair. Undersigned counsel requested the discovery referenced in that motion in June 2024. The government did not respond to those requests until the following month. For most of the requests, the government responded the materials were "discovered or in the upcoming discovery if it exists." As the government notes in its motion, it disclosed voluminous materials on July 23, 2024 (Bates 41532-49379). The defense processed that discovery in August. During this time, Defendant Kenneth Johnson filed a motion seeking additional discovery, which included some of Mr. Perkins' outstanding

5

requests. ECF No. 1201. Although the government opposed this motion, in written and oral communications, the government indicated it would be disclosing additional responsive materials shortly. The government made an additional disclosure on September 18, 2024, which included the 1200+ page exculpatory document discussed earlier (Bates 49380-50626). Defense counsel processed that discovery in late September to early October. On October 11, 2024, the defense requested the native of the cellphone from which the document was created, via the Coordinating Discovery Attorney (CDA).  Contemporaneously, defense counsel began drafting the discovery motion filed two weeks later.  Counsel has been diligent in requesting specific discovery and the government has routinely indicated that discovery was forthcoming. The government cannot now complain that Mr. Perkins delayed when he waited for the promised discovery before filing the motion.

> **D.** ***A Continuance is Necessary to Protect Mr. Perkins' Right to a Fair Trial.***

The bottom line is that Mr. Perkins will not be ready for trial in January 2025.  His counsel need at least six months to complete their review of the massive wiretap disclosure, to process the still undisclosed cellphone data, to hire an appropriate expert if necessary and to complete their investigation. Mr. Perkins' request for more time is not a claim "generally" that more time is necessary (ECF No. 1385 at 4) but is a specific request based on articulable facts. It should be granted.

## II. A Severance is Necessary to Protect Differently Situated Defendant's Constitutional Rights.

The government is correct that the primary relief Mr. Perkins seeks in his motion is a continuance of his trial for the reasons stated above. ECF No. 1385 at 3. His request for severance is based on the knowledge that other defendants, particularly Defendant Kenneth Johnson, want trial to proceed in January. His request for severance acknowledges Mr. Johnson's rights while at the same time protecting his own rights to prepare and present a defense.

Mr. Johnson and Defendant Frank Clement have represented that they, too, have been prejudiced by the government's late disclosure of the partial cell phone extraction and the wiretap data. ECF No. 1362, 1390. However, they have asked the Court for the remedy of exclusion rather than a continuance. *Id.* The Court cannot vindicate their rights and Mr. Perkins' rights at a joint trial given the evidence they seek to exclude is exculpatory as to Mr. Perkins. This is a quandary of the government's making and none of the defendants should be prejudiced in their defense because of that.

Mr. Perkins and Mr. Bannick are both charged in Counts 1, 8, and 9. Neither of them is alleged to be a member of the Aryan Brotherhood (AB), and the predicate acts attributed to them in Count 1 consist solely of the VICAR murders with which they are charged and alleged fraud by Mr. Perkins. As such, a joint trial with just the two of them would be narrow and expeditious. *Cf.* ECF No. 1340 at 5-6 (granting Defendant Justin Gray's motion to sever in part because his "role in this case as alleged, though extraordinarily serious, is relatively limited"). Because they are not alleged to be AB members, Mr. Bannick and Mr. Perkins do not have the

same need to challenge enterprise evidence as other defendants may have. And Mr. Perkins would be open to stipulations on this element that would further streamline the trial.

Moreover, if Mr. Perkins and Mr. Bannick are severed from the January trial group, they could be tried with the September 2025 or April 2026 co-defendants. In either of those scenarios, the government will already be presenting evidence that it likely would present against Mr. Perkins and Mr. Bannick. If necessary, the prejudice to Mr. Perkins from the late disclosure can be remedied by a severance and the burden on the government of separate trials is limited given that he can be tried with defendants who will already be tried separately.

## III. CONCLUSION

For the foregoing reasons and those given in his motion, Mr. Perkins respectfully moves the Court to continue his trial for at least six months and to sever his trial from the defendants proceeding to trial on January 14, 2025.

Respectfully Submitted,

*/s/ Theresa M. Duncan*
THERESA M. DUNCAN

*/s/ Cristina Bordé*
CRISTINA BORDÉ

Attorneys for Defendant Evan Perkins