JANE FISHER-BYRIALSEN
Fisher & Byrialsen, PC
4600 S. Syracuse Street
Denver, CO 80137
jane@fblaw.org

JEAN D. BARRETT
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
jeanbarrett@ruhnkeandbarrett.com

Attorney for:
FRANCIS CLEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **FRANCIS CLEMENT,** <br><br> Defendant. | **REPLY TO GOVERNMENT'S RESPONSE (Doc. 1412) TO CLEMENT'S MOTION FOR AN ORDER PROHIBITING INTRODUCTION OF INFORMATION DERIVED FROM CELLPHONES AND MATERIAL BECAUSE THE GOVERNMENT VIOLATED RULE 16(a)(1)(E) (Doc. 1362)** |

Defendant Francis Clement, by counsel, Jane Fisher-Byrialsen and Jean Barrett, hereby files this REPLY to the Government's Response (Doc. 1412) to Mr. Clement's Motion for an Order Prohibiting Introduction of Information Derived from Cellphones and Material (Doc. 1362).

As Mr. Clement has already stated in his Motion, key facts are beyond dispute:

- The Government effectuated a massive discovery dump of Title III wiretap data on October 24, 2024, i.e., some 316.8 Gigabytes of discovery. At least 221 Gigabytes had never been produced.

- On September 19, 2024, the Government produced 1243 pdf pages of text messages, cherry picked from a Cellebrite Extraction Report.

- The Government still has not provided the full Cellebrite extraction.

- The Government does not deny that within the Sacramento Wiretap Data were 122,688 files in 768 folders, including 8,484 audio or video files totaling at least 683 hours of audio and video. Nor does the Government disagree that this material was provided to the defense for the first time on October 24, 2024, nor that it claimed all this time that this material did not even exist.

- Title III Bash Wiretap folder produced to the CDA on October 24 contained 17,863 *newly-produced* files which included audio files, text messages and location data none of which had ever before been provided.

- The native Bash Wiretap files were requested by the CDA in October of 2023. The request was repeated multiple times in the ensuing year.

- The CDA was never referred to Maximus Media. She repeatedly asked for the native files, but was not provided the native files; nor was she directed to Maximus Media.

- When on October 31, 2024 the Government provided notice of the calls it intended to use from the Bash wiretap consistent with this Court's Scheduling Order, ¶ 2, while it identified call numbers in a letter to defense counsel, it did not provide the recordings themselves, and it did not identify from which interception the call numbers came, making it impossible for defense counsel to know to which calls it was referring.

- On November 4, 2024, the CDA notified the Government of the problem, explained that no one can identify the call just based on the numbers and asked the Government to identify from which interception the calls came from. The government did not respond until November 6, 2024, providing the information, a week past the Court's deadline. (See Doc. 1286).

- The transcripts of recordings still have not been provided, in violation of this Court's Order. (Doc. 1286).

The Government is well aware of the chronology of pertinent facts but does not disclose or admit them in its Response.  Following the CDA's request for a complete set of discovery, the Government sent a hard drive that was received by the CDA on October 13, 2023.  Almost

immediately (October 16, 2023), the CDA requested the native files for the Title II wiretaps and was told that the Government had recently received the wiretap files back from Maximus.

By January 4, 2024, the CDA told the government that there was no way to identify who the government is associating with each device. After further analyzing the discovery, the CDA determined that the Title III Wiretap data was not included on the hard drive sent by the Government.

Over the next several months, the CDA repeated her request for the native Title III files and Facebook files which had been more recently provided. On June 28 and again on July 17, 2024, the CDA requested from the government the native files related to a Facebook warrant return. The government did not provide the native Title III wiretap data. On August 27, 2024, the CDA followed up on multiple discovery requests, including prior requests concerning the seized devices, social media returns, Title III Wiretap data, replacement .ufdr files for the two corrupted phones, and the missing files from the government index. The CDA stressed that despite all the defense teams and the CDA running searches, none had been able to identify who the government associates with each account. The CDA even provided the government with an index the government could populate with associated user information for the seized devices and social media files. On September 9, 2024, having received no response, the CDA sent another email. The government reported that it has no master list of the phones recovered.

On October 24, 2024, the native Title III Wiretap data arrived at the CDA office. The data folder contains 2 folders: the "Bash Wiretap" and the "Sacramento Wiretap Data."

- the "Bash Wiretap Data": The CDA is in the process of determining what, if any, part of this data had been received in October 2023 and distributed to defense counsel;

- the "Sacramento Wiretap Data":   The CDA team never received or distributed the Sacramento Wiretap Data previously.

The Government has been continuing its discovery dump.  Several times in the past two weeks, the Government has disclosed massive amounts of information, materials, and audio and video recordings.

The Government invokes its oft-repeated demand that Mr. Clement move for a continuance. Missing from the Government's analysis, though, is the fact that a continuance is not the preferred remedy if the Government has acted in bad faith. A continuance is not an appropriate remedy "in view of the district court's pressing schedule, the status of the present case, and the failure of a prior continuance and deadlines to ensure timely discovery." *United States v. Wicker*, 848 F.2d 1059, 1062 (10th Cir. 1988). Based on the Government's conduct in the discovery phase of this case, there is no reason to believe there would ever be an end to the "discovery dumps" right before trial.

