THERESA M. DUNCAN
Admitted *Pro Hac Vice*
Law Office of Theresa M. Duncan LLC
P.O. Box 2769
Santa Fe, NM 87504
(505) 710-6586
teri@duncanearnest.com

CRISTINA BORDÉ
Admitted *Pro Hac Vice*
Law Office of Cristina Bordé
33 E. Main Street, Suite 400
Madison, WI 53703
608-620-3307
cristinaborde@gmail.com

Attorneys for Evan Perkins

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **EVAN PERKINS, ET AL.** <br><br> Defendant. | No. 1:20-cr-0238 JLT SKO <br><br> **EVAN PERKINS' REPLY TO UNITED STATES OPPOSITION TO MOTION TO SEVER** <br><br> **DATE: DEC. 4, 2024** <br> **TIME: 9:00A.M.** <br> **PLACE: HONORABLE JENNIFER THURSTON** <br> **COURTROOM 4** |

Defendant Evan Perkins respectfully submits this reply to the government's opposition to his motion to sever his trial from his co-defendants. Doc. 1416. For the reasons stated in his motion and those given below, a severance is necessary to protect Mr. Perkins' right to a fair trial.

Mr. Perkins' motion set forth several specific reasons why a joint trial would present a serious risk of harm to his right to have the jury make a reliable judgment about his guilt or innocence. First, he is not alleged to be a member of the charged enterprise (the Aryan Brotherhood or AB). The government does not dispute this, but counters that he is alleged to be an associate and to have committed the charged offenses while acting on behalf of and in furtherance of the enterprise. Doc. 1444 at 2. It further argues that any claim Mr. Perkins is not "not part of the AB enterprise … is more properly a defense at trial and not a ground for severance." *Id*. This argument is based on a misunderstanding of Mr. Perkins' point, which is not that he is not a "part" of the AB enterprise (although in truth he is not), but that his alleged role in the charged enterprise differs substantially from his co-defendants. An "associate" is very different from a "member" in terms of position within an enterprise, including alleged knowledge of an enterprise's operations, depth of involvement in the affairs of the enterprise, and authority over others, as well as in the proof necessary to prove agreement to participate in the alleged enterprise.

To convict Mr. Perkins of conspiracy to participate in a racketeering conspiracy (Count 1), the government must prove that he agreed to conduct or participate in the AB's affairs through a pattern of racketeering activity. It must show a "nexus" between the enterprise and the racketeering activity. *United States v. Yarbrough*, 852 F.2d 1522, 1544 (9th Cir. 1988). "A nexus exists 'when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise.'" *Id*. (quoting *United States*

*v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980)). Where, as here, a defendant is alleged to be an associate rather than a member of an enterprise, the government typically relies on the second prong of this test. Indeed, the indictment alleges the second prong, namely that Mr. Perkins agreed personally to commit two predicate acts. Doc. 1098 at 9.

The remaining defendants who are alleged to be AB members[1] (Defendants Stinson, Johnson, Clement, Weaver, Pitchford, and Collins) are situated differently due to their alleged status as members. This is a difference that matters. In a similar case in which alleged members and associates of an enterprise were joined for trial, the court explained:

> Most of the defendants in this case would satisfy the first prong of this test if the government could prove that their activities were performed in their capacity as "members" of the Gambino Family. But associates, such as Daly, Giardina, Miron and Russo, probably could only be connected through the second prong, which would require that they agree to commit offenses relating to the activity of the enterprise. The jury in the Port Mobil trial was thus charged that in order to find the "connection," it had to find that a defendant had knowledge of the enterprise and at least some of its criminal activities, and knowledge that his personal predicate activities were intended to be committed in the conduct of, and in furtherance of, the enterprise's affairs.

*United States v. Gallo*, 668 F. Supp. 736, 759 (E.D.N.Y. 1987) (severing the trials of three defendants alleged to be associates rather than members of the charged enterprise). In this case, the difference in status between Mr. Perkins and the co-defendants alleged to be AB members is likely to confuse the jury at a joint trial and prevent it "from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). In a joint trial, the jury

---

[1] Mr. Perkins is not endorsing the government's allegations against these defendants but merely pointing out the differences in the allegations against them.

3

would be asked to apply two very different legal standards in deciding whether Mr. Perkins and others are individually guilty of the same crime, creating a substantial risk of juror confusion. "[T]he practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968).

