PHILLIP A. TALBERT
United States Attorney
STEPHANIE M. STOKMAN
JAMES R. CONOLLY
Assistant United States Attorneys
JARED ENGELKING
Trial Attorney, U.S. Department of Justice
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH JOHNSON,<br>FRANCIS CLEMENT,<br>BRANDON BANNICK,<br>EVAN PERKINS, and<br>JOHN STINSON,<br><br>　　　　　　　　Defendants. | CASE NO. 1:20-CR-00238-JLT<br><br>UNITED STATES' TRIAL BRIEF<br><br>DATE: January 14, 2025<br>TIME: 8:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.      INTRODUCTION

The United States submits this trial brief to outline issues that it anticipates may arise during trial. Pursuant to the Court's pretrial order, and the Court's awareness of the facts of the case from extensive briefing, this brief focuses solely on anticipated legal issues.

## II.      ANTICIPATED EVIDENTIARY ISSUES

### A.      Rule of Completeness

The United States has selected several portions of statements the defendants and their fellow Aryan Brotherhood members and associates made during wiretapped calls, calls with informants, and in messages sent through social media and other messaging applications. These statements are admissible

against the defendants as non-hearsay because they are (1) statements of the defendants themselves, and (2) co-conspirator statements made in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(A), (E). The rule against hearsay, however, precludes the defendants from choosing their own portions of the calls or text messages to introduce into evidence, because the defendants would then be introducing their own statements (or the statements of their *fellow* co-conspirators) and not the statements of a party-opponent. In other words, the Rules of Evidence give the United States discretion to decide which portions of the defendants' statements to introduce into evidence.

The exception to this rule is the rule of completeness. *See* Fed. R. Evid. 106. Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Under Rule 106, "the critical inquiry" is "the purpose for which the evidence is offered." *United States v. Lopez*, 4 F.4th 706, 715 (9th Cir. 2021). Therefore, a defendant can offer a portion of his own statement in order "'to correct a misleading impression in the edited statement' introduced by an opposing party," such as when redacted portions of a defendant's confession "distort[] the meaning of the statement," "exclude[] information substantially exculpatory of the declarant," or "exclude[] portions of a statement that are . . . explanatory of [or] relevant to the admitted passages." *Id.* (quoting *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014); *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985)).

In *Lopez*, for instance, the Ninth Circuit found that the rule of completeness required portions of the defendant's statement to be admitted at trial when the government redacted the defendant's statement mid-sentence. *Id.* at 716. According to the Court this created the misleading impression that the defendant was saying that he knew that a girl he met online with the nickname "Brit" was underage, when, in reality, he was saying he believed the online persona "Brit" to be a scam. *Id.* In a later portion, the government further edited the defendant's statement to make it appear as if he was admitting that he believed "Brit" was 13, when in full context he was saying that he believed "Brit" was really a government agent. *Id.* The specific example demonstrates the narrow and somewhat dramatic factual scenario in which the rule of completeness may be applicable.

The rule of completeness, however, does not create an evidentiary free-for-all once any clip or

portion of a co-conspirator statement is introduced into evidence. In other words, Rule 106 does not "require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version." *Vallejos*, 742 F.3d at 905. Instead, "'it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them.'" *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). As a result, the question in "rule of completeness" cases is whether a more complete recording is required "to correct a misleading impression" created by the recordings that *have* properly been entered into evidence. *Id.*

There is no such concern in this case. None of the portions of wiretapped calls that the government has selected to introduce at trial create a "misleading impression."

Notably, to the extent the defendants might argue that the rule of completeness requires the Court to allow them to introduce any statements they made—simply because the United States offers their inculpatory statements—the Ninth Circuit has rejected this argument. *See, e.g.*, *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000), *holding modified on other grounds by United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007). In *Ortega*, the Ninth Circuit held that the district court properly rejected the defendant's attempts to introduce his own exculpatory statements[1] merely because the government introduced the defendant's inculpatory statements from the same interview. *Id.* The court explained that the defendant did not have a right to introduce exculpatory statements "even if they were made contemporaneously with other self-inculpatory statements" because these exculpatory statements are hearsay and if the court allowed the defendant to introduce them the defendant "would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'" *Id.* at 682 (quoting *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988))

