MICHELE BECKWITH
Acting United States Attorney
STEPHANIE M. STOKMAN
JAMES CONOLLY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:20–CR–00238–JLT |
| Plaintiff, | UNITED STATES' OPPOSITION AND RESPONSE TO MOTION FOR RELEASE, INSPECTION, AND COPYING OF JURY SELECTION RECORDS |
| v. | [Docket No. 1945] |
| JUSTIN GRAY, | |
| Defendant. | |

## I.    INTRODUCTION

The United States, by and through Assistant United States Attorneys Stephanie Stokman and James Conolly, respectfully submits this opposition and response to the motion to inspect various records maintained by the Clerk of the Court, filed by defendant Justin Gray ("defendant" or "Gray"). Docket No. 1945. Gray's motion covers 12 different categories of material, data, and interrogatories directed to the Clerk of the Court. As detailed below, the United States respectfully requests that the Court grant parts of Gray's motion and deny other parts of his motion. Should the Court order the disclosure of records under the Jury Selection and Service Act ("JSSA"), the United States requests that the Court impose certain boundaries to avoid the imposition of unnecessary burdens on the Clerk of the Court and in recognition of the institutional need to protect prospective jurors, grand jurors, and the secrecy of grand jury proceedings.

## II. BACKGROUND

### A. Eastern District of California General Order Nos. 678, 680 Implement the Operative Juror Management Plan for the Third Superseding Indictment

On March 27, 2024, the Judges of the Eastern District of California issued General Order No. 678, Adoption of Amended Jury Selection Plan, pending approval by the Judicial Council of the Ninth Circuit. On June 24, 2024, the Judicial Council for the Ninth Circuit approved the Eastern District of California's Amended Jury Selection Plan with no changes for an additional five years. On June 24, 2024, the Judges of the Eastern District of California adopted the Jury Selection Plan under General Order 680.

### B. Defendant's case is set for Jury Trial in 2026

Defendant's case is set for jury trial in January 2026. The Jury Management Plan that covers the selection process for the panel of jurors scheduled to be called in January 2026 is the plan under General Order 678.

## III. ANALYSIS

### A. The Jury Selection and Service Act – 28 U.S.C. § 1867(f) and Section 6.04 of General Order 678

The JSSA bars disclosure of "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process" while a case is pending, except "as may be necessary in the preparation or presentation of a motion" by a party claiming there was a substantial failure by the Judges of the Eastern District of California to comply with the JSSA in selecting the jury. 28 U.S.C. § 1867(f).

The statute provides a right to "inspect jury lists . . . in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." *Test v. United States*, 420 U.S. 28, 30 (1975). The right to inspect jury selection records, although "unqualified," is not unlimited. *See United States v. Savage*, 2012 WL 4616099 (E.D. Pa. Oct. 2, 2012); *United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("the right to discovery by the Act and *Test* is not limitless."). A defendant's "unqualified right to records or papers encompasses 'only such data as [a defendant] needs to challenge the jury selection process." *United States v. O'Reilly*, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008).

1  Accordingly, and as it pertains to the selection of grand jurors, "numerous courts have held that only the
2  Master List from which the grand jury was selected need be turned over, not the names of specific jurors
3  selected from the grand jury pool." *Gotti*, 2004 WL 32858, at *11 (citing *United States v. Davenport*,
4  824 F.2d 1511, 1515 (7th Cir. 1987) (holding defendant had "not demonstrated why other records
5  besides those available jury lists might be required" to establish "an alleged deficiency" in the jury
6  selection process); *United States v. Harvey*, 756 F.2d 636, 642-43 (8th Cir. 1985) (master grand jury list
7  with names and addresses redacted provided defendant with "the ability to determine whether the master
8  grand jury list represented a racial and economic cross-section of the community"); *United States v.*
9  *McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (holding defendants' "unqualified right to inspection
10 was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool
11 from which the specific grand jurors were selected" and that "refusing to provide [defendants] with the
12 names, addresses, and demographics of the specific grand jurors who returned indictment against them"
13 was not error)). The same standards apply for the selection of jurors for jury trials.
14       In the Eastern District of California, § 6.02 of General Order Number states that any application
15 to inspect juror management records "must show exceptional and compelling circumstances why
16 disclosure should be allowed."
17       In this case, granting access to the county of residence, zip code, race, and age of the individuals
18 listed in the relevant master jury wheel is sufficient for Gray to determine whether to move to stay the
19 proceedings or dismiss the indictment. *See*, *e.g.*, *Gotti*, 2004 WL 32858, at *11; *United States v.*
20 *Nichols*, 248 F. Supp. 2d 1027, 1034–35 (D. Kan. 2003) (denying request for jury questionnaires of
21 jurors placed in master and qualified jury wheel because "[h]aving access to the method of selection is
22 enough to comply with 28 U.S.C. § 1861 et seq."); *McLernon*, 746 F.2d at 1123; *Davenport*, 824 F.2d at
23 1515; *Harvey*, 756 F.2d at 642–43.  In addition to denying defendant requests as unnecessary or
24 irrelevant to a JSSA challenge, courts have also rejected defendant requests as being an unwarranted
25 intrusion on juror privacy, an unnecessary intrusion on the secrecy of the grand jury, and unnecessarily
26 burdensome on the Clerk of the Court.  *See Davenport*, 824 F.2d at 1515 (refusing to disclose completed
27 juror questionnaires due to "serious consequences for individual jurors and the system"); *Savage*, 2013
28 WL 797417, at *3 (unnecessary burden); *United States v. Luna–Santillanes*, 2012 WL 3464764, at *5

