ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>KENNETH BASH, et al.,<br><br>           Defendants. | CASE NO. 1:20-CR-00238-JLT<br><br>UNITED STATES' OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, STAY THESE PROCEEDINGS AND FOR STATUS CONFERENCE; AND OPPOSITION DEFENDANT PERKINS' PARTIAL JOINDER<br><br>DATE: December 1, 2025<br>TIME: 11:30 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.  INTRODUCTION

The United States files this response to defendants Jayson Weaver, Waylon Pitchford, and Alexander Van Beusekom's motion to dismiss or, alternatively, stay these proceedings and for status conference (ECF No. 2036), and to Evan Perkins' partial joinder in the motion (ECF No. 2037).  The Court's minute order of November 14, 2025, recognized that the bases for the dismissal or stay—lapse of the CJA funding and the government shutdown—have resolved at the time of writing, which leaves most of the motion moot for all four defendants.  ECF No. 2042.  Separately, Van Beusekom contends that his having been charged in July 2025, near the same time as CJA funding lapse, means his attorney will not have had time to prepare adequately by the April 21, 2026 trial.  On that basis, he seeks a continuance.  Perkins' joinder argues in favor of the dismissal based on the now-ended lapse in CJA funding, but requests that he be severed if the Court continues the April 2026 trial.  He has again presented no proper basis to sever his trial, and his motion should be denied.

Ninth Circuit authority does not support a continuance that would result in further severing of defendants in the group of five scheduled for trial in April 2026, and the government favors going forward with trial as currently scheduled. Since this Court's November 14 minute order, however, the Court granted defendant Andrew Collins' motion for new counsel. At the time of writing, new counsel for Collins has yet to be identified. The government recognizes that Van Beusekom's recent addition to the case, combined with Collins' need to acquire new counsel, may weigh in favor of a short continuance. It recognizes also that properly joined defendants should be tried together, as this Court has found repeatedly throughout this case. The government maintains that, if the Court decides a continuance is necessary, it should be a relatively brief continuance, to August 2026, for all five defendants to be tried in the same trial.[1] A delay of between three and four months will not prejudice any of the parties, as it will give them yet more time to prepare and is modest when compared to the 14-month continuance the defendants requested when asking for the April 2026 trial date.

The parties who have filed briefing here are asking for a continuance to August 2026 for trial, with the exception of Perkins. He contends that his attorney's schedule will not allow for trial in August, but then claiming that delay past that will violate his speedy trial rights, which he has not pressed until now. In assessing Perkins' purported prejudice, however, the Court has properly noted that Perkins himself demanded a severance to continue his trial from its original January 2025 date. If his attorney's schedule were truly putting his speedy trial right in jeopardy, that attorney can either withdraw or seek a continuance, but Perkins' attorney's schedule is not a basis to argue he is suffering an undue prejudice that demands he be severed. Moreover, Ninth Circuit precedent is clear that the scheduling preferences of one defendant in a properly joined group of defendants does not constrain the Court's ability to continue trial for all defendants if it finds one is necessary for defense preparation. Indeed, Ninth Circuit precedent directs a continuance for all in a situation like this, rather than a further severance.

---

[1] The government is prepared to discuss continuing co-defendant Justin Gray's August 2026 trial a reasonably short time to accommodate the larger trial, if it goes forward in August. The five-defendant trial should take precedence, and there will be no undue prejudice to Gray from a short delay caused by accommodating it.

UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY  2

II. **ARGUMENT**

A. **The issues of lapsed CJA funding and the government shutdown are now moot.**

As the Court indicated in its November 14, 2025 minute order, the defendants' main reasons to seek dismissal of this case or, alternatively, a stay in the proceedings have now largely resolved with an end to both the government shutdown and the lapse in CJS funding.  ECF No. 2042.

