OFFICES OF

**PAVONE &**  **FONNER, LLP**

<u>A LAW PARTNERSHIP</u>

**BENJAMIN PAVONE, ESQ.**
**STATE BAR NUMBER 181826**
600 WEST BROADWAY, SUITE 700
SAN DIEGO, CALIFORNIA  92101
TELEPHONE: 619 224 8885
EMAIL: bpavone@cox.net

ATTORNEYS FOR THE *BROWN*
<u>CLASS AS INTERVENORS</u>

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KENNETH BASH, *et al.,***<br><br>**Defendants.** | **CASE NO.**: 1:20-cr-238-JLT-SKO<br><br>**BROWN'S REPLY BRIEF TO WEAVER OPPOSITION TO BROWN'S MOTION TO INTERVENE**<br><br>**Date:** August 5, 2026<br>**Time:** 1:00 pm<br>**Dept:** 9, 6th Floor, Fresno, CA<br>**Court:** Hon. Stanley A. Boone |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................4

II.   BROWN POSSESSES STANDING (THAT IS, AUTHORITY) TO INTERVENE IN THIS ACTION TO SEEK GREATER ACCESS TO INFORMATION ABOUT PINELL'S MURDER. ...................................................................................................................4

III.  THERE IS GOOD CAUSE TO MODIFY THE *WEAVER* PROTECTIVE ORDER TO ALLOW BROWN TO ENFORCE HIS SUBPOENA, BECAUSE THE FACTS OF *BROWN* WARRANT SUCH IMPOSITION, HIS SUBPOENA SEEKS A LIMITED TRANCHE OF INFORMATION (STRICTLY ABOUT THE PINELL MURDER), BROWN IS NOT POSITIONED AS A THREAT TO THE GOVERNMENT'S CASE, HE IS NOT MISUSING HIS CIVIL DISCOVERY RIGHTS, AND ANY DISCLOSURE WILL BE RESTRICTED FROM PUBLIC DISSEMINATION PURSUANT TO THE EXISTING PROTECTIVE ORDERS...................................................................................................................6

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

### TABLE OF AUTHORITIES

**_Cases_**

_Campbell v. Eastland_
  307 F.2d 478 (5th Cir. 1962) .............................................................................................. 6-7

_DSI v. United States_
  496 F.3d 175 (2d Cir. 2007) .................................................................................................4

_Globe Newspaper v. Superior Court_
  457 U.S. 596 (1982) ...........................................................................................................5

_McClatchy Newspapers v. U.S. District Court_
  288 F.3d 369 (9th Cir. 2001) ...............................................................................................5

_McSurely v. McClellan_
  426 F.2d 664 (D.C. Cir. 1970) .............................................................................................7

_Oregonian Publishing v. U.S. District Court_
  920 F.2d 1462 (9th Cir. 1990) .............................................................................................5

_Osband v. Woodford_
  290 F.3d 1036 (9th Cir. 2002) .............................................................................................7

_Richmond Newspapers v. Virginia_
  448 U.S. 555 (1980) ...........................................................................................................5

_SEC v. Left_
  2025 U.S. Dist. Lexis 189730, 2025 WL 2684195 (C.D. Cal. 2025) ..................................7

_SEC v. Chestman_
  861 F.2d 49, 50 (2d Cir. 1988) ............................................................................................7

_United States v. Brooklier_
  685 F.2d 1162 (9th Cir. 1982) .............................................................................................5

_United States v. La Salle Nat'l Bank_
  437 U.S. 298 (1978) ............................................................................................................7

_United States v. Mosavi_
  138 F.3d 1365 (11th Cir. 1998) ...........................................................................................4

_United States v. Stuckey_
  646 F.2d 1369 (9th Cir. 1981) .............................................................................................7

_Valley Surgical v. Los Angeles_
  2018 U.S. Dist. Lexis 228560, 2018 WL 6168029 (C.D. Cal. 2018) .................................5

**Statutes, Rules and Other Authority**

Federal Rules of Civil Procedure

  Rule 45(a)(1)(A)(iii) .........................................................................................................1

  Rule 45(d)(3)(A)(iii) .........................................................................................................1

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

# I.
## INTRODUCTION

Defendant Weaver raises two arguments to resist Lawrence Brown's civil subpoena. Weaver argues that Brown lacks standing to intervene in *Weaver*, a criminal case, and second, that Weaver defense counsel, Attorney Pollock, is prohibited from complying with the subpoena given the terms of its protective order.

