ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>JUSTIN GRAY,<br>a.k.a. "Sidetrack"<br><br>                              Defendant. | CASE NO. 1:20-CR-00238 JLT-SKO<br><br>UNITED STATES' OPPOSITION TO DEFENDANT GRAY'S MOTION IN LIMINE TO LIMIT EVIDENCE OF HIS TATTOOS AND GANG AFFILIATION [ECF 2123]<br><br>DATE: July 27, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

I.    **INTRODUCTION**

The United States, by and through undersigned counsel, respectfully submits its opposition to Defendant Justin Gray's motion *in limine* to exclude (1) items found during a search of his cell; (2) photographs of defendant's tattoos; and (3) mention of defendant's membership in the Baby Blue Wrecking Crew ("BBWC"). ECF No. 2123. The motion should be denied because each category of

evidence is, as discussed below, relevant to the Violent Crimes in Aid of Racketeering ("VICAR") murder charge that defendant faces and none is so prejudicial as to substantially outweigh its probative value.

Gray's possession of a weapon while incarcerated, and his membership in the BBWC, are highly relevant and probative in a VICAR murder prosecution involving white supremacist enterprise, the Aryan Brotherhood ("AB" or the "Enterprise"), and should not be excluded under Rule 403. Photographs of the defendant's tattoos and mention of the defendant's membership in or association with the AB are also highly relevant to proving a crime charged as having been done as part of Gray's participation in that enterprise. The motion should be denied.

## II.    ANALYSIS

### A. The false bottom folder and prison shank are relevant to the charged offenses and probative of Gray's involvement with the AB enterprise.

On November 1, 2023, a search of defendant's cell revealed a shank hidden in a false compartment at the bottom of a file folder. That weapon is admissible here as evidence of the nature of a VICAR murder charge.  A VICAR conviction requires proof of four elements: "(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendant[] committed a violent crime; and (4) that [the defendant] acted for the purpose of promoting [his] position in the racketeering enterprise." *United States v. Bracy*, 67 F.3d 1421, 1429 (9th Cir. 1995) (citing *United States v. Vasquez-Velasco*, 15 F.3d 833, 842 (9th Cir. 1994)); *United States v. Banks*, 514 F.3d 959 (9th Cir. 2008).

Defendant Gray is charged in Counts Two and Three with the VICAR murders of two individuals. ECF No. 1970 at 11-12. Defendant is not charged in Count One of the Fourth Superseding Indictment (hereinafter "the Indictment"), the RICO conspiracy count. However, Counts Two and Three of the Indictment, which do charge Defendant, incorporate by reference the first 16 paragraphs of Count One. *Id.*  Those initial 16 paragraphs set forth the structure; methods and means, including committed murders

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO LIMIT EVIDENCE OF HIS        2
TATTOOS AND GANG AFFILIATION [ECF 2123]

and assaults; and purposes of the Aryan Brotherhood (hereinafter "AB"), which extend to using "threats, assault, obstruction of justice, robbery, extortion, and murder." *Id*. at 1–5.

It is alleged that the defendant murdered the two individuals, "for the purpose of gaining entrance to and maintaining and increasing position in the AB, an enterprise engaged in racketeering activity …" *Id*. at 11. The government anticipates that testimony will establish that Gray was seeking to become a full member of AB and, thus, would show his worth by committing violence.  The Indictment alleges, and the government will produce testimony and other evidence, that the AB is a violent gang operating in the California prison system and that stabbings within prison are a way for the AB and its members to maintain their status within the prison. *Id*. at 3.

The possession of a hidden weapon – a shank – while incarcerated, is probative of Gray's involvement with AB, his motive for committing the alleged murders, and further shows the existence of the Enterprise. *See United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998) (explaining evidence that defendant burglarized houses and stole TVs, VCRs, and microwaves was intrinsic to a VICAR murder prosecution because it was relevant to prove that there was an enterprise engaged in racketeering activity).  In other words, a defendant's possession of a hidden shank while in custody is evidence directly related to the charged enterprise, its racketeering activity, its method and means, and its purpose. It is therefore relevant to showing that the organization exists, that the organization is a racketeering enterprise, that its modus operandi include the use of improvised weapons, and the defendant's association with the enterprise. Accordingly, the court should admit the evidence of the weapon recovered from Gray's cell.

**B. Photos of Gray's gang tattoos are relevant to his association with white gangs and not unduly prejudicial.**

Federal Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make a fact more or less probably than it would be without the evidence, and the fact is of consequence in determining the action." Relevant evidence should only be excluded when its probative value is substantially

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO LIMIT EVIDENCE OF HIS
TATTOOS AND GANG AFFILIATION [ECF 2123]

3

outweighed by the danger of unfair prejudice. Fed. R. Crim. Proc. 403.

