ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JUSTIN GRAY,<br>a.k.a. "Sidetrack"<br><br>                    Defendant. | CASE NO.  1:20-CR-00238 JLT<br><br>UNITED STATES' OPPOSITION TO DEFENDANT GRAY'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING CELL SITE LOCATION [ECF 2135]<br><br>DATE: July 27, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.    INTRODUCTION

The United States, by and through undersigned counsel, respectfully submits its opposition to defendant Justin Gray's motion *in limine* to exclude testimony from expert witness Danielle Ponce de Leon. ECF No. 2135. The motion should be denied because testimony about historical cell site information is reliable, relevant, and helpful to the trier of fact.

Moreover, this Court has previously examined the reliability of Ms. Ponce de Leon's proffered testimony and found that the "methods employed by Ms. Ponce de Leon are reliable." *United States v. Bash*, No. 1:20-CR-00238 JLT SKO, 2025 WL 51210, at *16 (E.D. Cal. Jan. 8, 2025).

## II. ANALYSIS

### 1. The expert witness disclosure was sufficient.

Fed. R. Crim. P.16(a)(1)(G) provides that expert witness disclosures must contain: "a complete statement of all opinions"; "the bases and reasons for them"; "the witness's qualifications"; and "a list of all other cases" in which witness testified during the last four years. The defendant claims that the disclosures were missing, as it pertains to Ms. Ponce de Leon: "1) the reasons for the opinions; 2) a list of all publications authored in the previous 10 years […] ; and 3) a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." ECF No. 2135 at 18.

The government's initial disclosure, sent on June 4, 2026, disclosed the following as to Ms. Ponce de Leon's bases for her opinions:

> Ms. Ponce de Leon will testify as to her reports and exhibits generated regarding the cellular site analysis related to the mobile telephones of individuals associated with the double homicide in Lomita on or about October 3 and 4, 2020, charged in Counts Two and Three of the Third Superseding Indictment. At trial, Ms. Ponce de Leon's testimony will include information identifying the users/subscribers to those telephones, as well as the locations and movements of those telephones at times relevant to this case. Ms. Ponce de Leon's opinions will be based on the information she gathered to create those reports, including call logs, call data, cell cite data, including times and places of calls or other communications to/from the devices identified, and other data provided to investigators, either by the cellular telephone providers supporting the telephones in question, or data taken directly from the telephones themselves.

> Ms. Ponce de Leon will also testify to analysis of movements of mobile telephones related to the double homicide in Pomona, on or about March 8, 2022, charged in Counts Five and Six of the Third Superseding Indictment. At trial, she will testify about her use of "geofence" data and other data from cell sites used to create maps of movements of mobile telephones used by individuals associated with those homicides. Ms. Ponce de Leon's testimony will include information identifying the users/subscribers to those telephones, as well as the locations and movements of those telephones at times relevant to this case. Ms. Ponce de Leon will also be able to testify to her training and professional experience generally. Ms. Ponce de Leon testified as an expert on these issues in this case during the January 2025 trial.

*Id*. at 10.

In a supplemental disclosure letter on June 29, 2026, the government relayed the following:

> Ms. Ponce de Leon is a Crime Analyst with the Los Angeles County Sheriff's Department. She has worked in this capacity for 14 years. In that time, she has worked on hundreds of homicide investigations, identifying suspects, vehicles, associates, employment, and residences, through inter alia, cellular telephone tower and toll analysis, as well as social media research and analysis. This work includes, but is not limited to, identifying phone numbers associated to targets and suspects; obtaining, interpreting, and managing call detail records, cell tower information, historic specialized location data, and billing records; cellular telephone tower triangulation, and "real time" and historical GPS data to locate a suspect, witness, victim or evidence; use of specialized software available to law enforcement to acquire and process this information, including creation of charts, tables, and maps based on the data acquired. Enclosed with this Notice and incorporated herein by reference is Ms. Ponce De Leon's statement of qualifications, which summarizes her training and education, and professional experience.

> Ms. Ponce de Leon will be able to testify to her training and professional experience generally. Ms. Ponce de Leon testified as an expert on these issues in this case during the January 2025 trial. Also enclosed with this notice is a list of cases in which Ms. Ponce De Leon has testified at trial in the last four years. She has not previously authored publications related to the topics on which she will testify.

Also included with the supplemental disclosure was a list of 30 cases in which Ms. Ponce de Leon has testified within the last 4 years. Therefore, the government has complied with its Rule 16 obligations which the defendant alleges were insufficient in his motion.

