ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>          v.<br><br>JUSTIN GRAY,<br>a.k.a. "Sidetrack"<br><br>                         Defendant. | CASE NO.  1:20-CR-00238 JLT-SKO<br><br>UNITED STATES' OPPOSITION TO DEFENDANT GRAY'S MOTION IN LIMINE TO EXCLUDE AUDIO AND VIDEO JAIL CALLS [ECF NO. 2126]<br><br>DATE: July 27, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.    INTRODUCTION

The United States, by and through undersigned counsel, respectfully submits its opposition to Defendant Justin Gray's motion *in limine* to exclude government exhibits. ECF No. 2147.  Specifically, the defendant seeks to preclude the United States' introduction of two recorded jail calls—one audio and one video—from defendant Justin Gray.  ECF No. 2126.  These exhibits are relevant to and probative of the crimes charged in this case, and they are not unfairly prejudicial.

The United States intends to use only parts of the calls as exhibits at trial and will identify clips

as it finalizes its exhibits.  In the meantime, the calls as a whole remain admissible and, for the reasons stated herein, the Court should deny the Defendant's motion.[1]

### A.    Motion in Limine Legal Standard

Evidence may be excluded *in limine* only if "the evidence [is] inadmissible on all potential grounds." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036, 1047 (D. Nev. 2013) (citing *Indiana Ins. Co. v. General Electric Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).  A motion in limine should be denied if it is not clear that evidence is inadmissible on all grounds, or if the motion requires the court to "resolve factual disputes or weigh evidence," *C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 316, 323 (D.D.C. 2008) ("It is worth noting that a motion *in limine* should not be used to resolve factual disputes or weigh evidence," citing *Sigma Tool & Mach. v. Nagayama Elect. Ind. Co.*, No. 00-CV-2936 (RWR), 2002 WL 34354482, *2 (D.D.C. Dec. 18, 2002)); *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400-01 (N.D. Ill. 1993).  Evidentiary rulings should be deferred until trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context," citing *Middleby Corp. v. Hussmann Corp.*, No. 90-C-2744, 1993 WL 151290, *1 (N.D. Ill. May 7, 1993)).

### B.    The Governments Exhibits Are Properly Admissible

Relevant evidence is admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The standard of relevance in the federal courts is quite liberal[.]" *United States v. Pimentel-Tafolla*, 60 Fed. Appx. 656, 664 (9th Cir. 2003). "Evidence need not be sufficient to prove the point being made; it simply needs to have the slightest probative value." *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009).  A court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice.  Fed. R. Evid. 403

---

[1] It is unclear to the government whether defense counsel lodged the call recordings and transcripts with the Court. In case it did not, the government will do so.

UNITED STATES' OPPOSITION TO DEFENDANT
GRAY'S MOTION IN LIMINE TO EXCLUDE VIDEO
AND AUDIO JAIL CALLS [ECF No. 2126]

2

(emphasis added).  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Further, "courts have routinely rejected the claim that a party was unfairly prejudiced under Rule 403 because the challenged evidence was contrary to his view of the facts." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1998).  "[A]bsent a showing that the challenged evidence invites the jury to decide the case on an improper basis, unrelated to the probative value of the evidence, it is not unfairly prejudicial under Rule 403." *Id.*

In every case in which there is a charge of Violent Crimes in Aid of Racketeering ("VICAR") alleged, the government must prove the existence of an enterprise, show that the enterprise engaged in racketeering activity, and establish that the defendant's purpose was to gain entrance to, or to maintain, or to increase his position in the enterprise. *See* Ninth Cir. Model Crim. Jury Instr. No. 18.8.  Courts have recognized that an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure." *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (citation omitted) (emphasis in original).

In this case, to prove the first element—the existence of an enterprise—the government must prove that the Aryan Brotherhood was "a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time."  Ninth Cir. Model Crim. Jury Instr. No. 18.9.  "It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (affirming admission of 16 uncharged robberies).  That is to say, the enterprise-related elements of a VICAR charge necessarily make the spectrum of relevant evidence broad. So long as evidence has the potential to show the existence of an enterprise, its racketeering activity, or the defendant's involvement with the either – the evidence is relevant and subject to no greater a degree of scrutiny than any other form of evidence introduced to prove essential elements of a crime.

/ / /

**C.**     **The Two Calls The Government Intends to Introduce Are Admissible.**

The two calls at issue are relevant, probative, and not unduly prejudicial.  The calls are therefore admissible. The government produced the recordings of each of the calls on March 31, 2023, and produced the transcripts on May 28, 2026.

Since Gray's counsel filed the instant motion, the parties have stipulated to the authenticity of the calls and resolved that issue.  *See* Stipulation of Authenticity of Jail Call Recordings, ECF No. 2140. The stipulation states that if the government called an official familiar with the audio and video jail call systems at Bingham County Jail, that official could testify that the recordings at issue here were accurately captured by the jail's call recording system.  *Id*. at 1. The parties also agreed that the individuals named in the stipulation were the main participants in the calls. *Id*. at 2. The parties further agreed that the stipulation would apply to the authenticity of the recordings only, not to their admissibility, which is the subject of the instant motion.  *Id*.

**1.**     **The April 29, 2021 Audio Jail Call Is Relevant To and Probative Of Multiple Elements Of Gray's VICAR Charges.**

The audio recorded call between Gray, who was incarcerated in Bingham County Jail at the time of the call, and a woman, contains statements that are relevant to and probative of the charges in this case. The recording is not unduly prejudicial.

