ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>JUSTIN GRAY,<br><br>                              Defendant. | CASE NO.  1:20-CR-238-JLT-SKO<br><br>UNITED STATES' OPPOSITION TO DEFENDANT JUSTIN GRAY'S RENEWED MOTION FOR SUPPRESSION OF CELL PHONE DATA [ECF 2124]<br><br>DATE: July 27, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.        INTRODUCTION

The United States moves to dismiss and otherwise to oppose defendant Justin Gray's Renewed Motion for Suppression of Cell Phone Data ("Mot."; ECF No. 2124).  Gray's motion is labeled a "renewed" motion, but it is in substance a motion for reconsideration, as the Court denied his initial motion on the merits nearly two years ago.  Gray does not state "what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion," as is required by Local Rule 430.1(i)(3). The Court may properly dismiss it on this basis.

As to the merits, the government once again opposes the motion on the grounds that the warrant authorizing the search of Gray's cell phone data was properly supported by probable cause and valid on

its face, as this Court has already found.  *See* Order Denying Defendant's Motion to Suppress Cell Phone Data (ECF No. 1301; Sept. 12, 2024).  The affidavit, sworn by a Los Angeles County Sheriff's Department ("LASD") Detective, presented facts connecting Gray's mobile telephones to the October 4, 2020 double homicide of Allan Roshanski and Ruslan Magomedgadzhiev.  Information from both a friend of the victims and a confidential informant ("CI"), which investigators corroborated with telephone and criminal records, provided reason to believe that Gray and Roshanski were in contact the night of the murder, and that Gray was involved with the murders.  It therefore established probable cause to believe that Gray's telephone subscriber records and location information were reasonably likely to contain evidence relevant to the homicides.

The defense's sole argument for suppression, once again, asserts that information the CI contributed to the investigation was not sufficiently reliable.  This contention fails, however, because investigators corroborated sufficient parts of the CI's statements to connect Gray with Roshanski on the night of the murders and acquired independent information that did the same.  Even if the defense had presented reasons to undermine the CI's credibility (but it has not), the facial validity of the warrant provided a good faith basis for investigators to execute the search, and the evidence found in the process is not properly subject to suppression.  *United States v. Leon*, 468 U.S. 897, 922 (1984).

## II.      STATEMENT OF FACTS

On November 19, 2020, California Superior Court Judge Olivia Rosales authorized a warrant for the search of subscriber information and location data associated with the mobile telephone numbers **(424) 224-1216** and **(424) 703-0437**, both belonging to Justin Gray.  *See* Gray's Motion For Suppression of Cell Phone Data, Ex. A (ECF No. 1120-1, June 13, 2024). The warrant application was supported by an affidavit and statement of probable cause sworn to by Los Angeles County Sheriff's Department Detective Louie Aguilera, which stated as follows:

> In the early hours of October 4, 2020, L.A. County Sheriff's Department investigators responded to a homicide call in Lomita.  They found two victims, later identified as Allen Roshanski and Ruslan Magomedgadzhiev.  ECF 1120-1 at 8.  Neither of the victims had ties to the Lomita area and investigators did not know who they had planned to meet there or why.  From the pocket of the sweatshirt Roshanski was wearing, investigators retrieved a black iPhone.  Investigators also identified a car at the scene, registered to Roshanski, from which they later recovered an LG mobile telephone.
> *Id*. at 8–9.

Investigators interviewed G.S., a friend of both victims, on October 7, after the homicide. *Id*. at 9. G.S. stated that she and Roshanski had driven from the Los Angeles area to San Diego, on October 2, and stayed the night. They drove back to Los Angeles in the evening of October 3.[1] According to G.S., during that drive, Roshanski had called Magomedgadzhiev to say "he had something to do and needed him [Magomedgadzhiev] to cover his back." G.S. told detectives this had worried her, and she asked Roshanski "what happened." Roshanski told G.S. that he had received a call to say that "they" (unspecified) had his "stuff," and that he would be going to a "trap house" in Long Beach to retrieve it. *Id*. G.S. described Roshanski's demeanor during this conversation as "very nervous," which she recalled was out of character for him. She also provided investigators with a mobile telephone number for Roshanski, and two mobile telephone numbers for Magomedgadzhiev. *Id*.

On October 27, Judge Rosales issued a search warrant for the call detail records ("CDR") for the three mobile telephones belonging to the victims. *Id*. The records showed that Roshanski had called the telephone number **(424) 224-1216** three times in the hour before he was murdered, at 12:22 a.m., 12:24 a.m., and 12:48 a.m., on October 4. *Id*.

A few weeks later, Det. Aguilera spoke with Los Angeles Police Department ("LAPD") Narcotics Officer Makari, who indicated that that a confidential informant had provided Makari with information about the double homicide. *Id*. at 9. The CI claimed to have been at a friend's apartment in Long Beach, where Justin Gray was also present, and overheard Gray say he had "'got those two Russian guys' in Lomita." The CI indicated that Gray's motive had been to become a member of the Aryan Brotherhood by killing the two men. The CI also provided a telephone number associated with Gray – **(424) 703-0437**. Investigators obtained the subscriber information for this number and confirmed that Justin Gray was the listed subscriber. *Id*.

Separately, investigators reviewed Gray's criminal history. In Gray's probation records, they found that the telephone number on file with Gray's probation officer, **(424) 224-1216**, matched the telephone number Roshanski had called three times in the hour before he was murdered. *Id*.

Based on this information, investigators applied for a search warrant asking for

---

[1] Roshanski and Magomedgadzhiev were murdered between 1 a.m. and 2 a.m. on October 4, 2020, which would have been later the same night Roshanski had driven back from San Diego with G.S.

(1) Subscriber/Registration/Account information; (2) Call detail records with cellular site location data; and (3) GPS precision location information for the telephone number the CI had given police, **(424) 703-0437**, and the telephone number investigators had obtained from Gray's probation records, **(424) 224-1216**. *Id*. at 4. Investigators sought this data, from the period from July 31, 2020, to the date of the warrant, November 19, 2020, "to corroborate the information which investigators have been told and to see how long Victim Roshanski was in contact with Justin Gray, and where [] the cellular phone of Justin Gray was at the time of the murders." *Id*. at 9–10.

Det. Aguilera swore out the warrant on November 19, 2020, before Judge Rosales, who found probable cause for the issuance of the warrant and authorized it. ECF No. 1120-1 at 6.

### III.    ARGUMENT

#### A.    Gray's Motion Is An Improper Motion for Reconsideration.

Gray has previously filed a motion to suppress the cell phone data and information, and the Court has already denied it on the merits. His "renewed" motion is in fact a motion for reconsideration, filed nearly two years after the original motion was denied, with no new factual or legal arguments, and in contravention of the Local Rules.

The Local Rules in this district provide a process for motions for reconsideration, under Local Rule 430.1 (Fed. R. Crim. P. 12) - Motions for Reconsideration:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, see L.R. 303, it shall be the duty of counsel to present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including:
>
> (1) when and to what Judge or Magistrate Judge the prior motion was made;
>
> (2) what ruling, decision or order was made thereon; and
>
> (3) what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion.

L.R. 430.1(i). The third subsection of the Rule serves the purpose of guarding the Court's docket from motions that it has already decided, absent new facts or circumstances. It also has the effect of minimizing the possibility that the Court will render inconsistent opinions in the law of the case.

As Gray acknowledges, the Court denied his initial motion on the merits in a four-page order. ECF No. 1301. The Court did so after considering briefing and hearing argument from the parties. Nevertheless, Gray has provided the original motion by reference, along with the new filing, which argues that the Court's Order was incorrect when it found that "the informant was not anonymous, and the information provided was corroborated." ECF No. 2142 at 5 (*quoting* Order (ECF No. 1301), at 3). Gray does not explain why these conclusions were incorrect, other than to re-state the same facts and legal argument as he presented the first time. He has not established that "new or different facts or circumstances are claimed to exist or were not shown" in the earlier motion. Because Gray has presented no reason to disturb the Court's order, the Court should dismiss his motion.

**B.      The Search Warrant Targeting Justin Gray's Mobile Phone Data Was Based on Sufficient Probable Cause and the Court Should Again Deny Gray's Motion to Suppress The Evidence It Returned.**

**1.      Legal Standard**

A sworn affidavit in support of a search warrant must establish probable cause. U.S. Const. Amend. IV; Fed. R. Crim. P. 41(d)(1). Probable cause exists where "the totality of the circumstances indicates a 'fair probability that ... evidence of a crime will be found in a particular place'." *United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (probable cause requires only a fair probability or substantial chance of criminal activity). The determination is a "practical, common-sense decision" made in light of the totality of the circumstances. *Gates*, 462 U.S. at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). To find probable cause, "the magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004) (citations omitted). A magistrate need not determine that the evidence sought is in fact in the place to be searched, or that the evidence is more likely than not to be found where the search takes place. *Id*. Review of a magistrate judge's finding of sufficient probable cause is "deferential," and "the duty of a reviewing court is simply to ensure that the magistrate

had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39; *see also United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (the authorizing judge's determination "should be paid great deference.")

An authorizing judge may properly incorporate hearsay into a finding of probable cause, provided it carries indicia of reliability about the veracity of the original source and the basis of the informant's knowledge. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986).  Generally speaking, police officers may be presumed reliable. *See United States v. Ventresca*, 380 U.S. 102, 111 (1965); *United States v. Beusch*, 596 F.2d 871, 874 (9th Cir. 1979).  Admissions against penal interest may also establish the statements' veracity. *United States v. Roberts*, 747 F.2d 537, 544 (9th Cir. 1984); *United States v. Estrada*, 733 F.2d 683, 686 (9th Cir.), cert. denied, 469 U.S. 850 (1984).  An informant's reliability may also be demonstrated through independent police corroboration of the information provided. *United States v. Freitas*, 716 F.2d 1216, 1222 (9th Cir. 1983); *see also United States v. Fixen*, 780 F.2d 1434, 1437–38 (9th Cir. 1986).  Ultimately, "[e]vidence bearing on the veracity of the informant and his basis of knowledge is considered together with other relevant evidence in making the probable cause determination based on the totality of the circumstances." *. Angulo-Lopez*, 791 F.2d at1396–97 (citing *Roberts,* 747 F.2d at 543; *Estrada,* 733 F.2d at 685.  In other words, if a search warrant is based on more than only an informant's statements, those statements are incorporated into—and examined in light of—the entirety of the probable cause analysis. *Id*.

### 2.    Gray has provided no new information to argue for suppression.

Gray's "renewed" motion provides nothing new to suggest that suppression here is proper.  He argues only that the Court's order was incorrect when it found that "the informant was not anonymous, and the information provided was corroborated."  ECF No. 2142 at 5, (*quoting* Order (ECF No. 1301), at 3).  To support these two points, however, he simply re-states the same positions as in his initial motion.  ECF No. 1120.

As to the first point, he argues that the CI was "unknown and therefore anonymous to Detective Aguilera, the affiant," but again provides no facts to support this contention.  Mot. at 5.[2]  But, again, the

---

[2] Gray made this point in his initial motion: "The affiant Detective Aguilar appears to have absolutely no knowledge of the identity, reliability, or credibility of the confidential informant." ECF

affidavit does not state that CI was unknown to law enforcement generally, or to Det. Aguilera specifically. Nevertheless, Gray continues to refer to the CI this way. ECF No. 1120, at 5, 7–8; Mot. at 4–5. But the affidavit makes clear that CI was known to law enforcement, and law enforcement may properly rely on information from other officers. Mot. at 5; *see also* Order (ECF No. 1301, at 3–4 (citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965)); ECF No. 1120-1, at 9. Whether Det. Aguilera knew the CI directly, or received the CI's information from another law enforcement officer, therefore makes little difference in the final analysis.

But Gray's argument misses the mark in any event because, even if the CI had been anonymous, as discussed below, investigators corroborated the CI's information connecting Gray to the murder victim. *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) (independently corroborated information from even an unknown informant may be properly incorporated into a finding of probable cause) (citing *United States v. Laurins,* 857 F.2d 529, 540 (9th Cir.1988), *cert. denied,* 492 U.S. 906 (1989)). Gray's contention that "the information that Mr. Roshanski had called a phone allegedly associated with Mr. Gray three times in the hour preceding the homicides is insufficient corroboration of the informant's tip," simply ignores the other corroborating information Det. Aguilar provided in his affidavit, explained in detail, below, and incorporated into the Court's order. ECF No. 1301, at 3. Roshanski's three phone calls to Gray in the hour before he was killed were not considered in isolation, as significant as three phone calls from a murder victim in the minutes before he was killed may be.[3] Therefore, Gray's second argument that the Court erred in finding that "the information provided [by the CI] was corroborated," also fails.

### 3. Det. Aguilera's affidavit contained sufficient probable cause to justify search of the requested telephone records and data.

Det. Aguilera's affidavit contained sufficient probable cause to believe that Gray's mobile telephone subscriber information and location data would be a reasonable place to search for evidence related to the murders of Roshanski and Magomedgadzhiev. Investigators sought that data, from

---

No. 1120, at 7. Gray has presented no new information to suggest this is true.

[3] Gray cites *United States v. Rowland*, 464 F.3d 899, 907 – 08 (9th Cir. 2006), to list a few specific factors a court might use to evaluate the strength of an informant's tip, then concludes that none of these items are present in Det. Aguilera's affidavit.

July 31, 2020, to the date of authorization, to corroborate other information they had been given about the murders, to see how long Roshanski had been in touch with Gray, and to see where Gray's cellular telephones were—and, by extension, where Gray was—at the time of the murders. ECF No. 1120-1 at 9–10. Between Roshanski's telephone records and the information G.S. provided, investigators had sufficient probable cause to seek Gray's telephone data as evidence related to the murders.

At the outset, the affidavit states that investigators received a report of a double homicide. *Id*. at 8. At least one victim—Roshanski—had a mobile phone on him. *Id*. Near the end of the affidavit's narrative, Det. Aguilera indicated that the call records for that telephone included the number **(424) 224-1216**, dialed at 12:22 a.m., 12:24 a.m. (two minutes later), and 12:48 a.m. (22 minutes later). *Id*. at 9. This was notable enough to include in the affidavit because Roshanski made the three calls in the hour before he was murdered, minutes apart, between midnight and 1 a.m. It is logical to conclude that one of the last people a murder victim tried to contact—with persistence, and in the middle of the night—just before he was murdered, might have some information about the murder or its circumstances. This alone would be a sufficient basis to search for the subscriber information and location data for the user of that telephone. It was also information completely independent of the CI's tip.

The affidavit added that G.S. provided further information to suggest that whomever Roshanski intended to meet that night was involved in something criminal. She told investigators that Roshanski had said the meeting was at a "trap house,"[4] that he appeared uncharacteristically nervous, and that he wanted Magomedgadzhiev with him to "cover his back." *Id*. at 9. These facts further strengthen the inference that the user of **(424) 224-1216** could be connected to the murder, and information related to that number would be probative of who that person was and how he may have been involved. *Id*. Indeed, the affidavit included as a basis for requesting this information, in part, that phone records could be used to identify those who may have been in contact with the victims, or their co-conspirators, as well

---

[4] The term "trap house" connotes a place used to make, sell, or consume drugs. Here, G.S. believed it was a place where someone was storing Roshanski's stolen property. In any case, it is reasonable to infer that Roshanski was planning to meet with someone in a place where criminal activity was occurring. It is also reasonable to infer, therefore, that anyone Roshanski planned to meet around that time was likely involved in criminal activity. As the affidavit makes clear, it would be reasonable to look for evidence of who that person was, and where they were at relevant times, in that person's telephone records and data.

as allow investigators to confirm or disprove "alibis, statements, and other observations." *Id*. at 11; *see Fernandez*, 388 F.3d at 1253 ("[A] magistrate judge "may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.") (internal quotations omitted).

According to the affidavit, the CI provided Gray's name as a person potentially involved in the murder, as well as Gray's telephone number, **(424) 703-0437**, both of which investigators corroborated.[5] *Id*. at 9. For the telephone number, investigators used subscriber records to verify that Gray was indeed the subscriber. Investigators also reviewed Gray's criminal record and found that he used an additional telephone number, **(424) 224-1216**. Investigators found this number in Roshanski's CDRs the night he was murdered. *Id*. Taken together, these facts allow the inference that Gray had some interaction with Roshanski, and certainly that Roshanski felt a need to be in touch with Gray, the night Roshanski was murdered. In short, the CI's corroborated information, in conjunction with other facts from the investigation, established probable cause to believe that Gray's telephone records and location data were reasonable places to search for evidence about the murders.

Whether Gray's overheard comments about the murders were true or not, the details the CI recalled about them provided further reason to suspect Gray's involvement. According to Officer Makari, the CI overheard Gray say he had "'got those two Russian guys' in Lomita." ECF No. 1120-1 at 9. The victims were in fact Russian, and they were killed in Lomita, an area to which they had no known connection. If the CI's recall of Gray's statements here is accurate, this was effectively a confession.[6] If Gray was not telling the truth, and that perhaps someone else killed the victims, he had at least revealed to the CI sufficient (accurate) details about the murders to suggest he was involved. And even if the CI was being untruthful about overhearing Gray make these statements, the CI had still

_____

[5] The defendant's new motion continues to mischaracterize the CI as "unknown." ECF No. 1120, at 5, 7–8; Mot. at 4–5. But the affidavit does not state that CI was unknown to law enforcement, or even to Det. Aguilera. It simply does not name the CI, but Det. Aguilera does not state that the CI is truly anonymous. Even if the CI had been anonymous, however, as discussed herein, investigators corroborated the CI's information connecting Gray to the murder victim. *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) (independently corroborated information from even an unknown informant may be properly incorporated into a finding of probable cause) (citing *United States v. Laurins,* 857 F.2d 529, 540 (9th Cir.1988), *cert. denied,* 492 U.S. 906 (1989)).

[6] In addition, for the purposes of determining probable cause, Gray's statements here would be considered reliable as self-incriminating. *Angulo-Lopez*, 791 F.2d at 1397.

provided the police with Gray's name, which they then used to find his criminal records, and Gray's other telephone number, **(424) 224-1216**. Any way this evidence may have been read, when joined with the other investigative leads detailed in the affidavit, and described above, it led investigators to a connection between Gray and Roshanski near the time of the murders.

Gray's contention that the entire search warrant should be invalidated because the information from the CI is unreliable therefore fails because this information was sufficiently corroborated and the CI's statements were but one part of the larger probable cause narrative. Gray argued in his initial motion that "[t]he basis for targeting Mr. Gray's phone numbers set forth in the affidavit comes in the form of quadruple hearsay …" for which the "crucial link in this chain of hearsay is the unnamed 'confidential informant.'" ECF No. 1120 at 7. But, of course, this is not true.[7] While Gray's reported statements of killing the two victims are explosive, his name and telephone number were sufficient to link him to the murder victims when combined with the other parts of the investigation. It is not needed for a finding of probable cause that Gray's purported statements at the apartment were true, or even that he made them, so the details of what was actually said, to whom, when, or where, are likewise unnecessary.

### 4. Officers' reliance on the properly authorized warrant was objectively reasonable.

Det. Aguilera's affidavit established sufficient probable cause to justify the requested warrant, and, once authorized, the warrant provided a good faith basis for investigators to search the specified mobile telephone data. When an officer relies on a duly sworn and authorized search warrant, that "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, 922 (1984) (internal quotation marks and citation omitted). The good faith exception saves a search based on a defective warrant "unless no reasonable police

---

[7] To the extent that Gray argues that Det. Aguilera's affidavit and the statements from Officer Makai are hearsay, those statements are reliable. *Angulo-Lopez*, 791 F.2d at 1396–97 (citing *Ventresca*, 380 U.S. 102, 111 (1965); *United States v. Beusch*, 596 F.2d 871, 874 (9th Cir.1979) (same). Det. Aguilera swore to his affidavit before the authorizing judge, and the judge found it to be true (or the judge would not have authorized the warrant). It was reasonable for Det. Aguilera to include Officer Makari's statements in his narrative of probable cause as an officer who had spoken with the CI. *United States v. Butler*, 74 F.3d 916, 920–21 (9th Cir. 1996) (finding that it is "well recognized" that law enforcement officers can rely on the experience and information of other law enforcement officers, as they rely on their own, in establishing probable cause).

officer could have believed there was probable cause to search the location identified in the search warrant." *United States v. Tate,* 795 F.2d 1487, 1491 (9th Cir.1986).  That is to say, the presumption of good faith applies unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Luong*, 470 F.3d 989, 902 (9th Cir. 2006). Suppression of evidence found in a search pursuant to a facially valid warrant is not justified if the officer's reliance on the judge's finding of probable cause was objectively reasonable.  *See United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *Leon*, 468 U.S. at 926) (internal citation marks omitted); *see also Illinois v. Krull*, 480 U.S. 340, 48–49 (1987) ("[E]vidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." (Internal quotations omitted).)

The warrant at issue here was facially valid and duly authorized by a judge.  To overcome the presumption of good faith reliance on it, therefore, the defense would have to establish that at least one of four enumerated exceptions apply: (1) The affiant knowingly or recklessly misled the judge with false information; (2) The judge wholly abandoned his or her neutral role; (3) The affidavit was so lacking in indicia of probable cause that official belief in its existence was objectively unreasonable; or (4) The warrant was so facially deficient that executing officers could not reasonably presume it to be valid. *Luong*, 470 F.3d at 902 (citing *Leon*, 468 U.S. at 923).  This, the defendant has not done, either in this motion or the one that preceded it.

Apart from questioning the reliability of the CI, the defense has made no such allegation here and there is no basis to do so.  Gray has alleged no knowing or reckless attempts to mislead the judge with false information.  He does not contend that Judge Rosales abandoned her neutral role in any way when she authorized the warrant.  He has also made no argument that the warrant was "so facially deficient" that the officers executing it could not reasonably presume it to be valid.

As to the CI's information, as explained above, it was sufficiently corroborated, and operated within the context of other reliable information, to establish probable cause.  Between the CDR related to Roshanski's telephone, G.S.'s statements, and Gray's telephone subscriber and probation records, all examined within the context of the murder itself—including time, place, identities of the victims, etc.—

the authorizing judge had before her ample indicia of probable cause on which she could rely. It was not therefore objectively unreasonable for her to conclude that probable cause existed, nor unreasonable for officers to rely on that finding when they executed the search.

To the position that the warrant was on its face valid, the government now also cites the Court's prior order in this case, finding that the warrant was in fact properly supported by probable cause. ECF No. 1301. For this Court to find so, it would follow that an officer can be said to have acted in good faith in conducting the search, having received proper authorization for it. *Leon*, 468 U.S. at 922. There would be no reason for that officer to believe that the warrant was invalid under the Fourth Amendment.

## IV.    CONCLUSION

For the forgoing reasons, the United States requests respectfully that the Court deny defendant Justin Gray's Motion for Suppression of Cell Phone Data.


Dated:  July 16, 2026                                   ERIC GRANT
                                                        United States Attorney


                                                By:  /s/ JAMES CONOLLY
                                                     JAMES CONOLLY
                                                     Assistant United States Attorney
                                                     AMANDA J. KOTULA
                                                     Trial Attorney, U.S. Department
                                                     of Justice