ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN GRAY,<br><br>Defendant. | CASE NO.  1:20-CR-238-JLT-SKO<br><br>UNITED STATES' OPPOSITION TO DEFENDANT JUSTIN GRAY'S MOTION TO EXCLUDE OTHER CRIMES EVIDENCE [ECF 2121]<br><br>DATE: July 27, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

## I.    INTRODUCTION

The United States opposes defendant Justin Gray's Motion To Exclude Other Crimes Evidence ("Mot."; ECF No. 2121) which is a motion *in limine* to exclude evidence of the "bad acts" disclosed in the United States's May 26, 2026 Rule 404(b) Notice Letter.  Fundamentally, Gray's motion seeks to exclude evidence that will go to show the existence of the Aryan Brotherhood enterprise, its ongoing racketeering activity, and to explain Gray's role within that enterprise.  This evidence is directly relevant to establishing the criminal enterprise charged in both Violence Crimes in Aid of Racketeering ("VICAR") murder counts—the Aryan Brotherhood ("AB" or "the Enterprise")—its racketeering activity, and the interstate nature of that activity.

UNITED STATES' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE "OTHER ACT" EVIDENCE UNDER FRE 404(B) AND 403

1

Pursuant to the stipulated scheduling order, the United States provided early Rule 404(b) notice to defendants on May 26, 2026—just under four months before trial is scheduled to begin.  At the time of this deadline, the United States necessarily disclosed potential Rule 404(b) evidence broadly, including all possible events that it could reasonably anticipate admitting at trial.  Since then, in preparing for trial, the government has worked to plan out and streamline its presentation of evidence to the jury.  As part of that process, it has decided not to present evidence of some of the "bad acts" that it disclosed months ago in its Notice Letter—even though such evidence would be admissible if offered.

At this stage, the government does not intend to offer evidence of murders of Victim-11 and Victim-12, in March 2022, or the kidnapping of Victim-18, also in March 2022.  In so deciding, the government maintains that this evidence is still relevant and admissible.  Depending on the course of trial, how evidence comes in, and the substance of cross examination, it is possible that this evidence will have renewed significance, and the government may revisit its decision not to introduce it.  For now, however, the government does not plan to evidence of these crimes in its case in chief.

The United States still intends to introduce evidence of the following acts that defendants seek to exclude through their motions:

1.      AB Unemployment Fraud – 2020

2.      Drug Trafficking – 2020

3.      Prison Assaults – 2018, 2020.

Evidence of acts within each of these categories is admissible as direct evidence of the enterprise charged in Counts Two and Three of the Fourth Superseding Indictment.  Each is an enterprise-related crime that is relevant to prove the existence of the charged enterprise, the Aryan Brotherhood.  Courts have recognized that an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure."  *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (citation omitted) (emphasis in original).  Each of the first four acts is also relevant to prove the "pattern of racketeering activity" element.  The indictment broadly charges murder and drug trafficking as part of the Aryan Brotherhood's pattern of racketeering activity.

Thus, each of these acts is admissible as direct, "intrinsic" evidence of the enterprise charged in Counts Two and Three, and is not subject to Rule 404(b).[1]

In the alternative, each of these acts is admissible under Rule 404(b), for several permissible purposes, including modus operandi, common scheme and plan, knowledge of the enterprise, and to corroborate the testimony of important government witnesses.

## II.    FACTUAL BACKGROUND

### A.    VICAR Murder Counts

1.    Gray is charged in the Fourth Superseding Indictment with two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959, for the October 4, 2020 murders of Allan Roshanski and Ruslan Magomedgadzhiev.  ECF No. 1970, at 11–12.  Each count alleges that "[t]he AB enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion, and arson in violation of the California Penal Code, acts involving robbery in violation of the California Penal Code, multiple acts indictable under 18 U.S.C. §§ 1028, 1341, and 1343, and multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841, 843, and 846.  ECF No. 1970, at 11.

### B.    May 26, 2026 Rule 404(b) Notice

On May 26, 2026, the United States submitted a Rule 404(b) notice that detailed evidence it will present at trial of, among others, the following three categories of evidence.

#### 1.    AB's Unemployment Fraud

In 2020, AB members, including now-convicted co-defendant Francis Clement, were involved in unemployment fraud, including by defrauding the State of California's Employment Development Department ("EDD").  This particular crime, in part, drew the AB's attention to Roshanski (Victim-1), who the evidence will show was believed to be making a significant amount of money from EDD fraud. Cooperating witnesses will testify that the AB, including Clement, felt that they were entitled to a share

---

[1] As stated in its Notice Letter, it has always been the government's position that the evidence included "is admissible as direct evidence of the existence and nature of the enterprise the government must prove to convict a defendant under 18 U.S.C. §§ 1959(a)(1) and 2, Murder in Aid of Racketeering. … This notice does not concede that any piece of evidence or episode is subject to the requirements of Rule 404(b) of the Federal Rules of Evidence.)."  The government included them in its Notice Letter out of an abundance of caution because they are also admissible under the requirements of Rule 404(b).

of the profits of all criminal activity conducted by white criminals in or out of prison, who were either already associated with the AB, or were not affiliated with any other criminal group.

At some point in 2020, it came to Clement's attention that Roshanski—an individual outside prison, believed to be unaffiliated with any gang—was making a significant amount of money from EDD fraud.  Consistent with the gang's modus operandi and codes of conduct, Clement told Roshanski that he was required to pay taxes on his EDD profit to the AB.  Roshanski refused.  In response, Clement ordered Gray to kill Roshanski, in part, because of this refusal to pay and, more generally, running afoul of the gang's expectations of being enriched from any money generated from any source.

A cooperating witness will be able to testify both to the AB's EDD fraud schemes and to its taxation rules, having been tasked to manage both during his time incarcerated.  EDD fraud is charged under the fraud statutes of 18 U.S.C. §§ 1028 (fraud related identification documents), 1341 (mail fraud), and 1343 (wire fraud), and is among the crimes alleged in Counts Two and Three as part of the AB's racketeering activity.

### 2.     AB's Drug Trafficking

During the same time frame as the VICAR murders charged here, the AB generally, and Clement specifically, were engaged in drug trafficking.  At one point, Roshanski interfered with that drug trafficking, which resulted in Clement losing a few thousand dollars' worth of drugs.  Roshanski had come into possession of methamphetamine that Clement claimed belonged to himself.  Another individual then acquired the drugs from Roshanski and sold them.  Clement demanded payment from this other individual, who eventually paid.  Clement also demanded payment from Roshanski, but he again refused, in direct contravention of the gang's codes of conduct.  This provided Clement with another reason to order Gray to kill Roshanski.  Gray followed Clement's order and set up a time to meet Roshanski, ostensibly to discuss payment.  When Gray met Roshanski, however, Magomedgadzhiev was also present, and Gray shot them both.

At least one cooperating witness will be able to testify that they knew about the drug debt Clement believed Roshanski owed him and knew that Clement had finally ordered Roshanski to be killed because of it.  Drug trafficking crimes fall under 21 U.S.C. §§ 841, 843, and 846, which are also among the crimes alleged in Counts Two and Three as part of the AB's racketeering activity.

3.     Gray's Prison Assaults and Weapons Possession

The United States plans to introduce evidence that Gray committed prior prison assaults, including with inmate-made weapons, on or about April 27, 2018—classified as an attempted murder—and January 1, 2020—classified as battery on a prisoner.  Gray committed prison assaults in the distinctive manner of members of the AB enterprise.

In the April 27, 2018 attack, Gray and another inmate attacked a third inmate, striking him in the head and upper torso with improvised weapons.  Before prison staff could stop the attack, guards witnessed Gray and the other assailant throw unidentified objects into the middle of the yard, before being commanded to get on the ground by other staff.  When guards investigated the place where the objects had landed, they found two improvised weapons:  a flat piece of metal, sharpened to a point, with a cloth handle, just over six inches long; and a metal rod, also sharpened to a point, and with a cloth handle, roughly nine inches long.   On examination, it was apparent that the victim had stab wounds that were consistent with the weapons found.  The victim's injuries were so severe that prison staff had him transported to a hospital by hospital.

In the January 20, 2020 attack, Gray and another prisoner attacked two non-white inmates, punching them in the face as they tried to defend themselves.  Prison guards yelled for all the prisoners to get on the ground, but Gray and his co-assailant continued to batter the two victims.  To stop the attack, a guard threw a pocket tactical grenade at the skirmish, while others deployed chemical agents.  Gray ceased his attack, but his accomplice continued to batter one of the other inmates.  It was not until a guard fired a 40mm round that the other attacker finally got on the floor as commanded.

### III.     APPLICABLE LAW

#### A.     VICAR Murder

As noted, Gray is charged in the Fourth Superseding Indictment with two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959, for the October 4, 2020 murders of Allan Roshanski and Ruslan Magomedgadzhiev.  ECF No. 1970, at 11–12.

To support a VICAR conviction, the government must show: "(1) that the enterprise exists; (2) that the enterprise is engaged in racketeering activity; (3) that the defendant committed or participated in the murders; and (4) that the defendant acted for the purpose of gaining entrance to or maintaining or

increasing position in the enterprise." *United States v. Vasquez-Velasco*, 15 F.3d 833, 842 (9th Cir. 1994); *see also* Ninth Circuit Manual of Model Jury Instruction § 8.151.

For the first element—the existence of an enterprise—the government must prove that the Aryan Brotherhood was "a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time." Ninth Cir. Model Crim. Jury Instr. No. 18.9. For the second element, the government must prove that the enterprise was engaged in racketeering activity, that is to say, the commission of certain crimes. Ninth Cir. Model Crim. Jury Instr. No. 18.10.

To establish these elements, the government will present evidence supporting all of elements and may present evidence of uncharged crimes in the process. *United States v. Henley*, 766 F.3d 893, 914-15 (8th Cir. 2014) ("evidence of uncharged crimes was admissible in a RICO prosecution as 'proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy'") (citations omitted). Indeed, courts have concluded that the prosecution may introduce evidence of uncharged crimes (up to and including murders) not involving the defendant in order to prove the existence of an "enterprise" and its "racketeering activity." *See, e.g.*, *United States v. Basciano,* 599 F.3d 184, 207 (2d Cir. 2010); *United States v. Jones,* 566 F.3d 353, 362 (3d Cir. 2009); *United States v. Finestone*, 816 F.2d 583, 586–87 (11th Cir. 1987); *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991); *United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) ("This court has held that proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise.").

**B.        Intrinsic evidence is not subject to Rule 404(b)**

Rule 404(b) only applies to evidence of "other" bad acts of a defendant—that is, acts that are extrinsic to the proof of the charged crimes. Fed. R. Evid. 404(b)(1). Evidence that is "inextricably intertwined" with the charged offense, however, is not subject to the notice requirements of Rule 404. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). The Ninth Circuit has held that evidence is "inextricably intertwined"—and thus outside the scope of Rule 404—in two circumstances: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it was

necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *Id.* (citations omitted).

### C.    Rule 404(b)

Evidence of extrinsic, "other" acts committed by a defendant are not admissible to prove a defendant's character, but they may be admissible for another purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

### IV.    ARGUMENT

#### A.    Each of the challenged areas of conduct is admissible as direct evidence of the Aryan Brotherhood Enterprise.

Each of the challenged areas helps prove the existence of the Aryan Brotherhood enterprise, which is an essential element of Gray's VICAR murder counts.  For example, the murder of Roshanski shows the enterprise in action, enforcing its rules on the belief that other white criminals must pay taxes unto the AB.  A non-AB member (Roshanski) refused to pay a share to the AB.  There was nothing theoretical about the affront or the affronted enterprise.  The Aryan Brotherhood took this as a sign of disrespect. Clement believed that he was entitled to a share of Roshanski's EDD profits because Roshanski was white, and a criminal, and had no existing allegiance to any other criminal organization. Clement took the affront so seriously that, when Roshanski crossed another line, and took drugs that Clement also claimed as his, but refused to pay for them, Clement had Roshanski killed.  In the AB's view, Roshanski had both disrespected the enterprise and had stolen from it.  Such affronts do not go unpunished under the AB's code, even if one is not part of the enterprise and even if one is not in prison. The night he was killed, Roshanski apparently had some idea that he might be in danger, because he had arrived with Magomedgadzhiev as backup.  Gray shot them both.  Roshanski had failed to follow the AB's codes of conduct.  As a result, the AB decided he needed to die.  But of course, Clement could not do it himself, and his order to Gray to kill Roshanski also serves as powerful enterprise evidence.  The shock of the killing sent a clear message to others not to cross the AB as Roshanski had.  It also sent the message that the AB could reach people like Roshanski outside prison walls.  Clement ordered Gray to

kill Roshanski. Gray obeyed.  It was an order from a superior member of the enterprise and non-compliance would have meant violence, possibly death, for Gray himself.  He could not say no.

Gray's prison assaults also demonstrate the existence of the enterprise and Gray's association with it.  Gray's attempted murder while in prison, in which he and another inmate use shanks to stab their victim repeatedly in the head and torso, is consistent with the AB's style of violence and methods of attack.  Two assailants, in a planned attack using improvised weapons, launching a brutal assault that the victim cannot escape.  When guards tried to stop it, Gray's accomplice did not heed their commands and continued attacking.  It is common for AB assaults to continue long after guards have ordered the inmates to the ground.  Perhaps more revealing is the fact of the attack itelf.  The AB controls white inmates in the prisons.  For a white inmate to launch this level of violence, planned in advance with a partner, the AB would have to have either ordered it or, at the very least, approved it.  Either way, Gray and his accomplice would have needed the AB's permission to disrupt a prison yard so brutally and not have the AB come down on them for it.

Likewise, Gray's assault on two non-white inmates in 2020—less than a year before the murders charged here—indicates the AB either told him to do it or gave him permission, but he could not have chosen to do it on his own.  The AB knows that violence that cross race lines risk disrupting the uneasy peace that exists between prison gangs.  Killing or attacking an inmate of a different race risks igniting a race riot.  As a result, a white inmate would not dare harm an inmate of another race without the clear permission of the AB.  The fact of the attack itself shows that, in this instance, Gray had that permission.  This is evidence of the enterprise and Gray's place in it.  He operates under their command. He was either ordered by them to do violence or else sought their permission and received it.  Either way, he was not free to act has he wished.

Courts routinely admit evidence of such enterprise-related crimes as proof of the enterprise itself. *See, e.g., United States v. Henley*, 766 F.3d 893, 914–15 (8th Cir. 2014) (murder); *United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (a robbery, shooting, and murder plots); *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (three murders); *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003) (16 robberies); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) ("numerous"

murders). That is because an enterprise "is often-times more readily proven by what it *does*, rather than by abstract analysis of its structure." *Fernandez*, 388 F.3d at 1224.

Similarly, these challenged acts are admissible as direct proof of the enterprise charged in Counts Two and Three. It makes no difference to the admissibility of these acts that they were not specifically alleged in the indictment or that the defendants may claim he did not directly participate in each act. *See, e.g., United States v. Finestone*, 816 F.2d 583, 585-87 (11th Cir. 1987) (affirming admission of uncharged acts of murder, kidnapping, and drug smuggling that defendant did not commit but his co-conspirators did to prove the pattern of racketeering activity). Such evidence is direct proof of an element of the crime, not Rule 404(b) evidence. *See Miller*, 116 F.3d at 682 ("[w]here … the indictment contains a conspiracy charge, 'uncharged acts may be admissible as direct evidence of the conspiracy itself.' 'An act that is alleged to have been done in furtherance of the alleged conspiracy ... is not an "other" act within the meaning of Rule 404(b); rather, it is part of the very act charged.'") (quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994)).

**B.    In the alternative, each of the five challenged acts is admissible for a listed purpose under Rule 404(b).**

Even if the challenged acts were extrinsic to the VICAR murder counts, they still would be admissible under Rule 404(b). Each is relevant for at least three permissible purposes under Rule 404(b).

First, each set of illegal activity is admissible to show the modus operandi of the enterprise, including by punishing violations of the AB's codes of conduct with violence and by requiring subordinates to carry out the directives of AB members to commit crimes on behalf of the enterprise. *See United States v. Winters*, 729 F.2d 602, 604 (9th Cir. 1984) (evidence is admissible under Rule 404(b) to show modus operandi).

Second, each area of conduct is admissible to show the AB's common scheme or plan to enforce its codes of conduct and exercise control over subordinate inmates and white gang members outside the prison. The murders of the two victims show that the AB will enforce its code even outside prison. These murders show the AB's common scheme or plan to use violence to instill fear in others, incarcerated or not.

Third, each of these areas of conduct are admissible to show the knowledge of the enterprise of those involved in or aware of the event, since each act is an example of the Aryan Brotherhood in action, with its members and associates committing crimes on behalf of the enterprise. Roshanski did not fail to pay Gray and it was not Gray who he disrespected. Gray was not the one who decided that Roshanski should be killed. Roshanski disrespected Clement, in Clement's view, but someone else would have to pull the trigger. Gray knew the reasons Clement wanted Roshanski dead or, at the very least, knew Clement wanted Roshanski dead. Gray received the order to do it and obeyed.

Rule 404(b) "other act" evidence is admissible where (1) it proves a material point; (2) is not too remote in time; (3) is supported by sufficient evidence; and (4) where knowledge or intent is at issue, the act is similar to the offense charged. *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005). Each requirement is met here. Each of these acts proves a material point because they go to the core issues of proving the existence and racketeering activity of the Aryan Brotherhood. None is too remote in time because each was either an ongoing revenue-generating activity for the AB (EDD fraud, drug trafficking) during the time of the murders, or only a short time from the murders (prison assault in the same year). Each is supported by sufficient evidence because one or more witnesses with personal knowledge of relevant events and/or admissions by the defendants will testify about them and additional independent evidence of many of them will be presented as well. With regard to their admissibility to show knowledge of the enterprise and its activities, the acts are interwoven with the offenses charged. They are precisely the types of racketeering activity alleged in the indictment.

**C.    Other acts are also admissible for an "other purpose" under Rule 404(b)—namely to corroborate key government witnesses.**

In addition, evidence of this other conduct is admissible for "[]other purpose[s]" under Rule 404(b), specifically corroboration of government witnesses. Evidence establishing the AB's EDD fraud and drug trafficking efforts will corroborate testimony from government witnesses, because it will show that they understood correctly why it was that Clement had ordered the murders. The government may introduce evidence under Rule 404(b) to corroborate the testimony of prosecution witnesses where "the matter corroborated [is] significant and the corroboration [is] direct." *United States v. Pitts*, 6 F.3d 1366, 1371 (9th Cir. 1993).

For the drug trafficking, a government witness ("Doe") will testify that the witness was aware of the drugs for which Clement sought payment, because Doe was the other individual responsible for disposing of the drugs. Doe will be able to testify to where Doe found the drugs, what Doe did with them, and what Clement said to Doe when he found out that Doe and Roshanski were responsible for selling the drugs Clement believed to be his. Another key witness to the murders ("Roe"), will also be able to testify to Clement's drug trafficking and how it led, in part, to his order to kill Roshanski. Roe will also be able to testify to Gray's being given the order to kill the two victims, and to Gray's carrying it out, and therefore his credibility will undoubtedly be under "heavy attack" from the defense. *United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987) (allowing government to introduce Rule 404(b) evidence to corroborate key government witness) (cited with approval in *Pitts*, 6 F.3d at 1370–71).

### D.    Rule 403 does not warrant exclusion.

Finally, defendants argue that the evidence of the other acts at issue should be excluded under Rule 403. *See* Motion, ECF No. 2121, at 12. But Rule 403 does not warrant their exclusion.

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. "Rule 403, however, is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)). "Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* (emphasis in original). As the Ninth Circuit has explained:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983)). *Mills,* which the Ninth Circuit commended for "aptly" stating the law in the passage quoted above, made this statement in the course of "admitting evidence of Aryan

Brotherhood gang activities" as background to the charged crime of murder and conspiracy to commit murder in a federal prison.  *Hankey*, 203 F.3d at 1172; *see also Mills*, 704 F.2d at 1558–60.

Where, as here, evidence of illegal conduct is directly relevant to prove multiple elements of a VICAR charge, including the existence of the charged enterprise and its racketeering activity, courts routinely overrule Rule 403 objections.  *See, e.g., Matera*, 489 F.3d at 120 (evidence of even "acts of extreme violence" not unfairly prejudicial where probative of the charged enterprise); *Miller*, 116 F.3d at 682 (murders); *Thai*, 29 F.3d at 813 (evidence of bloodstained walls from brutal beatings that resulted in the "copious" flow of blood); *United States v. Brady*, 26 F.3d 282, 287–88 (2d Cir. 1994) (murders by non-defendants); *Finestone*, 816 F.2d 583 (murder, kidnapping, and drug smuggling by non-defendants).

Indeed, defendants cite no case in which a court has excluded such evidence under Rule 403 in a VICAR case.  Further, defendants' claim that evidence of other illegal conduct, including fraud and drug trafficking, is inflammatory and unfairly prejudicial makes no sense in case in which violence is at the core of the charged conduct: the existence of an enterprise that deliberately uses extreme acts of violence as a means of control and that is charged with engaging racketeering activities, including by committing "acts involving murder, extortion, and arson," "acts involving robbery," multiple acts indictable under fraud statues, and "multiple offenses involving drug trafficking."  ECF No. 1970, at 11. As courts have recognized, where the evidence the defendant seeks to exclude is no more inflammatory than the charged conduct, Rule 403 objections make little sense.  *See, e.g., Baez*, 349 F.3d at 94.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motions *in limine* to exclude "other act" evidence under Rules 404(b) and 403.

Dated:  July 17, 2026

ERIC GRANT
United States Attorney

By:  /s/ JAMES CONOLLY
JAMES CONOLLY
Assistant United States Attorney
AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice