JAMES S. THOMSON
California SBN 79658
Attorney and Counselor at Law
732 Addison Street, Suite A
Berkeley, California 94710
Telephone: (510) 525-9123
Facsimile: (510) 525-9124
Email: james@ycbtal.net

TIMOTHY J. FOLEY
California SBN 111558
Attorney at Law
1017 L Street, Number 348
Sacramento, California 95814
Telephone: (916) 599-3501
Email: tfoley9@earthlink.net

Attorneys for Defendant
JUSTIN GRAY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN GRAY, et al.<br><br>Defendants. | **Case No. 1:20-cr-00238-JLT-SAB**<br><br>**JUSTIN GRAY'S NOTICE OF JURY COMPOSITION IN THE EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION** |

Justin Gray's jury trial on Count Two and Count Three of the Fourth Superseding Indictment is scheduled to begin on August 18, 2026.

The Sixth Amendment guarantees criminal defendants the right to "juries selected at random from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 529 (1975); *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The Jury Selection and Service Act helps to implement this constitutional right. *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1157 (9th Cir. 2014) (en banc).

In recent years significant disparities regarding the representation of males, Hispanics, and Blacks in the jury pools of the Eastern District of California, both the Sacramento and Fresno Divisions, have been brought to the attention of the Court. See,

e.g, Order, November 5, 2024, Doc. 2475, *United States v. Yandell*, No. 2:19-cr-00107-KJM; Memorandum Decision and Order, June 1, 2026, Doc. 601, *United States v. Leiva Leiva*, No. 1:22-cr-00232-BLW-EPG. To date, the Court has not held that these disparities in the jury pools were sufficient to trigger any dismissals or other measures.

Mr. Gray submits the accompanying Declaration of Jeffrey Martin, which sets forth the statistical evidence of the underrepresentation of males, African-Americans, and Hispanics in the Master Jury Wheel filled on March 25, 2025 that is being used to draw the jury panel in this trial. The declaration discusses the three major statistical tests for assessing underrepresentation in fair cross-section claims that have been utilized by the Ninth Circuit: absolute disparity, comparative disparity, and standard deviation. See *Hernandez-Estrada*, 749 F.3d at 1160-1165. This evidence is submitted for guidance in the selection of the jury.

Dated: August 13, 2026

Respectfully submitted,

*/s/ James S. Thomson*

*/s/ Timothy J. Foley*

JAMES S. THOMSON
TIMOTHY J. FOLEY
Attorneys for JUSTIN GRAY

## DECLARATION OF JEFFREY MARTIN

The undersigned, Jeffrey Martin, declares as follows:

1. My name is Jeffrey O'Neal Martin. I am over the age of majority and provide this declaration voluntarily and based on my personal knowledge.

2. I hold a Bachelor's degree in Mathematics and Economics from Vanderbilt University and a Master's degree in Economics from the University of Chicago.

3. I am employed as a consultant on statistical issues, a consultant on actuarial issues, and as a consultant to political campaigns. I have been qualified as an expert on statistical issues in Federal Courts and State Courts.

4. Since 1997, I have been involved in cases involving challenges to the jury lists in Federal and State Courts. I have worked on over 50 cases in Federal Courts.

5. I have been asked by counsel to review the construction and demographics of the jury list that was used in the Fresno Division of the Eastern District of California to select the trial jurors in this case.

### SUMMARY OF FINDINGS

6. The Qualified Jury Wheel for the Fresno Division of the Eastern District of California that was used to select the trial jurors in this case under-represents Male persons, under-represents Black or African American persons, and under-represents Hispanic or Latino persons. The under-representation in each of these groups is statistically significant.

### JURY ELIGIBLE POPULATION OF THE FRESNO DIVISION OF THE EASTERN DISTRICT OF CALIFORNIA

7. The jury eligible population is defined as the population that is age 18 years and older who are citizens of the United States. While there are other requirements to serve as a juror besides age and citizenship, this definition is standard for the analysis of jury lists and is the basis for census numbers on the Administrative Office of the U.S. Courts' Form AO-12 ("Report on the Operation of the Jury Selection Plan"). Form AO-12 is used by federal Courts and Clerks to assess the representativeness of their jury lists.

8. The census numbers used by federal Courts and Clerks are the United States Census Bureau's American Community Survey 5 Year Average. The most current American Community Survey 5 Year Average numbers are for the year 2024. Historically, the American Community Survey 5 Year Average numbers for a year are released in the following year, but as of August 4th, 2026, the United States Census Bureau is determining when the numbers for 2025 will be released.

9. Using the 2024 American Community Survey 5 Year Average numbers, the jury eligible population for the Fresno Division of the Eastern District of California includes 1,887,484 persons and is 46.68% White, 4.64% Black or African American, 1.65% American Indian or Alaska Native, 6.73% Asian, 0.20% Native Hawaiian or Pacific Islander, 19.35% of some other race, and 20.76% multi-racial. The jury eligible population is 46.96% Hispanic or Latino. The jury eligible population is 49.81% Male and 50.19% Female.

10. The census numbers on Part IV of the supplied Form AO-12 for the Master Jury Wheel filled on March 26th, 2025 use American Community Survey 5 Year Average numbers for the year 2020. This analysis will use American Community Survey 5 Year Average numbers updated to the year 2024.

11. Note that as of March 26th, 2025, when the Master Jury Wheel was filled, the 2023 American Community Survey 5 Year Average numbers had been released. The 2023 American Community Survey 5 Year Average numbers were released on December 12th, 2024.

**STATISTICAL ANALYSIS OF THE QUALIFIED JURY WHEEL**

12. The data supplied includes data files for the Master Jury Wheel filled on March 26th, 2025, and Form AO-12 dated December 22nd, 2025, for the Master Jury Wheel filled on March 26th, 2025.

13. It is my understanding that the Master Jury Wheel filled on March 26th, 2025 was used to select the trial jurors in this case.

14. The numbers shown on Form AO-12 for the Qualified Jury Wheel exclude persons who, though qualified to serve, have received an excuse from jury service. At the end of a temporary excuse, the Jury Plan states that the person will be reinstated into the Qualified Jury Wheel.

15. As reflected on Form AO-12, the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors for this case includes 9,072 persons who supplied self-reported racial information and is 60.39% White, 2.63% Black or African American, 3.73% American Indian or Alaska Native, 8.74% Asian, 0.53% Native Hawaiian or Pacific Islander, 17.63% of some other race, and 6.35% multi-racial. The Qualified Jury Wheel includes 9,151 persons who supplied self-reported Hispanic ethnicity information and is 45.26% Hispanic or Latino. The Qualified Jury Wheel includes 9,217 persons who supplied self-reported gender information and is 44.32% Male and 55.69% Female.

16. There are several standard statistical analyses used to analyze the under-representation of a distinctive group. The most common and easiest to calculate are Absolute Disparity and Comparative Disparity. From a scientific perspective, the number of Standard Deviations from Expected shows whether the under-representation of a group is systematic or merely the result of "luck of the draw."

## ABSOLUTE DISPARITY IN THE QUALIFIED JURY WHEEL

17. Absolute Disparity, which is the difference between the percent representation of a group in the population and the percent representation of the same group in the jury list, has the benefit of being very easy to calculate. Once Absolute Disparity is calculated, then there is a judgment of whether the Absolute Disparity is great enough to reflect a non-representative jury list. There is no scientifically determined threshold to reflect a non-representative jury list, only that more Absolute Disparity is worse than less. 10% Absolute Disparity has been put forth in some Courts as a threshold Absolute Disparity reflecting a non-representative jury list. The problem with a threshold of 10% Absolute Disparity is that a distinctive group of less than 10% of the population could be entirely excluded, and still the Absolute Disparity would be less than 10%. Black or African Americans make up 4.64% of the jury eligible population and could be entirely excluded under a 10% Absolute Disparity threshold.

18. The Absolute Disparity for Male persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 5.49% under-representation (49.81% minus 44.32%).

19. The Absolute Disparity for Black or African American persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 2.00% under-representation (4.64% minus 2.63%).

20. The Absolute Disparity for Hispanic or Latino persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 1.69% under-representation (46.96% minus 45.26%).

## COMPARATIVE DISPARITY IN THE QUALIFIED JURY WHEEL

21. In response to the shortcomings of Absolute Disparity, Comparative Disparity has been used to analyze jury lists. As a formula, Comparative Disparity is the Absolute Disparity of a group divided by the population percentage of the group. Comparative Disparity (also known as Relative Disparity), or the rate at which a group is under-represented or over-represented, treats smaller groups in the same way that it treats larger groups. That is, Comparative Disparity takes into account the relative size of the distinctive group. If there is 50% Comparative Disparity under-representation, it reflects that half of the group is missing, whether from a larger group, such as White persons (46.68%) in the Fresno Division, or a smaller group, such as Black or African American persons (4.64%). Like Absolute Disparity, there is no scientifically determined threshold of non-representativeness, except that more Comparative Disparity under-representation is worse than less.

22. Note that, mathematically, since the population percentage of a group can never be greater than 100% or 1.00, Comparative Disparity, which is divided by something less than or equal to 1.00, will always be greater than Absolute Disparity.

23. The Comparative Disparity for Male persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 11.02% under-representation (5.49% divided by 49.81%).

24. The Comparative Disparity for Black or African American persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 43.17% under-representation (2.00% divided by 4.64%). That is, more than a third of Black or African American persons expected are missing.

25. The Comparative Disparity for Hispanic or Latino persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors is 3.61% under-representation (1.69% divided by 49.96%).

**STANDARD DEVIATIONS FROM EXPECTED IN THE QUALIFIED JURY WHEEL**

26. Standard Deviation analysis is a widely accepted and fundamental tool used by statisticians to analyze data. Standard Deviation analysis allows statisticians to scientifically determine if the under-representation of a distinctive group is statistically significant or not. That is, in any group drawn from the population, such as a jury list, there are random factors that mean that the demographics of the jury list drawn from the population will not match the population demographics exactly because of "luck of the draw." However, standard deviations allow statisticians to scientifically determine whether the demographics of the jury list diverge substantially enough from the population demographics that the difference is not the product of chance but is systematic. Statisticians use a standard of 2 or 3 standard deviations to determine statistical significance. If there is no systematic under or over-representation of a distinctive group, the divergence of demographics should exceed 2 standard deviations only approximately 5% of the time, while the divergence of demographics should exceed 3 standard deviations only approximately 0.5% of the time. In the same way that the decrease in probability from 2 standard deviations to 3 standard deviations from expected is much greater than 1.5 times (or 3/2 times), higher standard deviations from expected exponentially reduce the probability. The probability of more than 5 standard deviations from expected is practically 0.00%.

27. The percentage of Male persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors differs from the percentage of Male persons in the jury eligible population by more than 10 standard deviations. The under-representation of Male persons is statistically significant. That is, the under-representation is a product of a systematic non-random factor.

28. The percentage of Black or African American persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors differs from the percentage of Black or African American persons in the jury eligible population by more than 9 standard deviations. The under-representation of Black or African American persons is

statistically significant. That is, the under-representation is a product of a systematic non-random factor.

29. The percentage of Hispanic or Latino persons on the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors differs from the percentage of Hispanic or Latino persons in the jury eligible population by more than 3 standard deviations. The under-representation of Hispanic or Latino persons is statistically significant. That is, the under-representation is a product of a systematic non-random factor.

30. Below is a summary of the statistical analysis of the Qualified Jury Wheel for the Fresno Division that was used to select the trial jurors.

| | Male Persons | Black or African American Persons | Hispanic or Latino Persons |
|---|---|---|---|
| 2024 Fresno Jury Eligible Population | 49.81% | 4.64% | 46.96% |
| Qualified Jury Wheel | 44.32% | 2.63% | 45.26% |
| Absolute Disparity | -5.49% | -2.00% | -1.69% |
| Comparative Disparity | -11.02% | -43.17% | -3.61% |
| Standard Deviations from Expected | -10.54 | -9.07 | -3.25 |

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 13th day of August 2026

______________________ Jeffrey Martin