The Government cites six cases for its claim that Mr. Clement should seek a continuance if he has been surprised.  These cases are not applicable. Almost all of them concern surprise during trial – not pretrial – and where the non-disclosed information was discreet and easily reviewable during the brief in-trial adjournment.[1] In one of the only two cases that involved a pretrial discovery violation, there was a two-week continuance but it was unrelated to the discovery violation.[2] In the other pretrial continuance case, the nondisclosed evidence was a discrete fact (one of the cooperating co-participants in the alleged offenses had taken a

---

[1] *United States v. Marshall*, 132 F.3d 63 (D.C.Cir. 1998); *United States v. Bishop*, 469 F.3d 896 (10th Cir. 2006); *United States v. Chin*, 476 F.3d 144 (2nd Cir. 2007); *United States v. Flores-Mireles*, 112 F.3d 337 (8th Cir. 1997), all cited in Doc. 1412, p. 3.

[2] *United States v. Babichenko,* 543 F.Supp. 3d 946 (D. Idaho 2021), cited in Doc. 1412, p. 3.

polygraph), and pursuant to an apparent defense request the case was continued for two weeks.[3] These cases do not excuse the government's blatant disregard in the face of repeated requests over many months and court orders and case management schedules.

Citing *United States v. DiRoberto*, 686 F.3d Appx. 458, 462 (9th Cir. 2017), the Government argues that only "willful and blatant" violations warrant exclusion of evidence. In *DiRoberto*, the trial court excluded defense-proffered exhibits at trial because the defendant had failed to provide them to the government in discovery. The "willful and blatant" standard was easily met because the failure to provide the documents to the government "was not inadvertent." *Id.*, at 463. Here, it cannot be seriously contended that failure to disclose this information was "inadvertent." The Discovery Coordinator and defense counsel have been asking for the withheld information for years.

The Government cites *United States v. Gee*, 695 F.2d 1165 (9th Cir. 1983) for the unremarkable proposition that the choice of discovery sanctions is within this Court's discretion. In *Gee*, the district court denied the defendant's motion for a new trial, based on the Government's failure to turn over a transcript before trial. The Ninth Circuit ultimately ruled that the transcript was not a critical part of the trial, because the jurors had the tape recordings and did not even ask for the transcript during its second listening of the audio recording during jury deliberations. The defendant had been given the audio recording well before trial. When the discovery violation came to light, the judge halted to trial and, after a "lengthy discussion at the bench," the judge excused the jury while the judge and parties listened to the tape to ensure that the transcript was accurate. *Id.*, at 1168. Is this the procedure the Government recommends for the upcoming trial?

---

[3] *United States v. Williams*, 95 F.3d 723 (8th Cir. 1996), cited in Doc. 1412, p. 3.

The *Gee* procedure is not going to work in this trial. There are too many issues, defendants, and recordings. This Court has a right to control its proceedings and does not have to tolerate late disclosures by the Government. Because the Government urges this Court to impose sanctions only if it furthers "the goals of Rule 16," (Doc. 1412, p. 2), then it must admit that sound trial management is a fundamental objective of Rule 16 and a particularly legitimate objective of a trial court's imposition of discovery deadlines. Imposing the requested sanction would promote the goal of accomplishing prompt and full compliance with the court's discovery orders.

There are many factors this Court may consider when imposing sanctions, not just the ones the Government lists. "On occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *United States v. Wicker*, *supra,* 848 F.2d at 1061, citing *United States v. Campagnuolo,* 592 F.2d 852, 858 (5th Cir.1979) (there is no abuse of discretion when "a district judge for prophylactic purposes suppresses evidence ... the government should have disclosed earlier"); *see also United States v. Carrigan,* 804 F.2d 599, 603 (10th Cir.1986) (district court has "inherent power to control and supervise its own proceedings").

The Government is wrong in its claim that this Court does not have authority to sanction the Government by excluding information resulting from the Sacramento wiretap just because it presently plans on introducing them on rebuttal or for impeachment. (Doc. 1412, p. 7). "'Even where Rule 16 is inapplicable, the courts have discretion to exclude evidence as a sanction for violation of a discovery order.'" *United States v. Red Elk*, 185 F. App'x 716, 723 (10th Cir. 2006), quoting *United States v. Gonzales,* 164 F.3d 1285, 1291 (10th Cir. 1999).

The Government's invocation of *Roviaro v. United States*, 353 U.S. 53, 59 (1957) does not address the issue here. *Rovario* concerned whether information is disclosed at all, not whether it can be withheld in violation of this Court's discovery orders and, in some cases, Rule 16, and then dumped on the defense close to trial. There, the informant was described as a "special employee" who had been known to the federal agents for several years. On the night of the drug transaction, a police officer hid in the trunk of the informant's car, with the informant's knowledge, while the informant picked up the suspect and drove to a drug transaction. *Id.* at 56-57. The informant did not testify at trial. The Court explained: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Id.* at 60-61. The Court reversed the conviction. *Id.* at 63-64.

## Conclusion

With this pattern and history, this Court should have had enough. The relief requested is essential to protect both Mr. Clement and the integrity of this Court and its orders. In the words of one U.S. District Court judge:

> Due diligence on the part of the government is an implicit requirement of Rule 16. If the government were allowed to sit on evidence, and wait until the last minute to analyze the evidence, and then claim the results just came into their possession, it would blow a huge hole in the government's disclosure obligation under the rules.

*United States v. Brown*, 308 F. Supp. 3d 620, 628 (D.R.I. 2018). In *Brown*, the government held the phone of a co-conspirator for two years, withholding it from defense counsel, for two years. Closer to trial, the government had an analysis done of the phone and then turned over a new Cellebrite report. The trial court excluded the Government's report because of the late disclosure,

observing that its late disclosure "must be taken in the context of a history of discovery from the government that was at best slow, sporadic, and untimely…" *Id*., at 627.  Such are the circumstances here.

                                  Respectfully submitted,

                                  s/*Jane Fisher-Byrialsen*
                                  JANE-FISHER-BYRIALSEN
                                  JEAN D. BARRETT

                                  *Attorneys for Francis Clement*