Consistent with the lesser role of an "associate," Mr. Perkins is alleged to have played a very limited role in the charged conspiracy. The indictment alleges he agreed to commit two predicate acts (fraud and murder) within a three-month period (February-May 2023), whereas the racketeering conspiracy is alleged to have lasted for at least eight years (2015-March 1, 2023) and to have involved multiple murders, assaults, kidnappings, robberies, and other crimes. The government does not dispute this, but rather relies on the law's general preference for joint trials to argue against severance. Doc. 1444 at 2-4. Where there is a significant danger of undue and unfair prejudice to a defendant, as there is here, this preference must give way to the defendant's right to a fair trial and a severance should be granted. *See Gallo*, 668 F. Supp. at 750 ("Where the evidence against the 'minor' defendants is 'so little or so vastly disproportionate' in comparison to that admitted against the remainder of the defendants, the likelihood of spillover prejudice is greatly enhanced. … The courts must be scrupulous to avoid the spectre of guilt by association—or, more likely, guilt by confusion.") (quoting *United States v. Capra*, 501 F.2d 267, 281 (2d Cir. 1974)).

In his motion, Mr. Perkins argued he would be prejudiced by the introduction of evidence of a plethora of violent crimes unrelated to him, including four murders, four conspiracies (or directives) to murder, attempted arson, at least two robberies, a kidnapping, a

4

beating, a stabbing, and episodes of drug distribution. Doc. 1416 at 15-16. The government responds that "[t]he fact that evidence is significantly stronger against one defendant than another is not an adequate basis for severance." Doc. 1444 at 4. Agreed. But that is not Mr. Perkins' argument. The prejudice to Mr. Perkins is not just in the strength of the government's evidence but also in the volume of allegations and evidence against other defendants. "[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539.

The violent crimes alleged in the indictment as predicate acts and/or substantive VICAR counts not involving Mr. Perkins are numerous and extremely prejudicial. For example, predicate act (o) alleges a home invasion robbery and assault of an innocent person who is likely to testify at trial. Predicate act (j) alleges a double homicide in Lomita, and the government has given notice that it intends to introduce 62 crime scene photos, 16 autopsy photos, and coroner reports to prove it. Predicate act (p) alleges the gun murder of a single victim, for which the government has noticed 46 crime scene photos and 20 autopsy photos. Likewise, predicate act (e) alleges a murder by stabbing for which the government has noticed 26 autopsy photos. Thus, in a joint trial, the government intends to introduce over 100 disturbing crime scene photos, 62 gruesome autopsy photos, and other inflammatory evidence unrelated to Mr. Perkins' alleged role in the enterprise or the substantive offenses with which he is charged. Regardless of any limiting instructions, this avalanche of prejudicial evidence would destroy any possibility that

a jury could weigh the evidence specifically concerning Mr. Perkins in a fair manner. *Cf.* Doc. 1340 [Gray Severance Order] at 6 ("Due to the volume of evidence that will be admissible and necessary at the joint trial and the likelihood that the evidence presented will be graphic and emotionally jarring, the Court concludes that Mr. Gray would suffer a high risk of prejudice if he were tried with the other six defendants.").

The government also argues that severing Mr. Perkins' trial would "undermine judicial efficiency as it would lead to a repeated and lengthy presentation of enterprise evidence regarding the Aryan Brotherhood." Doc. 1444 at 2. However, the existence of the enterprise, its effect on interstate commerce, and whether it engaged in racketeering activity are facts that likely will be undisputed as to Mr. Perkins. The main question in Mr. Perkins' trial will not be the existence of the enterprise, but rather his alleged participation in furthering its activities. Because of this, while the government will be required to introduce enterprise evidence to prove the conspiracy and VICAR counts against Mr. Perkins, the evidence needed would be substantially narrowed in a trial involving Mr. Perkins alone. *See* Doc. 1340 [Gray Severance Order] at 4-5 (noting that although duplication of evidence would be inevitable in a separate trial for co-defendant Justin Gray, a pared-down version of the evidence would suffice to prove the racketeering and enterprise elements).

The government also argues that it would be burdened if it were required to introduce the same evidence during separate trials. Doc. 1444 at 3, 6. This burden is overstated. *See Gallo*, 668 F. Supp. at 757 ("The primary duplicative evidence in the series of severed trials ordered here, then, is the 'enterprise' evidence which is introduced to show the existence, structure, and

6

operations of the Family. This portion of the case has not taken more than two or three days in any of the trials. …More significantly, the later trials are certain to be shortened or even precluded by the earlier trial or trials. The government will get a better sense of what is effective, and where the strength of its proof lies. Prosecutors are more aware of what the jury responds to, and what it ignores. Duplicative and cumulative evidence becomes easier to identify and exclude."). Moreover, the fact that there are already three separate trials that will involve presentation of some of this evidence due to previous severances, should not weigh against Mr. Perkins' request for severance. He is as entitled to a fair trial as the other defendants. *See United States v. Green*, 114 F.4th 163, 163–69 (3d Cir. 2024) (quoting *Estes v. Texas*, 381 U.S. 532, 540 (1965)) ("Few guarantees are more central to our judicial system than that of a fair trial by jury. It is 'the most fundamental of all freedoms'—'the great bulwark of [our] civil and political liberties.'").

In addition, the government's claim of prejudice should be given minimal weight given that Mr. Perkins is seeking severance in part because his counsel needs additional time to process voluminous late-disclosed discovery. While Mr. Perkins would have sought severance regardless of the timing of the discovery for the reasons stated above, the government's delayed disclosure has seriously prejudiced Mr. Perkins and a severance would remedy that prejudice by allowing Mr. Perkins time to prepare his defense.[2]

---

[2] In its opposition, the government argues that the "instant Motion and Joinder to Motion are essentially the same" as the motion to continue and sever Mr. Perkins previously filed and later withdrew. Doc. 1444 at 1. While there is overlap between the two, the present motion raises a new and constitutionally significant ground for severance.

7

Finally, the government argues that severing Mr. Perkins' trial would burden multiple sets of jurors and require some witnesses to testify more than once. Doc. 1444 at 6. However, severing him would result in a very limited number of witnesses having to testify in two trials. And while a severance would require empanelment of an additional jury, "our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials." *Kotteakos v. United States*, 328 U.S. 750, 773 (1946).

As the government points out in its motion, this Court previously denied two motions for severance filed by co-defendants in this case. Doc. 818 (filed by Defendant Johnson) and 1009 (filed by Defendant Bash). Mr. Perkins is differently situated from both of those defendants and his grounds for severance are stronger. For example, the superseding indictment alleges that Mr. Johnson and Mr. Bash played a far more significant role in the alleged enterprise than Mr. Perkins over a far longer period. The indictment alleges three separate predicate acts against Mr. Johnson and six against Mr. Bash, both spanning several years. Doc. 1098 at 7-8. By contrast, Mr. Perkins is alleged to have committed only two predicate acts over the course of three months. *Id*. at 9.

Additionally, since the Court denied Defendants Johnson's and Bash's motions to sever, the government has alleged additional violent crimes (in none of which Mr. Perkins is implicated) in the Third Superseding Indictment, including two murders (predicate acts (e) and (p)), a kidnapping and assault (predicate act (m)), a home invasion robbery and assault (predicate act (o)), and a conspiracy to commit murder (predicate act (t)).

8

Mr. Perkins is far more like Defendant Jason Gray, whose trial the Court severed for reasons like those supporting severance here. Doc. 1340. Like Mr. Gray, Mr. Perkins is not alleged to be an AB member and his alleged role in the enterprise is significantly smaller than is alleged against his co-defendants. Both Mr. Gray and Mr. Perkins are charged with serious offenses (VICAR murder), but they are isolated events occurring on a single day. The only difference between them is that Mr. Perkins is charged in the Count 1 conspiracy and Mr. Gray is not. However, Mr. Perkins is charged in the Count 1 conspiracy only because the government has alleged a second predicate act against him, namely fraud (predicate act n). Doc. 1098 at 9. While criminal, fraud is a far less serious offense than others charged in the superseding indictment. And like Mr. Gray, much of the expected evidence at a joint trial would have nothing to do with Mr. Perkins. The reality is that in a joint trial, Mr. Perkins is likely to sit through many weeks of trial with no questions for the witnesses while the jury hears of multiple unrelated murders and other violent crimes.[3] Regardless of any limiting instructions, the avalanche of unrelated and highly prejudicial evidence would destroy any possibility that a jury could weigh the evidence specifically concerning Mr. Perkins in a fair manner. He is entitled to severance.

---

[3] This too is not a good use of scarce judicial resources. *See Gallo*, 668 F. Supp. at 757 (explaining the judicial economy of separate trials involving multiple defendants charged with a RICO conspiracy but alleged to have played very different roles in that conspiracy; "[T]he "overall" trial time probably has been diminished in this case by splitting up the trials without substantial overlap. The trial is much smoother and more concise. The evidence in each case does not scatter about the various contours of the conspiracy. There are one or two or three defense counsel cross-examining and raising objections rather than one or two dozen. Sidebars are much more infrequent. Continuances and adjournments are less common.").

**CONCLUSION**

For the reasons stated above, Defendant Evan Perkins respectfully moves the Court to sever his trial from his co-defendants.

                                         Respectfully Submitted,

                                         */s/ Theresa M. Duncan*
                                         THERESA M. DUNCAN

                                         */s/ Cristina Bordé*
                                         CRISTINA BORDÉ

                                         Attorneys for Defendant Evan Perkins