The United States anticipates that if such exculpatory statements exist, the defendants may seek to do what the defendant in *Ortega* attempted to do: ask the Court to allow them to introduce their own

---

[1] The defendant sought to introduce his own exculpatory statements that "(1) that the firearms found in the residence belonged to Ortega's cousin; (2) that Ortega was given the methamphetamine from an unnamed cousin; and (3) that Ortega had no knowledge of the methamphetamine or the indicia of drug trafficking found in the garage attached to his shared residence." *Ortega*, 203 F.3d at 681–82.

exculpatory statements merely because they appeared in the same conversations as the inculpatory statements the United States will introduce. The Court should follow the Ninth Circuit's lead and reject these efforts. Otherwise, the defendants will be able to transmit hearsay to the jury "without subjecting [themselves] to cross-examination, precisely what the hearsay rule forbids.'" *Id.*

In addition, to the extent that any defendant believes the rule of completeness requires the United States to make any additions to its audio clips, the additions must be made at the time the audio clips are presented at trial. The rule of completeness requires the correction to be offered "at the time" the recorded statement is introduced, Fed. R. Evid. 106, and the Ninth Circuit has noted that the rule requires additional portions of recordings to be introduced "contemporaneous" with the recording, *United States v. Lopez*, 4 F.4th 706, 715 (9th Cir. 2021). To the extent the defendants believe there are additional portions of calls "that in fairness ought to be considered at the same time" as the clips the United States intends to introduce, the Court should require the defendants to raise such objections in advance of trial so the parties can litigate these issues in advance of trial and the additional clips can be presented at the time the United States introduces its audio clips.

B. **Scope of Lay Witness Testimony**

The United States will introduce a number of intercepted calls and messages through various individuals, including co-conspirators and potentially law enforcement agents directly involved in the investigation of this case. The United States may ask these agents to interpret ambiguous phrases in the calls and messages, opine about individuals' roles in the organization, and identify individuals by gang moniker.

The Ninth Circuit has held that each of these topics is permissible lay witness testimony. First, "an officer may give lay testimony about the meaning of ambiguous phrases in recorded calls" if the interpretations are "based on the officer's observations in the case, [do] not rely on hearsay, and [are] helpful." *United States v. Torralba-Mendia*, 784 F.3d 652, 660 (9th Cir. 2015); *see United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (holding that an officer properly interpreted "'[m]an, it's done already' to mean 'he's given the cocaine to Kevin Freeman and that he's received money for it'" because this interpretation was based on the witness's personal knowledge of the investigation); *United States v. Simas*, 937 F.2d 459, 465 (9th Cir. 1991) ("Simas' statements to the FBI agents were vague

and, at times, seemingly incomprehensible. The listener's understanding of the words and innuendo was helpful to the jury in determining what Simas meant to convey."). The officer's interpretation of such ambiguous conversations must be based on "'his direct knowledge of the investigation,' including his 'direct perception of several hours of intercepted conversations ... and other facts he learned during the investigation.'" *United States v. Vera*, 770 F.3d 1232, 1242–43 (9th Cir. 2014) (quoting *Freeman*, 498 F.3d at 904–05).

Second, "[a] lay witness may opine about a person's role in an organization when the opinion is based on his own perceptions, is helpful to the jury, and does not require specialized knowledge." *Torralba-Mendia*, 784 F.3d at 661.

Third, a lay witness who testifies based on his personal observations may "match[] gang members to monikers and vice versa, translate[] gang jargon, and identif[y] indicia of drug trafficking." *United States v. Perez*, 962 F.3d 420, 434–38 (9th Cir. 2020) ("None of this testimony was impermissible under Rule 701. [The case agent] directly observed the communications, meetings, and searches he described.").

Any law enforcement witness who gives the aforementioned opinions will establish foundation for his opinions and perceptions through testimony regarding his extensive investigative work in this case, including the participation in the wiretap investigations from their inception, sitting in the wiretap room on surveillance and having to make real-time decisions based upon what they heard over the wire, conducting and listening to undercover or informant drug and firearm deals, listening to hundreds of hours of wiretapped calls, and reviewing dozens of text messages. Their testimony will be based on these personal observations and experiences.

C.   **Impeachment**

Federal Rules of Evidence 608, 609, and 613 govern the impeachment of witnesses.

   1.   Rule 608: Character for Truthfulness

Rule 608 allows a party to attack a witness's credibility "by testimony about the witness's reputation for having a character for … untruthfulness, or by testimony in the form of an opinion about that character." Fed. R. Evid. 608(a). But such testimony by other witnesses is limited to "reputation" or "opinion" evidence, and may not include testimony about specific instances of conduct. *Id.*

Rule 608 specifically forbids any "extrinsic evidence … to prove specific instances of a witness's conduct in order to attack … the witness's character for truthfulness." Fed. R. Evid. 608(b). Such "specific instances" of prior untruthful conduct may only be inquired into on cross-examination. *Id.* The party cross-examining the witness is "stuck with whatever response" the witness gives to such inquiry. *United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993). Regardless of the witness's response, extrinsic evidence is not allowed.[2] *See id.*; Fed. R. Evid. 608(b).

Importantly, cross-examination about prior instances of conduct is limited to conduct that is "probative of the character for *truthfulness or untruthfulness*" of the witness. Fed. R. Evid. 608(b). Thus, a witness's prior bad acts that do not go to truthfulness—such as prior acts of violence or other illegal activity (other than criminal convictions under Rule 609)—are not a proper subject for impeachment and may not be inquired into on cross-examination of the witness. *See, e.g., United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002) (acts of violence were not "probative of [the witness's] character for untruthfulness or his credibility").

   2.   Rule 609

A prior conviction is admissible to impeach a witness, subject to Rule 403, if the conviction was: (1) a crime "punishable by death or by imprisonment for more than one year"; or (2) any crime in which "the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a). Even where these conditions are met, if more than 10 years have passed since the conviction or release from confinement, whichever is later, the conviction is admissible only if: (1) "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect"; and (2) the proponent gives the adverse party reasonable written notice in advance. Fed. R. Evid. 609(b).

---

[2] There is one narrow exception to this rule called "impeachment by contradiction." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009). Where extrinsic evidence of a witness's prior bad acts would contradict testimony the witness gave *on direct examination*, it may be admitted as "impeachment by contradiction." *Id.* For example, where a witness volunteered on direct examination that he would never touch drugs, painting himself as a "paragon of virtue," it was proper to admit extrinsic evidence of his prior arrest for cocaine possession. *See United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999). But, such impeachment by contradiction is only permissible where the fact is "material." *Kincaid-Chauncey*, 556 F.3d at 932. Moreover, impeachment by contradiction is generally available only where the statements at issue were "volunteered on *direct* examination," not when they were elicited by cross-examination. *Id.* at 932–33 (emphasis in original).

### 3. Rule 613: Prior Inconsistent Statements

"A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness. As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent." *United States v. McLaughlin*, 663 F.2d 949, 952 (9th Cir. 1981) (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)).

Rule 613 regulates the procedure for impeaching a witness with a prior inconsistent statement. The party seeking to impeach the witness with a prior statement "need not show it or disclose its contents to the witness" but "must, on request, show it or disclose its contents to an adverse party's attorney." Fed. R. Evid. 613(a). While a prior inconsistent statement may be inquired into on cross-examination, extrinsic evidence of the statement "is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b).

The court may also exclude extrinsic evidence of a prior inconsistent statement where it relates to a matter "collateral" to the case. As the Ninth Circuit has explained:

> A collateral contradiction is typically one on a point not related to the matters at issue, but designed to show that the witness' false statement about one thing implies a probability of false statements about the matters at issue. The inconsistency might have been collateral if in an earlier statement, Tamon [the witness] had said he had not shown up at the airport because he was with his girlfriend, and at trial, he testified that he had not shown up because he could not get off work. The truth of the charges against Higa [the defendant] would be unaffected by which account was true, but Tamon's credibility might be impaired if someone testified that he had previously told the girlfriend story. In contrast, Tamon's inconsistencies had to do with whether Higa had willfully participated in a conspiracy, or refused to participate. This was the matter charged against Higa and at issue in the trial. The district judge did not abuse his discretion by determining that extrinsic evidence of the inconsistent statements should be admitted.

*United States v. Higa*, 55 F.3d 448, 452–53 (9th Cir. 1995) (citation omitted).

### D. Cross-Examination of the Defendant

The scope of cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). A defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined as to all matters reasonably related to the issues the defendant puts in dispute or which are made relevant

by his or her direct testimony. *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985). "[U]nless prosecutors are allowed wide leeway in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." *Doyle v. Ohio*, 426 U.S. 610, 636 n.7 (1976). This includes the government's "right to challenge the defendant's story on cross-examination" and the right to "impeach the defendant by developing inconsistencies in his testimony." *United States v. Hearst*, 563 F.2d 1331, 1341-42 (9th Cir. 1977).

At trial, a defendant faces a "fair choice. He could testify, subject to oath and cross-examination. Or he could refuse to testify, and not have his silence used against him." *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998). That choice may be a difficult one, but it is "identical in kind to that faced by all defendants in criminal trials." *United States v. Lutz*, 621 F.2d 940, 945 (9th Cir. 1980). Should any defendant elect to testify in this case, the government is permitted to cross-examine him as to any subject reasonably related to his direct examination as well as any subject that has a bearing on the defendant's credibility, veracity, or believability. This includes the right to examine the defendant about any false statements he has made or that he has asked others to make on his behalf, as well as defendant's prior convictions pursuant to the aforementioned parameters of prior convictions for the purposes of impeachment. Defendants in this case all have prior convictions.

### E. Interstate Nexus

The government must prove that the enterprise "is engaged in" interstate or foreign commerce, or the enterprise's activities "affect" interstate or foreign commerce. The Government is not limited to proof that the charged racketeering acts affect interstate or foreign commerce. Rather, the Government may rely on proof that the enterprise is engaged in, or its activities as a whole, affect interstate commerce. The requisite effect need only be de minimus.

The United States will present evidence that the Aryan Brotherhood (AB) enterprise was engaged in drug trafficking activity, much of which took place entirely within California. This evidence is sufficient to satisfy the interstate nexus element of 18 U.S.C. § 1959, and the United States has submitted a proposed jury instruction that instructs the jury that proof of intrastate drug trafficking is sufficient to satisfy the interstate nexus element.

The Supreme Court has long held that purely in-state drug trafficking activity is sufficient to give the United States jurisdiction. In *Gonzales v. Raich*, the Supreme Court held that the Commerce Clause gives Congress the power to regulate purely intrastate drug cultivation and possession, because the production, possession, and distribution of controlled substances "are part of an economic 'class of activities' that have a substantial effect on interstate commerce," even when those activities occur entirely within a state. 545 U.S. 1, 17, 22 (2005). A decade later, the Supreme Court "graft[ed]" its holding in *Raich* "onto the commerce element of the Hobbs Act" and held that "a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction." *Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016). The Court therefore held that to obtain a conviction for Hobbs Act robbery for robbing a drug dealer, the government "need not show that the drugs that a defendant stole or attempted to steal either traveled or were destined for transport across state lines." *Id.* "Rather, to satisfy the [Hobbs] Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is 'commerce over which the United States has jurisdiction.'" *Id.*

The Second Circuit applied *Raich* and *Taylor* to the interstate nexus of 18 U.S.C. § 1959 and reached the same conclusion: proof that the enterprise trafficked in drugs alone was sufficient to establish that the enterprise's activities affected interstate commerce. *United States v. Aquart*, 912 F.3d 1, 17–18 (2d Cir. 2018) ("No different sufficiency conclusion is warranted here because the interstate commerce element is part of the VICAR statute, *see* 18 U.S.C. § 1959 (pertaining to enterprise 'engaged in, or the activities of which affect, interstate or foreign commerce'), rather than the Hobbs Act, *see id.* § 1951 (pertaining to robbery that 'affects commerce'). Both statutes fall within Chapter 95 of Title 18, entitled 'Racketeering,' and this court has drawn on Hobbs Act precedent in rejecting a sufficiency challenge to VICAR's interstate commerce element."). The Court should therefore instruct the jury that even evidence of purely in-state drug trafficking is sufficient to show that the AB racketeering activity affected commerce.

In addition to drug trafficking, the requirement is met when members or associates of the enterprise use cellphones to conduct their business, or maintain/use firearms manufactured outside the

state. *See, e.g., United States v. Nascimento*, 491 F.3d 25, 43-45 (ruling that the following evidence established the requisite de minimis effect on interstate commerce: (1) the enterprise, a violent street gang, kept an arsenal of at least nine different firearms to be used by enterprise members in carrying out the enterprise's affairs; all but one of the firearms had been manufactured outside of Massachusetts, and thus had moved in interstate commerce; (2) an enterprise member traveled interstate to obtain one of the firearms for use in carrying out the enterprise's affairs, and (3) enterprise members communicated with each other by cell phones to keep abreast of, and carry out, enterprise activities); *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005) (the enterprise engaged in trafficking in drugs obtained outside the United States and enterprise members used the instrumentalities of interstate commerce to conduct the enterprise's affairs, including telephones, pagers, Western Union and the United States Postal Service); *United States v. Pipkins*, 378 F.3d 1281, 1294-95 (11th Cir. 2004) (de minimus impact demonstrated when members of the enterprise (1) used instrumentalities of interstate commerce – pagers, telephones, cell phones and the internet to conduct the enterprise's affairs; and (2) used automobiles and interstate highways to transport underage prostitutes across state lines).

### F.     **Explicit "Reliability" Findings Required For Each Expert**

The United States intends to call several different expert witnesses to testify in this case, including forensic chemists who tested controlled substances, medical examiners who performed autopsies on the victims in this case, a chief customer officer for PenLink to testify about the collection of data during a wiretap and the system used to process wiretap interceptions, forensic examiners who extracted data from cell phones, a crime analyst who analyzed phone data (including historical cell site location and call detail records) relating to the offenses charged, and Sergeant Steve Slimp as a gang expert.

In addition to finding each expert qualified to testify about the subject matter of his or her expertise, under recent Ninth Circuit authority, the Court is required to make an *explicit* finding that the expert's testimony is "reliable," meaning that it has "a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188–90 (9th Cir. 2019) (internal quotation marks and citation omitted).

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping

role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." *Id.* at 1188 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). "This gatekeeping obligation 'applies to all (not just scientific) expert testimony.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)).

"An implicit reliability finding is 'not sufficient.'" *Id.* at 899 n.6 (quoting *Ruvalcaba-Garcia*, 923 F.3d at 1190). "Instead, to satisfy its gatekeeping duty under *Daubert*, the court must make an explicit reliability finding." *Id.* at 899 n.6 (internal quotation marks and citations omitted); *see also United States v. Irons*, 31 F.4th 702, 716 (9th Cir. 2022) (same).

While an explicit finding is mandatory, "district courts are vested with broad latitude to decide *how* to test an expert's reliability" because the "reliability analysis is a malleable one tied to the facts of each case." *Ruvalcaba-Garcia*, 923 F.3d at 1189 (emphasis in original) (internal quotation marks and citations omitted). In making that determination, the Ninth Circuit has emphasized that "voir dire is a recommended method for the district court to conduct a reliability determination and discharge its gatekeeping obligations." *Valencia-Lopez*, 971 F.3d at 899 n.5.

To satisfy the requirement for an explicit "reliability" finding for each expert, while maximizing procedural efficiency, the government respectfully suggests that, at the time the government asks the Court to recognize the witness as qualified to testify in a specified subject area, and after the defense has had an opportunity for voir dire, the Court find *both* that (1) the witness is qualified in the tendered area(s), *and* (2) that, based on the methodologies employed, the witness has a "reliable basis in the knowledge and experience of the relevant discipline" to offer opinions in the tendered area(s). These findings should be made before the witness is allowed to offer expert opinions.[3] *See, e.g., Ruvalcaba-Garcia*, 923 F.3d at 1188.

### G.  Witness Exclusion and Case Agent Designation

The government moves for exclusion of all witnesses until their testimony has been completed pursuant to Rule 615 of the Federal Rules of Evidence. The government will further move that ATF Special Agent Anthony Gonzales be designated as a case agent and be exempt from the exclusion order

---

[3] To assist the Court in making these required reliability findings, the government's expert disclosure letters are attached to this trial brief as Exhibit 1.

pursuant to Rule 615. *See United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985).

### III.  CONCLUSION

The foregoing is a summary of issues the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

Dated: December 23, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Stephanie M. Stokman*
STEPHANIE M. STOKMAN
JAMES R. CONOLLY
Assistant United States Attorneys
JARED ENGELKING
Trial Attorney, U.S. Department of Justice