(E.D. Mich. Aug. 14, 2012) (unnecessary burden).

Thus, under 28 U.S.C. §1867(f), Gray is only permitted to seek a narrow authorization from this Court to inspect jury lists for the master and qualified wheels from which the jurors for the January 2026 will be selected. As such, where Gray's requests hue closely to this narrow-authorization authority, the government does not object to limited inspection for the specific purposes articulated in the JSSA. However, Gray's motions also include demands for items that are not part of the narrow authorization granted by the JSSA. Instead, as discussed, the JSSA authorizes access to inspect a limited set of data and such information is sufficient for Gray to determine whether, in his view, a motion to stay or dismiss is warranted. To the extent that Gray seeks materials beyond this limited set of data (or seeks material that is already publicly available without a Court Order), the Court should deny those requests.

**B.     Analysis of Gray's Requests under the JSSA**

In the chart below, the United States addresses each of the 12 requests that Gray makes in connection with filing a potential motion under the JSSA.

//

//

//

//

//

//

//

//

//

| Request | Response |
|---|---|
| 1. **Administrative Forms**. Any AO-12 forms created that relate to the 2025 Master Jury Wheel and Qualified Jury Wheel used to summon trial jurors, as required by 28 U.S.C. § 1863(a). | The government does not object to the request for AO-12 forms completed *for the calendar year 2025* because, consistent with the JSSA, it seeks the "records or papers used by the clerk in connection with the jury selection process" to prepare or present a motion to dismiss the Third Superseding Indictment or stay proceedings based upon allegations that the Clerk's office did not substantially comply with the JSSA in selecting the jury. 28 U.S.C. § 1867(f). |
| 2. **Data.** Any additional statistical or demographic analyses produced to ensure that the Master Jury Wheel and Qualified Jury Wheel used to summon the trial jurors in 2025 complied with the Jury Plan, Jury Selection and Service Act, and constitutional requirements. Jury Plan, Section 1.04 | The government objects to this request. Gray cites to § 1.04 of the Jury Plan but that section did not require the Clerk to prepare or rely on "statistical or demographic analyses" to summon trial jurors. As such, this request is not proper under JSSA because it does not seek "records or papers used by the clerk in connection with the jury selection process." Moreover, to the extent the Clerk produces AO-12 forms, the data in those forms is responsive to this request. *See United States v. Ciancia*, 2015 WL 13798661, at *3–5 (C.D. Cal. Nov. 9, 2015) (denying request for any "other statistical report prepared with regards to the jury list creation, jury selection, or jury management" as not being within the JSSA). |
| 3. **Purge Procedures.** Any existing materials containing descriptions of the procedures used to purge duplicate records and any report or analysis of the procedures, as described in Jury Plan Section 2.02. | The government objects to this request. *See Diaz*, 236 F.R.D. at 480–81 (mechanics of selection or exclusion not relevant if defendant cannot show that ultimate result is unfair). Gray cites to § 2.02 of the Jury Plan but that section is self-explanatory. Specifically, it explains that the Clerk of the Court "shall" merge lists of potential jurors from voting and DMV records and purge any duplicate entries. "The Clerk will, either manually or through automated systems, eliminate as reasonably as possible such duplications before any selection procedures begin." Gray's request goes well beyond the JSSA-authorized "contents of records or papers used by the clerk in connection with the jury selection process" and demands that the Clerk of the Court prepare a declaration providing a "description of the procedures used to purge duplicate records" and production of "and any report or analysis of the procedures" about purging duplicate records. The JSSA does not authorize interrogatories to be propounded to the Clerk of the Court. |
| 4. **Calculation Procedures.** Any existing additional records pertaining to the "specific procedures" followed, as set forth in Section 2.02 and 2.03 of the Jury Plan, and the record of calculations performed as described in Section 4.06 of the Jury Plan. | The government objects to this request. Gray cites to §§ 2.02, 2.03, and 4.06 of the Jury Plan but each section is self-explanatory. Gray's request goes beyond the JSSA-authorized "contents of records or papers used by the clerk in connection with the jury selection process" and requires the Clerk of the Court to prepare a declaration or responsive pleading providing "specific and detailed procedures" followed by the Clerk when such procedures are already set forth in the sections cited by Gray. Nothing in the JSSA permits the defendant to propound interrogatories to the Clerk of the Court in an effort to generate evidence in order to help him determine whether to pursue a challenge under the statute. |

| | |
|---|---|
| **5. General Notice.** Any general notice or notices, issued in 2025, explaining the process by which names were randomly and periodically drawn from the wheel. Jury Plan, Sections 3.01 and 4.01. | The government does not object to the request for any general notice explaining the process by which names were randomly and periodically drawn from the wheel *for the calendar year 2025* because, consistent with the JSSA, it seeks the "records or papers used by the clerk in connection with the jury selection process" to prepare or present a motion to dismiss the Third Superseding Indictment or stay proceedings based upon allegations that the Clerk's office did not substantially comply with the JSSA in selecting the grand jury. 28 U.S.C. § 1867(f). |
| **6. Procedures for Non-Responses.** The existing procedures implemented to address prospective jurors who do not respond to a juror qualification form or had their juror qualification form returned by the postal service as undeliverable. | The government objects to this request. This request goes beyond the JSSA-authorized "contents of records or papers used by the clerk in connection with the jury selection process" and demands the Clerk of the Court prepare a response providing details about "procedures implemented to address prospective grand jurors who do not respond to a juror qualification form" or forms returned as undeliverable. Nothing in the JSSA authorizes the defendant to demand that the Clerk generate evidence in order to help him determine whether to pursue a challenge under the statute.  Moreover, the Ninth Circuit has held that the Clerk of the Court's failure follow up on unreturned questionnaires would not be a "substantial failure" to comply with the Act. *See United States v. Santos*, 588 F.2d 1300, 1303 (9th Cir. 1979); *Diaz*, 236 F.R.D. at 483. However, the government acknowledges this Court's ruling in *United States v. Yandell*, 2023 WL 2918803, at *4, as cited in Gray's motion. Mtn. at 6. |
| **7. Information on Failure to Submit.** The number of persons who failed to return a juror qualification form either electronically or on paper as described in Sections 3.02 and 3.03 of the Jury Plan. | The government objects to the request for the number of persons who failed to return a juror qualification form either electronically or on paper because this group of people are not relevant to the question of whether there was a substantial failure to draw a jury in 2025 from a fair cross section of the community.  If people failed to return a juror qualification form, that is an external force outside of the Court's control and thus not a basis to mount a challenge to the District's jury selection process. However, the government acknowledges this Court's ruling in *Yandell*, as cited in Gray's motion. Mtn. at 6. |
| **8. Failure-to-Appear or Submit.** The juror numbers (not name or address) of persons summoned for either failure to submit a juror qualification questionnaire or for failure to appear, as described in Section 3.03 of the Jury Plan. | The government objects to the request for the juror numbers of persons summoned for either failure to submit a juror qualification questionnaire or for failure to appear because "the identities and reasons for excusal of persons excused as jurors is not necessary to support a claim for a substantial failure to maintain a representative jury composition."  *Cerna*, 2009 WL 2998930, at *5 (N.D. Cal. Sept. 16, 2009); *Diaz*, 236 F.R.D. at 483 (refusing to grant defendant access to "questionnaires and lists of all disqualified and excused persons"). A proper challenge under the JSSA focuses on the pool from which a jury was drawn and whether it represents a "fair cross section" of the community; not the people who failed to appear.  Moreover, the Ninth Circuit has held the Clerk of the Court's failure follow up on unreturned questionnaires would not be a "substantial failure" to comply with the Act. *See Santos*, 588 F.2d at 1303. |
| **9. Proportionality Calculations.** The calculation of the number of potential jurors from each jury division to ensure compliance with the numbers listed in Sections 2.02, 2.03, and 4.06 of the Jury Plan. | The government does not object to the request for the calculation of the number of potential jurors *from the Fresno division for the calendar year 2025* because, consistent with the JSSA, it seeks the "records or papers used by the clerk in connection with the jury selection process" to prepare or present a motion to dismiss the Indictment or stay proceedings based upon allegations that the Clerk's office did not substantially comply with the JSSA in selecting the jury. 28 U.S.C. § 1867(f). |

| | | |
|---|---|---|
| | **10. Master Jury Wheel Data.** The entire Master Jury Wheel source data in electronic, accessible (excel spreadsheet) form for the Master Jury Wheel used (or to be used) to summon the trial jurors called in 2025, as described in Sections 2.01 and 2.02 of the Jury Plan. The data should include, as available, Race, Gender, Ethnicity, Age, Year of Birth, Zip Code, County, Jury Division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address. | The government does not object to the request for the source data in electronic form for the Master Jury Wheel used to summon the trial jurors in this case because, consistent with the JSSA, it seeks the "records or papers used by the clerk in connection with the jury selection process" to prepare or present a motion to dismiss or stay proceedings based upon allegations that the Clerk's office did not substantially comply with the JSSA in selecting the jury. 28 U.S.C. § 1867(f).<br><br>The government agrees that any data produced in response to this request should exclude information that could be used to identify specific individuals, such as name, address, or occupation. If exclusion of such identifying data is impossible, the material should be offered for viewing in the clerks office only. Relatedly, regarding footnote 1, page 7, of Gray's motion, the request to produce data in native form is not unreasonable, but the government requests such production to be produced either for viewing in the clerks office only, or subject to a protective order. |
| | **11. Status Codes.** Status codes for potential jurors selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond, were disqualified or exempted from jury service, or qualified for jury service, as described in the Jury Plan. The data should include the following: juror number, whether the form was returned undeliverable, whether the form was not returned, reason for disqualification, qualification status, race, gender, Hispanic ethnicity, birth year, zip code, city, county, and jury division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address. | The government objects to the request for status codes for potential jurors selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond, were disqualified or exempted from jury service, or qualified for jury service because whether a potential juror was not qualified, did not receive the summons, did not respond to the summons, was disqualified from jury service, or was exempted from jury service has no bearing on the representation of the pool from which the jury may be drawn. |

| | |
|---|---|
| **12. Sources of Data.** The original sources of data (voter registration and Department of Motor Vehicle lists) in electronic form as described in Section 2.01, limited to the 2025 calendar year. The data should include, as available, race, gender, Hispanic ethnicity, year of birth, zip code, city, county, and jury division but not any personal information or information that could be used to identify any individual such as name or address. | The government does not object to the request for original sources of data (voter registration and Department of Motor Vehicle lists) *during calendar year 2025* because, consistent with the JSSA, it seeks the "records or papers used by the clerk in connection with the jury selection process" to prepare or present a motion to dismiss the Indictment or stay proceedings based upon allegations that the Clerk's office did not substantially comply with the JSSA in selecting the jury. 28 U.S.C. § 1867(f).<br><br>The government agrees that any data produced in response to this request should exclude information that could be used to identify specific individuals, such as name, address, or occupation. If exclusion of such identifying data is impossible, the material should be offered for viewing in the clerks office only. Relatedly, regarding footnote 1, page 7, of Gray's motion, the request to produce data in native form is not unreasonable, but the government requests such production to be produced either for viewing in the clerks office only, or subject to a protective order. |

### C.  Protecting Juror Information

If the Court permits Gray to inspect any data or materials from the Clerk of the Court pursuant to the JSSA, and to the extent that the Court finds any of the requested items are appropriate to disclose to Gray in accordance with § 1867(f), the government respectfully requests that the Court order the Clerk of the Court to redact all PII (including names, social security numbers, dates of birth, and addresses) of any individuals existing in the data that is produced. *See McLernon*, 746 F.2d at 1123 (upheld district court's refusal to provide names and addresses of jurors); *United States v. Rice*, 489 F. Supp. 2d 1312, 1317 n.7 (S.D. Ala. 2007) (collecting cases).

To the extent that it is impractical to order the Clerk of the Court to redact a particular set of documents or data, the government requests that the Court order Gray to demonstrate why such documents or data are necessary to his motion. If, upon a showing by Gray, the Court concludes that such documents are necessary, the government requests that only Gray's counsel be given access to such documents at a specific time and location to be determined by the Clerk of the Court.

//
//
//

UNITED STATES' OPP. AND RESPONSE TO MOTION FOR JURY RECORDS

8

## IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests that Gray's motions to inspect jury records be granted in part and denied in part.

          MICHELE BECKWITH
Acting United States Attorney

Dated: July 9, 2025         By: /s/ *Stephanie M. Stokman*
          STEPHANIE M. STOKMAN
Assistant United States Attorney