On November 13, 2025, the President signed into law HR 5371, which restores funding for CJA attorneys.  *https://www.congress.gov/bill/119th-congress/house-bill/5371/text* (last accessed November 24, 2025).  Section 144 of the bill provides funding for CJA lawyers, including counsel for the defendants in this case.  Specifically, HR 5371 appropriated "$1,564,373,000" to be "apportioned up to the rate for operations necessary to make payments, including to panel attorneys and related service providers, due under sections 3006A and 3599(g) of title 18, United States Code."  *Id.*

According to information provided by the Federal Defender for the Eastern District of California and Chief Judge Troy L. Nunley, the passage of HR 5371 means that CJA panel attorney payments may now be processed with payments to be made in daily batches of 4,000 in sequential order starting with the oldest payments submitted.  In addition, the funding includes an increase in the money allocated to cover the backlog of CJA panel attorney payments.  *See* *https://fingfx.thomsonreuters.com/gfx/legaldocs/movabjkkrpa/11132025ao_memo.pdf*, at 1–2 (last accessed on November 24, 2025) ("The CR funds the Judiciary at FY 2025 levels with the exception of Defender Services, which receives a $114 million increase above a hard freeze to address the backlog of panel attorney payments.").  It is estimated that the first payments will reach the Treasury Department for disbursement this week.

This Court should find that the motion to dismiss is moot there is no longer a live "case or controversy" that exists on that issue under Article III of the Constitution.  "Constitutional mootness is a jurisdictional issue requiring the Court to determine whether a case or controversy exists under Article III of the Constitution."  *White v. United States Army Corps of Eng'rs*, 659 F. Supp. 3d 1045, 1051 (N.D. Cal. 2023) (citing *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015)).  A matter must present a live controversy to resist dismissal for mootness.  *Id.*  Here, it is undisputed that the CJA funding lapse ended and payment vouchers are being processed at the time of this writing.  As a result,

1  the Court no longer has a live "controversy" about the CJA funding lapse before it and, accordingly, there is no case or controversy within the meaning of those constitutional terms and the court lacks subject matter jurisdiction to hear the claim. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

In the alternative, the Court should exercise its discretion to find that the issue of the CJA funding lapse is moot as a matter of prudential mootness. "'The doctrine of prudential mootness permits a court to dismiss an [action] not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief . . . .'" *White*, 659 F. Supp. 3d at 1051 (quoting *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014)). Here, prudential mootness applies because the sole basis, rationale, and circumstances for the motions to dismiss have dramatically changed since the beginning of litigation that forestall any occasion for meaningful relief.[2]

Indeed, as a result of the end to the lapse in CJA funding, at least one other judge in this district has ruled that defense motions to dismiss indictments based on that lapse are now moot. *See United States v. Arteaga Cruz, et al.*, Case No. 2:24-cr-00246-DAD, ECF No. 60 (Minute Order, Nov. 18, 2025). The United States respectfully requests that the Court follow the same approach and find the defendants' motions to dismiss are moot.

**B.     A modest continuance that maintains the current trial groups may be appropriate.**

At present, there are two trial groups in this case and no defendant has argued the existence of undue prejudice that would warrant severance to create a third. The main trial group comprises defendants Weaver, Pitchford, Collins, Perkins, and Van Beusekom. The other group includes only Justin Gray. While the government does not favor a continuance of the April 2026 trial, if the Court is inclined to grant a short continuance for these defendants, the government contends it need be no longer

---

[2] A finding of mootness also avoids the problem of the Court being invited to issue a prohibited advisory opinion on an issue that is now moot. "[A] federal court's 'role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The prohibition against issuing advisory opinions stands at the core of Article III's limitation on federal judicial power and underpins the justiciability doctrines of standing, ripeness, and mootness. *Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178, 1182 (W.D. Wash. 2024) (citing *Westlands Water Dist. v. Nat. Res. Def. Council*, 276 F. Supp. 2d 1046, 1051 (E.D. Cal. 2003); *see also W. Oil & Gas Assoc. v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990) ("The ripeness and mootness doctrines are based in part upon the Article III requirement that courts decide only cases or controversies.").

than August 2026. But, under Ninth Circuit authority and the interests of justice in this case, the continuance should be for all five defendants, or for none of them.[3] The Speedy Trial Act does not provide a basis for Perkins to seek another severance of his trial, as he has not established that he will be prejudiced by a continuance of a few months when he previously sought a longer continuance.

> **1.  Ninth Circuit precedent favors keeping all five defendants together for trial and continuing it if the ends of justice require further time for counsel preparation.**

Ninth Circuit precedent favors strongly that trial be continued for all defendants in a case, such as this one, where the defendants are charged with conspiracy and certain counsel require additional time to prepare. *United States v. King*, 483 F.3d 969, 973–74 (9th Cir. 2007) (citing *United States v. Gambino,* 59 F.3d 353, 362 (2d Cir. 1995)). As the Ninth Circuit emphasized in *King*, "the [Speedy Trial Act] was not intended to alter existing rules of joinder." 483 F.3d at 974. When the only claimed prejudice to other defendants objecting to a continuance is the delay itself, severance is not warranted. *Varella*, 692 F.2d at 1359 (In drafting the STA, "[Congress] felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time."). Provided that there is a reasonable basis to delay trial, a continuance with an exclusion of time for all defendants properly joined is appropriate. *King*, 483 F.3d at 973 (citing *United States v. Barnes,* 251 F.3d 251, 258 (1st Cir.2001) ("This sort of adjustment helps to ensure that the STA will not become a vehicle for altering existing rules of joinder and severance by compelling the government to prosecute properly joined defendants piecemeal.") Allowing defense counsel adequate time to prepare for trial is a reasonable basis to continue. *King*, 483 F.3d at 973 (citing *Gambino,* 59 F.3d at 362 (to determine whether delay is warranted in a case of properly joined defendants, the "only inquiry made in such multiple defendant cases is whether the delay is reasonable") (internal quotations omitted)).

When considering a motion to continue, the Court considers: (1) whether the failure to grant a continuance would result in a "miscarriage of justice"; (2) whether the case is "so unusual or so

---

[3] In Van Beusekom's motion to dismiss or stay the case, he indicated that the government would agree to a continuance of the April trial to early August. ECF No. 2036 at 5. To clarify, the government told the defense that it would not object to a continuance of the April 2026 trial if—and only if—the current group of defendants in that trial (including Perkins) were continued together. The government made clear that if any defendant claimed the continuance as a basis for severance, the government would object to the continuance.

complex" that it would be unreasonable to expect adequate preparation within the time limits prescribed by statute; and (3) whether, in a case that is not so unusual or complex, the failure to grant a continuance would deny defense counsel reasonable time for effective preparation, taking into account the exercise of due diligence. *Id*. § 3161(h)(7)(B)(i), (ii), (iv).  The Court has broad discretion to determine whether to grant or deny a motion for continuance. *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985).

Here, the relatively recent addition of Van Beusekom to this complex case, as well as Collins' status of counsel (discussed in a separate section below), may warrant a modest continuance of trial for all defendants.  Counsel for Van Beusekom joined the case in July 2025, shortly after the grand jury returned the Fourth Superseding Indictment charging Van Beusekom.  ECF No. 1970 (Indictment).  The government acknowledges that this indictment coincided with the lapse in CJA funding that continued until recently.  Van Beusekom's counsel indicates that he has worked to prepare his client's case, albeit without CJA resources needed to assemble a defense team, but has been preparing nevertheless.  ECF No. 2036 at 2.  Independent of these concerns, Van Beusekom adds, his attorney needs further time to review the discovery in this case, which is voluminous, and to prepare for trial.  *Id*. at 4.  Further, although Van Beusekom is not named in all thirteen predicate acts supporting the RICO conspiracy charged in Count One, Van Beusekom acknowledges that, because all five defendants set for trial are charged in that enterprise, "[e]ach of the five co-defendants scheduled for trial starting in April 2026 must be prepared to defend against all thirteen predicate acts." *Id*.; *see also* ECF No. 1857 (Order Setting the Trial Date, Apr. 7, 2025) (recognizing that the evidence of the RICO conspiracy to be presented against remaining defendants charged with that crime is "significantly overlapping.") Because Van Beusekom's counsel has not had the advantage of the same amount of time as all other defense counsel to examine this case, he is in a better position to argue for a continuance than any of his co-defendants.  Nevertheless, any continuance should be reasonable in length, and the government asks that it be limited to a few months, if the Court grants it.  The government notes that Van Beusekom has not sought a severance, and his co-defendants have not sought to sever him.  Indeed, if the Court finds that Van Beusekom needs more time for adequate preparation, the proper remedy is a continuance of the trial for all five defendants together.

### 2. Perkins has not established sufficient prejudice that would come from remaining joined with his co-defendants to warrant severing his trial.

Perkins has offered no proper basis to seek severance if the Court continues trial. He contends that a continuance past the current trial date, to August, will create a scheduling conflict for one of his two attorneys, Theresa Duncan, but claims that continuing trial until she is available would violate his speedy trial rights. He argues also that the inefficiencies created by severing him into a new trial will be slight. As to his first point, Perkins has the option of agreeing to continue the trial to a date on which Ms. Duncan will be available, and there is little prejudice to him in doing so. If Ms. Duncan believes the delay caused by asking for such a continuance will prejudice her client's speedy trial rights, she has the option to withdraw, and Perkins can continue with his other attorney, Cristina Bordé, alone, or replace Ms. Duncan. But he cannot make the Court and the other parties bend to his unwarranted demand for severance by claiming prejudice from a situation he has the power to adjust. As to his second point, Perkins vastly underestimates the litigation inefficiencies that will arise from creating yet another trial in this case. Severing him to create a new trial group will work an unnecessary drain on Court and prosecutorial resources, and his motion should be denied.

As this Court has found multiple times in this case, defendants charged together should be tried together. *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Hernandez-Orellana*, 539 F.3d 994, 1001-02 (9th Cir. 2008) (There is a "well-established ... preference for joint trials where defendants have been jointly indicted"); *United States v. Baker*, 10 F.3d 1374, 1386 (9th Cir. 1993). "Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). "[J]oint trials of persons charged with committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978).

Federal Rule of Criminal Procedure 14 permits a district court to grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) ("Rule 14 provides that, at the discretion of the trial judge, a severance may be ordered when it appears that a defendant may be significantly prejudiced by a joint trial with his codefendants").

As the Court recognized in its denial of severance motions in this case previously, all of the joined defendants are charged members of the RICO conspiracy and were active participants in the RICO predicate acts alleged, so they are properly joined for trial with the other defendants charged in Count One. As the Court explained in its denial of Perkins' original motion to sever:

> The nature of a RICO conspiracy often means that [not] all defendants were involved in each predicate act and not all were involved for the entirety of the conspiracy. *Salinas v. United States*, 522 U.S. 52, 64–66 (1997); *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004); *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008); *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011). If it were any other way, then a joint trial would rarely be possible in such actions. Rather, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Fernandez*, at 1242.

Order Denying Motion to Sever Filed By Perkins and Joined by Bannick (ECF 1490) at 4. As the Court noted in that order, as well as in its order denying co-defendant Kenneth Johnson's motion to sever, a joint trial for jointly indicted defendants "is the 'preference in the federal system.'" *Id*. at 2; *see also* Order Denying Defendant Johnson's Motion to Sever, ECF 818, at 4, *quoting Zafiro v. United States*, 506 U.S. 534, 537 (1993); ECF 1490, at 2. A defendant may only overcome that presumption by meeting a high standard for showing prejudice. ECF 818 at 4; ECF 1490 at 2 (citing *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994)). "A showing of some prejudice is not enough." ECF 1490, at 3. Perkins has shown no significant prejudice here.

        a.    **Perkins has not established prejudice warranting severance.**

In his current motion, Perkins provides no facts or circumstances to establish that he will suffer undue prejudice if his trial is continued. Of the defendants who were severed from the original trial of

2025, the Court severed only Gray based on reasons of prejudice that the Court has determined are still relevant.[4] The government understands from the Court's recent minute order that the sealed reasons for which the Court severed Perkins from the January 2025 trial did not, and do not, prevent him from being joined with the April 2026 trial defendants. The Court has considered the question of severance multiple times in this case, particularly with respect to Perkins, finding—with limited exceptions that are not present here anymore—that severance was not appropriate because the defendants have been charged together with RICO conspiracy involving multiple predicates executed by that enterprise.

In November 2024, Perkins filed a motion to sever (ECF No. 1416), which the Court denied (ECF No. 1490). Perkins then filed a motion for reconsideration, arguing further facts ex parte and under seal, and requesting that he be joined with a different trial group—resulting in a continuance of over a year. ECF No. 1534. In the redacted order granting Perkins motion to sever, the Court concluded that Perkins had shown sufficient prejudice to sever him from the main body of defendants in the January 2025 trial, but made clear that it did so only "reluctantly." ECF No. 1626 at 3. The Court determined that whatever prejudice Perkins had alleged in that motion was resolved by joining his trial with the already-severed defendants in the April 2026 trial. *Id*. at 4; ECF No. 1857. He does not now allege prejudice sufficient to warrant yet another severance, as the only harm he argues is delay. Of course, any delay would allow further time for his counsel to prepare, not less. Moreover, Ninth Circuit precedent is clear that mere delay is not sufficiently prejudicial to warrant severance. *Varella*, 692 F.2d at 1359 (holding that when the only claimed prejudice to a defendant objecting to a continuance is the delay itself, severance is not warranted).

The only prejudice Perkins argues now is a potential violation of his speedy trial rights arising from the few-month delay to a trial in December 2026 or January 2027, which he argues would be necessary to allow for Ms. Duncan to attend his trial after finishing another trial.[5] In the first instance,

---

[4] The Court ordered Gray to show cause why he should not be re-joined with the defendants going to trial in April 2026. ECF No. 2008. It appears that Gray answered that order to the Court's satisfaction, as it chose to maintain his severed status. ECF No. 2011.

[5] To the extent that Perkins' argues as part of his motion to sever that he does not want to force his co-defendants to trial "to protect their due process rights," the Court should disregard this position. ECF No. 2037 at 2. Perkins does not have standing to argue co-defendants' trial rights that do not affect him. Moreover, Perkins made a similar argument in his prior motions to sever, contending that he was requesting to be severed because his attorneys needed more time to prepare and he did not want to

Perkins offers nothing to support the estimated length of the conflicting trial and the time after it that would be required for Ms. Duncan to re-join his defense. Furthermore, the government notes, as the Court has, that Perkins here asserts his speedy trial rights for the first time after having requested a lengthy continuance previously. ECF No. 2042. Perkins' initial motion to continue and sever argued, in November 2024, that his attorneys would not be prepared for trial in January 2025. ECF No. 1360 at 9–12. Following the Court's denial of that motion, Perkins filed a motion for reconsideration, asking again that he be severed, based on his argument that his attorneys needed more time to prepare, and that he was not similarly situated to the defendants remaining in the January 2025 trial group. ECF No. 1534 at 16–19. At that time, he took no position that delaying his trial would infringe his speedy trial rights in any way. To the contrary, he argued that the severance and continuance were required to avoid prejudice. *Id*.

b. **If his counsel's absence is the reason, he can ask for a further continuance or find new counsel.**

If Perkins believes his attorney's schedule will force a continuance that would violate his speedy trial right, that attorney can withdraw to allow trial to proceed following a shorter continuance, but the reality is that he will not be prejudiced. Here, Perkins asserts his speedy trial right for the first time to argue against a four-month continuance past the August 2026 that the other defendants have proposed. He contends that he will not be able to participate in an August trial because one of his attorneys is scheduled to be in a conflicting trial from June 2026, until October 2026, and then will need a further two months to prepare for his trial. But even if one accepts these estimates on their face, this delay is not caused by the government. It is caused by Perkins' defense counsel's schedule.[6] It cannot be considered a violation of his speedy trial rights if it is within his power to correct it or mitigate it.

The Supreme Court has provided a four-factor balancing test to determine whether a defendant's

---

"prejudice" his co-defendants by asking the Court to continue the entire trial. ECF No. 1534 at 7.

[6] Perkins argues that his attorneys will be prepared to try this case in April 2026. The January 2025 trial lasted four weeks. It is likely that the April 21, 2026 trial will be longer, as there are more defendants and a significant number of charges, meaning that it may last well into June. If so, Ms. Duncan's next trial may already conflict with this case or would, at a minimum, leave her little time to prepare for her June 2026 trial. Perkins argues no issue with trials' proximity but then argues that if Ms. Duncan's June 2026 trial runs into October or November 2026, she will not be able to prepare for a trial in this case until December 2026 or January 2027.

fundamental constitutional right to a speedy trial was violated (or is in danger of being violated): (1) whether delay before trial was uncommonly long, (2) whether the government or the defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether there is prejudice attributable to the delay. *Barker v. Wingo,* 407 U.S. 514, 530-34 (1972). The Supreme Court "regard[s] none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522.

The record in this case does not show that Perkins is in danger of having his speedy trial rights violated. In the first instance, any proposed delay here is not "uncommonly long," especially for a case of this size and complexity. The other defendants have proposed a delay of three to four months, to August 2026, and even continuing as far as the end of the year would be seven to eight months. As a delay on the order of only months, it cannot be said to be unduly long. Additionally, as the Court has indicated, the majority of the delay to Perkins' trial thus far resulted from his own strenuous efforts to sever and continue his trial. ECF No. 2042. Additionally, as mentioned, this is the first time that Perkins has insisted on his speedy trial rights. Finally, Perkins will not be prejudiced by the delay, as it will give his legal team more time to prepare. If Perkins believes that he will be harmed by not having Ms. Duncan present for his trial, his proper recourse is to seek a further continuance until she is available, or to request substitution of counsel. He has done neither. But he is not entitled to demand to be severed yet again, when he has shown no undue prejudice, especially when doing so would place additional and unnecessary burden on the Court and the government in conducting yet another trail.

    c.  **The evidence against Perkins overlaps significantly with the remaining defendants.**

Perkins argument that severing him into his own trial group will cause minimal imposition on the Court and the parties because there is "limited overlap" between the evidence against him and the evidence against his co-defendants misstates the amount of evidence common to all defendants under the RICO charge. ECF No. 2037 at 3. Bannick's testimony, for example, is not as compartmentalized

as Perkins would have the Court believe. *Id*. As the Court is aware from the first trial, testimony from Bannick and others involved in the AB's criminal enterprise provided structural context to the entire enterprise and formed the connective tissue establishing the RICO enterprise. Bannick testified not only to the VICAR murders with which Perkins remains charged in Counts Five and Six, but also to multiple predicates establishing the enterprise charged in Count One, with which Perkins is also charged. Moreover, the VICAR homicides in Counts Five and Six were proven at the first trial with witnesses, like James Field, who also testified to other enterprise predicates and crimes charged in the indictment. Whether Perkins was involved in all of it or just some of it, it was a continuum of criminal behavior in which he was involved. The Court was therefore correct in its April 7, 2024 Order that the evidence involving Weaver, Pitchford, and Collins was "significantly overlapping" with regard to Perkins. ECF No. 1857 at 2. Much of it would have to be duplicated, in an entirely new trial, if he were now severed again.

          d.      **Severing Perkins' trial would create an unnecessary burden Court and government resources.**

     Perkins' contention that his being severed will not unduly burden the Court is ultimately an efficiency argument, not a prejudice argument, and it does withstand scrutiny. Perkins argues that he alone is charged in certain predicates and substantive counts. Indeed, over time, as defendants have convicted by plea or trial, some of the RICO enterprise predicates and substantive counts now name only one defendant, where multiple were previously charged. Even if there were "limited overlap" of evidence with other defendants resulting from this (but the government does not agree), if the Court were to accept this argument, it would mean that, with every defendant convicted or severed, there would be increasing reason to sever yet more defendants. The result would be an absurd number of trials arising from a single indictment. In the face of well-established Ninth Circuit precedent directing that efficiency concerns favor keeping properly joined defendants together for trial, this argument must fail. *King*, 483 F.3d at 974. On the facts, Perkins' attempt to minimize the disruption that would come from severing him from the current group stands in sharp relief against the position he argued in his prior motion to sever a year ago: "Any inconvenience to the government a continuance [of Perkins' trial] may cause could be mitigated by joining Mr. Perkins' trial with one of the later scheduled trials." ECF

No. 1360 at 11. He now seeks to undo that efficiency if the Court grants his co-defendants additional time to prepare for trial. His motion to sever should be denied on this basis as well.

          e.    **Adding another trial to this case will amplify witness safety risk.**

Finally, but significantly, severing Perkins would also further aggravate concerns for witness safety. As indicated above, there are multiple witnesses who would be called to testify at both any trial involving Perkins and any trial involving Weaver, Pitchford, Collins, and now Van Beusekom. Perkins fails to appreciate the gravity of the witness safety issues that the government has raised time and again, and which remain a pressing concern. He states without support or apparent consideration that the safety concerns of having witnesses testify in yet another trial "are not significantly aggravated by having them testify as scheduled in April 2026 and again whenever the Court schedules the trial for [Weaver, Pitchford, and Van Beusekom]." ECF No. 2037 at 4. But this is not true. Every additional trial adds new witness safety concerns, multiplied by the number of witnesses who would provide evidence in a severed trial. With those concerns come the expenditure of more Court and law enforcement resources. There are already two trials upcoming in this case. Perkins has presented no compelling reason to create a third.

    C.    <u>**Collins' current status of counsel may warrant a short continuance.**</u>

Since the Court's November 14, 2025 minute order, the Magistrate Judge granted defendant Collins' request for new counsel and referred the matter to the Office of the Federal Defender for assignment of CJA panel counsel. ECF No. 2044. At the time of writing, new counsel has not yet been identified, and the government does not know if that will happen before the December 1 hearing on this matter. The government recognizes that the introduction of new counsel is another factor in the Court's consideration of whether a continuance is appropriate, but it is premature to state categorically that a continuance will be required for new counsel to prepare (even if it is likely), or that any such continuance needs to be lengthy. Still, once again, if the Court determines that the ends of justice require a continuance for counsel preparation, it should continue trial for all five defendants together, so that they remain properly joined. *King*, 483 F.3d at 973–74.

///

///

If the Court is inclined to grant a continuance based, in part, on the need for new counsel to get up to speed, the government requests that the Court make clear to the defendants that, going forward, substitution of new counsel this close to trial may not necessarily provide a basis to continue, and certainly that it does not provide a basis to sever either the defendant with new counsel, or to sever the defendants who will have their trial continued. Otherwise, given the record of defendants' motions for new counsel or severance so close to trial in this case, the government is concerned that this pattern will continue.

Dated: November 24, 2025

ERIC GRANT
United States Attorney

By: /s/ JAMES CONOLLY
JAMES CONOLLY
Assistant United States Attorney