As to the first, Brown clearly possesses standing to intervene to seek *information* about a criminal case – this is well-established under the *(i)* First Amendment, *(ii)* as a matter of the *Weaver* protective order itself and *(iii)* pursuant to Brown's federal subpoena rights – without possessing intervention authority to become *a party* to the action, which Brown agrees is impermissible.

As to the second, Weaver defense counsel, Ms. Pollock, is correct that she is prohibited from *directly* complying with the subpoena, but there is good cause to modify the *Weaver* protective order to permit her to do so. Brown has presented detailed evidence explaining why he needs information about the Pinell murder and a review of the circumstances against disclosure does not return, on this record, a compelling argument. Rather, Brown has demonstrated that he can accommodate the protective provisions of the applicable *Weaver* protective order, without opposition or dispute on this point by Mr. Weaver.

## II.
## BROWN POSSESSES STANDING (THAT IS, AUTHORITY) TO INTERVENE IN THIS ACTION TO SEEK GREATER ACCESS TO INFORMATION ABOUT PINELL'S MURDER.

Weaver defense counsel accurately points out that Federal Rules of Civil Procedure, Rule 24, does not establish a right of intervention in a criminal case and it is also true that there is no formal criminal rule that comparably provides for third-party intervention.[1]

---

[1] Weaver Opposition ("WO"), p. 2:5-10; *United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998) ("the defendant cannot challenge the criminal forfeiture orders at issue under the Federal Rules of *Civil* Procedure. Rule 1 of the Federal Rules of Civil Procedure unambiguously provides that 'these rules govern the procedure in the United States district courts in all suits of a civil nature'" [emphasis in original]); *see, e.g., DSI v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) (declining to allow creditor to intervene in a criminal forfeiture action).

However, any citizen (often, the media) can "intervene" in a criminal case to seek greater access to information about it, as a matter of his, or its, First Amendment rights.[2]  "Ordinarily, a third party seeking access to information under seal in a criminal case would file a motion in that criminal case to modify the protective order or to obtain greater access to the documents."[3]

Furthermore, the *Weaver* protective order expressly affords "any" party the right to seek modification of its terms.[4]  Along the same lines, the order expressly contemplates that third parties might issue subpoenas to defense counsel seeking production of information, because the order installs a specific protocol for the United States to intercede: "Defense Counsel shall advise the United States with reasonable notice of any subpoenas, document requests, or claims for access to the Protected Materials by third parties if Defense Counsel is considering disseminating any of the Protected Materials to a third party, in order that the United States may take action to resist or comply with such demands as it may deem appropriate."[5]

As a third basis of authority, Brown possesses plenary authority under his own discovery rights to seek information from *any* source, even if the information is "privileged" or "protected," or it is characterized as "criminal discovery."[6]

Thus, Brown clearly possesses *authority* to issue a civil subpoena to *Weaver* defense counsel and to bring the instant motion to enforce it.  Whether the Court *should grant* such a motion is governed by a different analysis, addressed below.

---

[2]  *Richmond Newspapers v. Virginia*, 448 U.S. 555, 575 (1980); *Globe Newspaper v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982) (Powell, J., concurring)); *United States v. Brooklier*, 685 F.2d 1162, 1167-68 (9th Cir. 1982).

[3]  *Valley Surgical v. Los Angeles*, 2018 U.S. Dist. Lexis 228560, *8-9, 2018 WL 6168029 (C.D. Cal. 2018), *citing McClatchy Newspapers v. U.S. District Court*, 288 F.3d 369, 372 (9th Cir. 2001) *and Oregonian Publishing v. U.S. District Court*, 920 F.2d 1462, 1463 (9th Cir. 1990).

[4]  Declaration of Benjamin Pavone ("BLP"), ECF 2148-2, ¶ 27, Exhibit 23:7, ¶ 30.

[5]  BLP ¶ 23, Exhibit 23:5, ¶ 20.  Brown interprets this provision as a presumptive restriction on *Weaver* defense counsel (Pollock) from complying with the subpoena without first seeking judicial input.

[6]  Fed. R. Civ. P., 45(a)(1)(A)(iii) ("Every subpoena must … command each person to whom it is directed to … produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control"); Fed. R. Civ. P., 45(d)(3)(A)(iii) ("On timely motion, the court … must quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies").

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

**III.**

**THERE IS GOOD CAUSE TO MODIFY THE *WEAVER* PROTECTIVE ORDER TO ALLOW BROWN TO ENFORCE HIS SUBPOENA, BECAUSE THE FACTS OF *BROWN* WARRANT SUCH IMPOSITION, HIS SUBPOENA SEEKS A LIMITED TRANCHE OF INFORMATION (STRICTLY ABOUT THE PINELL MURDER), BROWN IS NOT POSITIONED AS A THREAT TO THE GOVERNMENT'S CASE, HE IS NOT MISUSING HIS CIVIL DISCOVERY RIGHTS, AND ANY DISCLOSURE WILL BE RESTRICTED FROM PUBLIC DISSEMINATION PURSUANT TO THE EXISTING PROTECTIVE ORDERS.**

In terms of whether a civil subpoena *should* be permitted to be enforced in a criminal case, the standard involves a balancing of considerations: "[j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other."[7]

For purposes of *Bittaker* balancing, the analysis starts with the fact that it is undisputed by Mr. Weaver that the *Brown* case involves a government agency (CDCR) that, as detailed in the moving papers, allegedly catalyzed a deadly Covid-19 superspreader event, one that arguably caused over 2,000 people to contract Covid-19 in its path and involved the death of 23 inmates.[8]  Brown is not thereby minimizing the seriousness of the government's racketeering case.  The truth is that both cases involve serious, violent, and deadly events and both warrant significant access by interested parties to secure discovery to understand and potentially rectify any legal violations attendant to them.  Thus, Brown justifies the right to conduct discovery by starting with the severity of the claims he is litigating; in other words, this is not a fender-bender-versus-triple-murder situation.

Brown seeks to determine if CDCR's stated justification for conducting Operation Akili – as given, BGF's supposed revenge for the murder of Pinell – is actually true or is a pretext manufactured by CDCR to rationalize the violence it committed during Akili.[9]

Brown also tendered specific evidence of a witness's claim that an attack by a Black inmate at Folsom – just a week before Akili occurred – may have been connected to Pinell's case and inspired the

---

[7]    *Bittaker v. Woodford*, 331 F.3d 715, 734-735 (9th Cir. 2003), *citing Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).

[8]    *See* Moving Brief (ECF 2148-1), pp. 4-7.

[9]    BLP, ¶ 25, Exhibit 25:5-6, ¶¶ 13-15 (claiming that "informant" revealed Black prison gang to be planning to avenge Pinell's death in August 2020, necessitating Operation Akili in July 2020 ); *but see* BLP, ¶¶ 4, 5, 7, Exhibits 4, 5, 7 (reflecting no Black gang activity at CTF, only activity by Mexican gangs).

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

unusual wrath by CDCR on display during Akili.[10]

Thus, in terms of weighing the interest in disclosure, Brown possesses every good faith belief, right, and interest to try to understand the murder of Hugo Pinell for multiple legitimate reasons, in a serious case.

Moreover, his good faith is not compromised by the main objection to a civil litigant's pursuit of criminal discovery materials: a concern that the greater breadth of civil discovery is being tactically misused to circumvent the narrower scope of criminal discovery.[11]  Thus, situations occur where the same litigant is using his civil discovery rights to get around criminal limitations.[12]  Notably, these concerns go both ways: a government agency may possess both civil and criminal enforcement authority and tactically utilize the civil action to illegally build its criminal case.[13]

These concerns do not apply here.  Brown possesses no stake in the criminal case and is interested in *Weaver* because CDCR cited the Pinell murder as the original wrong that in turn necessitated Operation Akili.[14]  Thus, in the line of *Osband* cases, Brown is not angling to improve his criminal position by using his civil discovery rights as an alternative means to secure discovery he cannot legally obtain in the criminal forum.

---

[10]  BLP, ¶ 11, Exhibit 11.

[11]  *Osband v. Woodford*, 290 F.3d 1036, 1042-1043 (9th Cir. 2002), *citing McSurely v. McClellan,* 426 F.2d 664, 671-72 (D.C. Cir. 1970) ("civil discovery may not be used to subvert limitations on discovery in criminal cases, either by the government or by private parties.") *and Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."); *SEC v. Left*, 2025 U.S. Dist. Lexis 189730, *13, 2025 WL 2684195 (C.D. Cal. 2025) (same); *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("The government had a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.")

[12]  *Ibid.*

[13]  *United States v. Stuckey*, 646 F.2d 1369, 1384 (9th Cir. 1981); *United States v. La Salle Nat'l Bank*, 437 U.S. 298, 314 (1978) ("A number of the Courts of Appeals … have said that … the Service may not pursue … a [civil] summons … to gather evidence solely for a criminal investigation.").

[14]  BLP, ¶ 25, Exhibit 25:5-6, ¶¶ 13-15.

On the other side of the ledger, various limitations, restrictions, and litigation realities mute the risk or danger of releasing information on an "eyes only" basis to Brown's attorney.

To start, Brown did not demand (in some sort of shotgun fashion) that Mr. Weaver produce the entire body of discovery the United States provided to him (Weaver).  Rather, Brown requested information strictly about Pinell's murder – however Weaver obtained it.[15]  To the extent Weaver possesses information *not* founded in the discovery his defense attorney was provided by the United States, there is no viable obstacle by anyone to release of *that* information.[16]

To the extent Weaver possesses criminal *discovery* speaking to the Pinell murder, this should be a relatively small subset of the larger universe of it in Weaver's case, as the indictment charges him and others with operating a wide-ranging criminal racketeering enterprise.[17]  Pinell is only one of eight victims mentioned in a larger case about Bash and Company's alleged drug trafficking business, including various acts of violence attendant to it.[18]

The Court should also take stock of who Lawrence Brown is.  He is not "political," in terms of being associated with a prison gang who has some sort of tactical angle or ulterior motive for seeking the subject information.[19]  He was not validated as a gang member during Operation Akili.[20]  He was only selected for extraction at all because his cellmate was.[21]  (During Operation Akili, if an inmate was selected for extraction due to perceived gang affiliation, the cellmate was automatically pulled out as well, to remove any interference with the subsequent cell searches.)[22]  Thus, when Mr. Brown, a peaceful, 58-year-old, formerly-incarcerated civilian was attacked in his cell in 2020 while he was sleeping,[23] the explanation given to him by guards was that he was "collateral damage."[24]  Brown's point

---

[15]    BLP, ¶ 27, Exhibit 27:11.
[16]    *See generally* United States Motion to Strike ("USMS"), ECF 2160 (limiting its objection to criminal discovery); Pollock Opposition Brief, ECF 2156 (same).
[17]    BLP, ¶ 15, Exhibit 15.
[18]    BLP, ¶ 15, Exhibit 15.
[19]    BLP, ¶ 13, Exhibit 13:1, ¶ 5.
[20]    BLP, ¶ 15, Exhibit 15.
[21]    BLP, ¶ 13, Exhibit 13:3, ¶ 15.
[22]    *See* BLP, ¶ 13, Exhibit 13:3, ¶ 15.
[23]    BLP, ¶ 13, Exhibit 13:1, ¶ 5.
[24]    BLP, ¶ 13, Exhibit 13:3, ¶ 15 ("They asked me to show them any tattoos and asked about my connection to gangs. I am not affiliated with any gangs, I have never received a rule violation

---

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

is that neither he, nor any of the Black inmates who were targeted during Akili, is aligned with Defendant Weaver in such a way that disclosure of information to Brown might risk the well-being of a government informant, in the same way that, say, an affiliate of John Gotti might file a civil suit to obtain the name of an informant, which Gotti would then become privy to and possibly try to eliminate.

If anything, the opposite dynamic governs. Brown is ideologically aligned with the United States, in preferring to see accountability for the murder of Hugo Pinell – for the murder of anyone, frankly. Brown harbors zero interest in seeing the government's case harmed.

It also seems doubtful that Brown's interest in the Pinell murder would involve disclosure of "confidential informants" in the first instance. Recall, after keeping Pinell in administrative segregation for 45 years for his own safety, it was CDCR itself that decided to release Mr. Pinell into the general Folsom inmate population.[25] The Department surely understood – if it was not complicit – that he would become a target of the Aryan Brotherhood. Thus, the situation looks from the outside as if CDCR *wanted* – or planned for – the Aryan Brotherhood to murder Pinell, not that the event was a surprise to guards such that they needed to enlist the services of an informant to figure out what happened.

Moreover, in terms of security, any material responsive to the subpoena will almost certainly only be turned over on an "eyes only" basis to Brown's attorney and thus subject to not one but two independently enforceable protective orders.[26] Thus, the reality of granting this motion is that any disclosure will be limited to a single person: undersigned counsel. This sits in contrast to the United States' delusion that any access granted to Brown will result in "wider disclosure."[27]

Taking inventory on the ledger, in a situation where the civil plaintiff possesses a clear, good faith, and undisputed need for the subpoenaed information, this weighs against a series of limitations – on the scope of information to be released, on the incentives and motivation of the recipient in question,

---

report, I have a good relationship with staff, I do not understand why I was singled out. When I posed this question to the interviewer he said I was 'collateral damage' and they let me go. I was furious.")

[25] BLP, ¶¶ 2-3, Exhibits 2-3.
[26] BLP, ¶¶ 21, 26, Exhibits 21, 26.
[27] USMS:7.

on restrictions on who can actually receive the sought-after information – that on balance weigh in favor of disclosure.

The Court might also consider asking itself whether the United States is truly concerned about "safety and security" as to the subject information or whether it is more concerned about disclosing details of the appalling conduct of CDCR, comparable to that on display during Operation Akili, that might be revealed upon a closer examination of the exact circumstances by which Hugo Pinell met his demise. If the United States' governing motivation is institutional security, it is hard to understand from the outside why CDCR officials, the ones who logistically allowed Pinell's killers access to him, were not also charged as aiding and abetting his murder.

Regardless, and to be absolutely clear, it was not CTF African-American inmates who invoked the Aryan Brotherhood's alleged murder of Hugo Pinell as cause to engage in violent action: it was Lt. Richard Cavagnolo *of CDCR* who claims that the Pinell murder is intimately connected to Operation Akili, with his fabulist story about a BGF "Day of Retribution."[28]

It does not take a rocket scientist to deduce why CDCR and Cavagnolo so jealously guard the identity of the so-called Akili "informant" – and it is not for reasons of "safety and security."

Lie or not, it is incumbent on Brown, as class representative, to thoroughly understand CDCR's stated defenses, ones founded in the Department's citation to a 2015 murder case, even if the present discovery inquiry unfortunately and uncomfortably intrudes on that case.

Respectfully,

Date: July 17, 2026                                    PAVONE & FONNER, LLP

                                                        Benjamin Pavone, Esq.
                                                        Attorneys for the *Brown* Class

---

[28]    BLP, ¶ 25, Exhibit 25, ¶¶ 13-15; *see* BLP, ¶ 24, Exhibit 24:2-3 (request #3);

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

OFFICES OF

**PAVONE &**  **FONNER, LLP**

<u>A LAW PARTNERSHIP</u>

**BENJAMIN PAVONE, ESQ.**
**STATE BAR NUMBER 181826**
600 WEST BROADWAY, SUITE 700
SAN DIEGO, CALIFORNIA  92101
TELEPHONE: 619 224 8885
EMAIL: bpavone@cox.net

ATTORNEYS FOR THE *BROWN*
<u>CLASS AS INTERVENORS</u>

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**KENNETH BASH,** *et al.,*<br><br>Defendants. | **CASE NO.:** 1:20-cr-238-JLT-SKO<br><br>**PROOF OF SERVICE**<br><br>**Date:** August 5, 2026<br>**Time:** 1:00 pm<br>**Dept:** 9, 6th Floor, Fresno, CA<br>**Court:** Hon. Stanley A. Boone |

PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 W. Broadway, Ste. 700, San Diego, California 92101.

On July 17, 2026, I served the following:

* Reply Brief to Weaver Opposition

Amanda Kotula
DOJ-Crm
Department of Justice - VCRS
1301 New York Ave. N.W., Suite 700
Washington DC, DC 20005
T: 202 716 1129
E: amanda.kotula@usdoj.gov                    (via ECF electronic service)

James Robert Conolly
U.S. Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814
T: 916 554 2705
E: james.conolly@usdoj.gov                    (via ECF electronic service)

Jared Engelking , GOVT
DOJ-Crm
Violent Crime and Racketeering Section
1301 New York Ave., N.W.
Washington, DC 20005
T: 202 616 8807
E: jared.engelking2@usdoj.gov                 (via ECF electronic service)

Nicholas Enrico Karp , GOVT
DOJ-USAO
2500 Tulare Street, Ste 4401
Fresno, CA 93636
T: 559 497 4028
E: nicholas.karp@usdoj.gov                    (via ECF electronic service)

Stephanie Stokman
United States Attorney's Office, EDCA
2500 Tulare Street, Suite 4401
Fresno, CA 93721
T: 559 497 4045
E: stephanie.stokman2@usdoj.gov          (via ECF electronic service)

Randy Sue Pollock
Law Offices of Randy Sue Pollock
286 Santa Clara Avenue
Oakland, CA 94610
T: 510 763 9967
E: rsp@rspollocklaw.com          (via ECF electronic service)

Tamara Crepet
Tamara Crepet Law
Pier 9, Suite 100
San Francisco, CA 94111
T: 415 517 3496
E: tamara@taclaw.org          (via ECF electronic service)

Mr. John Faulconer, Esq.
Ms. Juliet Lompa, Esq.
Mr. Jeffrey Fisher, Esq.
Ms. Maki O'Bryan
Deputies Attorney General
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004          (Via Direct Email)
(Attorneys for the Brown Defendants)

        I declare under the laws of the State of California in the County of San Diego under penalty of perjury on this 17th day of July 2026 that the foregoing is true and correct.



PAVONE & FONNER, LLP
600 WEST BROADWAY, STE. 700
SAN DIEGO, CALIFORNIA 92101