Rule 403 is a rule of inclusion favoring admissibility, whereby exclusion is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (internal quotation omitted). Per the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* (emphasis in original); *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) (noting that "unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"). This is because relevant evidence is inherently prejudicial. Accordingly, as the Ninth Circuit has noted, "unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

Pictures of gang tattoos are routinely admitted as evidence probative of gang membership, ideology, and affiliation. *See, e.g., United States v. Fernandez*, 388 F.3d 1199, 1246 (9th Cir. 2004) (finding, over defense's Rule 403 argument, that photographs of defendant's tattoos were probative and admissible in a RICO prosecution where the tattoos "tended to prove gang membership, which the government alleged was a precursor to membership in the Mexican Mafia"); *United States v. Hernandez*, 2026 WL 1129912 (C.D. CA. April 23, 2006) (slip) (admitting photographs of defendant's tattoo as being "highly probative of [defendant's] affiliation with MS-13" and his involvement in charged murder); *United States v. Ledbetter*, 929 F.3d 338, 363 (6th Cir. 2019) (finding the district court did not abuse its discretion in admitting, over defense's Rule 403 argument, defendants' photos of gang-related tattoos in a racketeering prosecution, despite defendant's contention that photos were unfairly prejudicial, where the tattoos were directly relevant to the issue of the defendant's membership in a street gang and its subsidiary).

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO LIMIT EVIDENCE OF HIS
TATTOOS AND GANG AFFILIATION [ECF 2123]

4

Here, Gray argues that because he is not charged in Count One of the Indictment (the RICO charge), all evidence related to the enterprise is irrelevant to his charges. ECF No. 2123 at 5. Therefore, he argues, the images of his gang affiliation tattoos "would be inflammatory, unfair, and unduly prejudicial." *Id*.  However, the cases Defendant cites do not support excluding the photographs here – in a VICAR murder trial.  In contrast, in *People v. Cardenas*, the California Supreme Court determines that the charges the defendant was facing had nothing to do with any gang affiliation, and the mention of his gang affiliation had minimal probative value to any defense witness bias, and was highly prejudicial. 647 P.2d 569, 572 (Cal. 1982). Likewise, in *People v. Albarran*, where the defendant was charged with several offenses that included a gang enhancement, the court nonetheless found that the tattoo had "no connection to the charged crimes."  149 Cal.App.4th 214, 219  (2007).  Here, in comparison, gang association is at the heart of the VICAR charge.

C. **Evidence of Defendant's association with Baby Blue Wrecking Crew ("BBWC") is similarly admissible.**

For the same reasons that Defendant's tattoos are admissible, so too is evidence of his membership in BBWC. The government anticipates that testimony and other evidence will show that BBWC is a criminal street gang that, along with other gangs such as "Public Enemy Number 1 ('PEN1')," fall under the authority of the Aryan Brotherhood prison gang. Testimony will also show that association with AB does not exclude membership in a different gang.  In fact, the evidence will also show that white street gang members regard acceptance into full membership in the AB as a promotion within the white gang world. That is, evidence of membership in another gang that structurally falls under the AB is part and parcel of how AB is structured.

Evidence of Defendant's membership in BBWC is therefore highly relevant to the charges he faces.  Moreover, the probative nature is not outweighed by the danger of unfair prejudice or any other consideration under Rule 403. *See Fernandez*, 388 F.3d at 1246 (holding admission of relevant tattoo photographs did not unfairly prejudice defendants); *Ledbetter*, 929 F.3d at 363 (finding admission of gang tattoo evidence was not unfairly prejudicial where the tattoos had strong probative value on a key

issue); *United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL 4310712, at \*20 (N.D. Cal. Sept. 28, 2017) (explaining the risk of unfair prejudice stemming from defendant's tattoo did not substantially outweigh the probative value when the tattoo was relevant to show the defendant's connection to the alleged enterprise in a RICO prosecution); *United States v. Owens,* 724 F. App'x 289 (5th Cir. 2018) (finding that identity and membership were at issue and the tattoos were probative of an ultimate issue in the case).

### III.    <u>CONCLUSION</u>

In sum, the evidence from Gray's cell search, photographs of his gang tattoos, and testimony about his gang membership, are highly relevant in a VICAR murder prosecution to help establish Defendant's relationship to the enterprise, *i.e.*, the Aryan Brotherhood, and should not be excluded under Rule 403. Consequently, the defendant's motion should be denied.

ERIC GRANT
United States Attorney

Dated:  July 17, 2026

By:  */s/ Amanda Kotula*
AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
JAMES CONOLLY
Assistant United States Attorney

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE TO LIMIT EVIDENCE OF HIS
TATTOOS AND GANG AFFILIATION [ECF 2123]

6