**2. Testimony about cell site data analysis is reliable and relevant, and routinely accepted by courts.**

Expert testimony is admissible at trial pursuant to Fed. R. Evid. 702 that provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court established a two-prong test for the admissibility of scientific evidence. The first prong rejected the widely used "general

acceptance" test enunciated in *Frye v. United States*, 293 Fed.1013 (App. D.C. 1923), decided long before the Federal Rules of Evidence were adopted, in favor of a more flexible standard that reviews the scientific validity and reliability of the evidence. The second prong, sometimes referred to as the "relevancy" requirement, simply reiterated that scientific testimony or evidence must assist the trier of fact to be admissible. See *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) (finding that *Daubert* replaced the stricter "general acceptance" test of *Frye* with a requirement that the proffered testimony merely be reliable and helpful and that trial court's role is "that of a 'gatekeeper' who should exercise broad discretion in admitting scientific testimony"), *citing Daubert*, 509 U.S. at 579. The Supreme Court in *Daubert* listed four non-exclusive factors that are helpful to determine the reliability of scientific testimony: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-95. The Court noted that these factors do not constitute a "definitive checklist or test," and that "[m]any factors will bear on the inquiry" that involves "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. The inquiry to be undertaken by a trial court is "a flexible one" focusing on the "principles and methodology" employed by the expert, not on the conclusions reached. *Id*. at 594-95. Expert testimony, like all other admissible evidence, is subject to testing by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id*. at 596. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended the *Daubert* test to include expert testimony involving technical and other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. The Court held that a trial court "may consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id*. The Court again noted that a trial court considering the admissibility of expert testimony exercises a gatekeeping function to assess whether the proffered evidence is sufficiently reliable and relevant. *Id*.

*Kumho Tire* also made clear that a trial court is not required to conduct a pretrial hearing based on a *Daubert* challenge. *Id*. at 152. A trial court has considerable latitude in deciding whether or when special

briefing or other proceedings are needed to investigate challenged reliability of proposed expert testimony. *Id.* at 152-53. Pretrial evidentiary hearings are particularly unnecessary when expert testimony is based on well-established principles. *See, e.g.*, *United States v. Beasley*, 495 F.3d 142, 150 (4th Cir. 2007) (no abuse of discretion where narcotics agent testified as an expert witness regarding conversion of powder cocaine into crack cocaine without pre-trial *Daubert* hearing). Historical cell site analysis evidence is admissible at trial through a qualified expert witness pursuant to Rule 702, *Daubert*, and *Kumho Tire*. It is evidence that is based on valid, reliable, scientific, technical, and specialized knowledge that will assist the jury in understanding the evidence and determining facts in issue. Specifically, various locations of cell phones associated with the users on specific dates and at specific times relative to the relevant places and events in the case will be of assistance to the jury. The *Daubert* analysis is satisfied because (1) the scientific theory underlying cell phone communications is over 150 years old, the technology for cellular communication on a hand-held cell phone is almost 40 years old, and the scientific theory and technology have been tested for decades in the multibillion-dollar wireless communications industry, (2) the theory and techniques involved in cell phone communications have been subjected to peer review and publication for decades, (3) the nature of cell phone communications in a wireless cellular network are such that no rate of error exists when a cell phone makes a connection within a cell tower sector and can be easily tested by making a cell phone call and inspecting the corresponding CDR information, and (4) the scientific theory and techniques in wireless cellular communications are generally accepted in the relevant scientific community of wireless communications. See *Daubert*, 509 U.S. at 593-95. Courts have consistently found that historical cell site evidence is admissible as long as the evidence is offered to establish a general location. *See United States v. Hill*, 818 F.3d 289 (7th Cir. 2016) (historical cell record analysis is reliable for *Daubert* purposes when an expert testifies 'that a phone was in a general,' rather than precise, 'area' at a given time, and makes clear 'the relative imprecision of the information' that the methodology provides); *see also United States v. Hitesman*, 2016 WL 3523854, at *9 (N.D. Cal. June 28, 2016); *United States v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013) ("[T]he use of cell phone records to determine the general location of a cell phone has been widely accepted by numerous federal courts."). "Cell site data analysis is a widely used and respected methodology that has overwhelmingly been found admissible by federal courts." *United States v. Howard*, Case No.: SACR 16–00029(C)–CJC, 2017 WL

2662469 (C.D. Cal. June 19, 2017) (*citing Jones*, 918 F. Supp. 2d at 5); *United States v. Schaffer*, 439 Fed.Appx. 344, 347 (5th Cir. 2011) (historical cell cite analysis is "neither untested nor unestablished"); *United States v. Machado–Erazo*, 950 F. Supp. 2d 49, 56– 57 (D.D.C. 2013) (citing *Jones* to support the reliability of cell site analysis in determining general location); *United States v. Davis*, No. 11–60285–CR, 2013 WL 2156659, at *4 (S.D. Fla. May 17, 2013) (noting the regular and reliable use of cell site analysis); *United States v. Carpenter*, No. 12–20218, 2013 WL 6385838, at *6 (E.D. Mich. Dec. 6, 2013) (holding cell site analysis is a reliable method to determine that Defendants' cell phones were in geographic areas consistent with the location of the crimes); *United States v. Reynolds*, No. 12–20843, 2013 WL 2480684, at *5 (E.D. Mich. June 10, 2013) (concluding cell site analysis may reliably determine general location); *United States v. Rosario*, No. 09–CR–415–2 VEC, 2014 WL 6076364, at *3 (S.D.N.Y. Nov. 14, 2014) (variances in cell phone technology and connection to cellular towers may affect persuasiveness of testimony but do not render the methodology of cell site analysis inadmissible or unreliable as a whole); *United States v. Eady*, No. 12–CR–415(DCN), 2013 WL 4680527, at *3–4 (D.S.C. Aug. 30, 2013) (comparing the cell site methodology used to that in *Jones* and *Machado* and affirming reliability); United *States v. Allums*, No. 08–CR–30(TS), 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009) (holding legitimate questions as to accuracy of cell site analysis may be presented through cross-examination, and do not render the methodology itself unreliable)). Historical cell site data "can show with sufficient reliability that a phone was in a general area, especially in a well-populated one. It shows the cell sites with which the person's cell phone connected, and the science is well understood." *United States v. Hill*, 818 F.3d 289, 298 (7th Cir. 2016) (emphasis added). Additionally, many courts have also found experts' methodology reliable without holding an evidentiary hearing when courts have a general acceptance of the practice's reliability. *See Howard*, 2017 WL 2662469 at *4 (concluding "that a *Daubert* hearing would not be helpful here due to the wide consensus in the judicial community that historical cell site data is a reliable methodology"); *see also United States v. Alatorre*, 222 F.3d 1098, 1102-03 (9th Cir. 2000) (confirming that district courts in the Ninth Circuit are not required to conduct evidentiary hearings to discharge their gatekeeping responsibilities under *Daubert*). A witness who has gained expertise in historical cell site analysis through experience, training, or education may testify as an expert witness regarding the technical and specialized knowledge aspects of historical cell site analysis pursuant to Rule 702 and *Kumho Tire*. It

is not out of the ordinary for a Court to qualify an agent as an expert witness in order to interpret cell provider's location records. *See, e.g.*, *United States v. Lewisbey*, 2016 WL 7176646 (7th Cir. Dec. 9, 2016).

> Using call records and cell towers to determine the general location of a phone at specific times is a well-accepted, reliable methodology.... With 350 hours of training in the systems used by the relevant network service providers, Agent Raschke had ample expertise in this methodology. And the judge also appropriately recognized the limits of this technique by barring the agent from couching his testimony in terms that would suggest that he could pinpoint the exact location of Lewisbey's phones.

*Lewisbey, id.*

A qualified expert may be permitted to testify as to opinions based on a particular cell provider's cell tower data if the court finds that it is the type of data reasonably relied on by experts in this particular field. *See* Fed. R. Evid. 703, 705. Here, the government's expert, Danielle Ponce de Leon, is qualified based upon her training and experience, as well as her contact with major cell providers regarding cell data records and the interpretation of those records. Ms. Ponce de Leon will testify to the extent of the reach of historical cell site data, in that historical cell site data analysis is based on the premise that the approximate (not exact) location of a cell phone can be determined by examining the records generated by the cell phone when it was used. Through her training and experience and expertise, she will explain what these records contain, what happens when a cell phone communicates with a cell tower, and how she analyses the records provided by cell phone companies that contain historical cell site data. She will be able to explain to the jury that all of the service providers maintain a "tower list", archived periodically throughout the year, which provide the exact location of towers within their network, and which contains additional information that is used to determine orientation of the tower series.

Ms. Ponce de Leon will be able to explain to the jury what is needed to conduct an analysis of this type of data, and how she is able to map the data once it is analyzed. She will explain how results are compiled and conclusions are drawn and how she compiles those results for use by investigators or at trial. Her testimony will indicate that the maps show the general area where a phone was located at a certain date and time, and how these locations can be refined, but that they are not exact locations. Her expert opinion, based upon training and experience, will identify why the data she analyses is reliable in showing the general location of the phone in question. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying

it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564 (citation omitted). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013). The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.,* 740 F.3d 457, 463 (9th Cir. 2014) (en banc). "[T]he trial court has discretion to decide how to test an expert's reliability[,] as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted). The reliability requirement is ultimately aimed at excluding "junk science," *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 982 (9th Cir. 2011), which is not the case here.

The defendant does not appear to question whether Ms. Ponce de Leon is qualified to testify as an expert on historical cell site data analysis but questions the reliability of the data itself. However, that goes to the weight of the testimony and not to the admissibility of the data itself. Finally, the government intends to present corroborating evidence of this expert testimony as to the events external to the cell site data at issue in the defendant's Motion, which further indicates the reliability of the use of cell site data - witnesses will testify to the location of parties involved to which the cell site data is attributed.

### III.    <u>CONCLUSION</u>

Given the acceptance by courts of testimony about the analysis of historical cell site data, and the other evidence that exists to further indicate the reliability of those methods used in this case, the court should deny the defendant's Motion.

ERIC GRANT
United States Attorney

Dated:  July 17, 2026                                    By:    */s/ Amanda Kotula*
                                                                        AMANDA J. KOTULA
                                                                        Trial Attorney, U.S. Department of Justice
                                                                        JAMES CONOLLY
                                                                        Assistant United States Attorney