The call was recorded on April 29, 2021, just under seven months from the date on which the Lomita murders occurred.  Gray makes statements throughout the call that allude to the Lomita homicides in question, as well as to his gang affiliation, which is evidence of the enterprise of which he is a part.  The government has alleged that these homicides were for the benefit of that enterprise, and done at its behest.  So, while Gray argues that the statement, "I'm a killer," is without explanation, the statement does in fact have context that make it relevant, especially when listened to in context.  ECF No. 2126, at 4; GRAY_00001638 (transcript); GRAY_00000081 (audio recording).  The statement follows discussion in which Gray is trying to convince the woman in the conversation that he is feared among his cohort outside of prison.  He accuses her of doubting him before blurting out that he is a "killer."  Her startled reaction is to ask "why the f**k would you say that on the phone?"  She is apparently aware that jail lines are recorded.  Gray follows it quickly by saying he is referring to killing

dogs. It is evident from her reaction—continuing to ask three more times why Gray would say that on the phone—that she is worried about something more serious than animal cruelty. She does not ask whether he has actually killed dogs, and there was no prior discussion of dogs anywhere in their conversation.

In the context of a recorded call from prison, the woman's reaction indicates that Gray's statement is likely a confession to the murders for which he has been arrested. Gray also makes several references to people outside prison believing that he will not be getting out of prison for a long time. GRAY_00001640. Later in the conversation, the woman asks Gray to promise her that he "won't shoot anyone." *Id*. These statements are relevant to and probative of the crimes charged, and they are not unfairly prejudicial.

Additionally, Gray makes statements that reference his gang affiliation and the rules applicable to gang life, which is admissible to establish the criminal enterprise of which he is a part. Gray is charged with VICAR murder, therefore ahis association with the Aryan Brotherhood ("AB") (as a criminal enterprise) is central to the elements of the VICAR charges alleged, as are the characteristics of the enterprise itself. The government will introduce evidence that white street gangs are an important part of the AB enterprise, in which Baby Blue Wrecking Crew plays a significant role. The white gangs carry out much of the AB's business on the street and new AB members are often drawn from their ranks. The government will also introduce evidence that Gray is a long-time member of Baby Blue Wrecking Crew. At one point in the conversation, he swears to a statement he has made by saying "that's on my white skin [U/I], Baby Blue Wrecking Crew." GRAY_00001636. In other parts of the conversation, he refers to other associates getting "checked" for speaking to the wrong people, which is slang for being "corrected."

     **2.**     **The July 16, 2021 Video Call Includes Evidence Of Gray's Gang Activity (Enterprise Evidence).**

The video call, dated July 16, 2021 (according to the timestamp on the screen), is also relevant and probative because Gray discusses gang dynamics in it. This speaks to Gray's association with gangs that the government will show are related to the AB enterprise. It shows that Gray is a participant in the

enterprise, and that he is aware it has rules and levels of authority. While much of the call is given over to what appears to be a relationship argument between Gray and the woman on the call, Gray speaks intermittently about conflicts he has with other men – in part over his relationship with the woman. GRAY_00001658 (transcript); GRAY_00001173 (video recording). In reference to another man, Gray states that "his protection won't even protect him against me because I'm just as protected. They just say, 'You guys go ahead and hash it out.' That's what they're going to say." This is an apparent reference to gang structure and the hierarchical nature of it. Gray is speaking of levels of members or associates who have authority to intervene—or, in this instance, choose to not intervene, according to Gray—in conflict he has with another man. The "they" in this context appears to be higher-level members. In context, the references to "protection" imply an expectation of violence. While on its own this recording does not indicate who or what the protection is, it is clear that it is not correctional officers or law enforcement, and it will corroborate other evidence the government intends to introduce to establish the existence of the AB enterprise and Gray's participation in it. This is ultimately relevant to the enterprise elements of the VICAR charge and to Gray's motivation for committing the murders as part of his participation in the enterprise.

### D.    The Government Will Select Clips Of These Calls To Introduce.

Whether any of this evidence could be impeached or argued against is a question that goes to the weight the jury ultimately gives it, but it does not affect the admissibility. This evidence will corroborate other testimony indicating that Gray was the person who shot and killed the two victims on the night of October 4, 2020, and will corroborate other testimony that the murders were carried out as part of Gray's participation in the Aryan Brotherhood enterprise. Because Gray is on trial for a double homicide, it cannot be said that a telephone call that involves some crass language and lewd discussion is so prejudicial as to overwhelm its evidentiary value. *See, e.g., United States v. Graham*, 293 F.Supp.3d 732, 740 (E.D. Mich. 2017) (quoting *United States v. Herron*, 2014 WL 1871909, at 5 (E.D.N.Y. May 8, 2014). ("While it is true that the videos contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes — [ ] violent murders, narcotics trafficking, weapons possession, and other criminal activity by the alleged enterprise.")

UNITED STATES' OPPOSITION TO DEFENDANT
GRAY'S MOTION IN LIMINE TO EXCLUDE VIDEO
AND AUDIO JAIL CALLS [ECF No. 2126]

6

With that said, the government intends to enter into evidence only limited sections of the calls, being mindful not to incorporate irrelevant material or waste the Court's or the jury's time, while still including enough of the recordings to give any statements proper context.  The government is in the process of identifying those sections of the calls that will be most relevant and helpful to the jury and will identify them to the Court and to defense counsel and at its earliest practicable opportunity.

## II.      CONCLUSION

The government asks that this court deny Defendant's motion to exclude one audio jail call and one video jail call, as they will assist the trier of fact to understand the evidence of this case in its totality.

ERIC GRANT
United States Attorney

Dated:  July 17, 2026                                      By:   */s/ James Conolly*
JAMES CONOLLY
Assistant United States Attorney
AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice