ERIC GRANT
United States Attorney
JAMES CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

AMANDA J. KOTULA
Trial Attorney, U.S. Department of Justice
Violent Crime & Racketeering Section
1301 New York Avenue, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 514-3594

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JUSTIN GRAY,<br>a.k.a. "Sidetrack",<br>Defendant. | CASE NO. 1:20-CR-238-JLT-SAB<br><br>UNITED STATES' BRIEF REGARDING ADMISSION OF CO-CONSPIRATOR STATEMENTS IN AN ENTERPRISE TRIAL |

The United States respectfully submits this brief to set forth relevant law governing the admission of co-conspirator statements against Justin Gray at trial, specifically those that Aryan Brotherhood member Frank Clement made to Lana Haley about the money she owed him for the sale of drugs he claimed were his.

The evidence presented at trial thus far establishes that Haley, believing that drugs she had stolen from Allan Roshanski might belong to the AB, contacted Justin Gray and Brandon Bannick to find out if that was the case. In a telephone call with Gray, Gray told her that "someone" would call her back. Shortly thereafter, Frank Clement called her. He said the drugs were his and that she owed him money for them. She was understandably afraid and eventually paid Clement $5,000 through AB associate

Evan Perkins. The AB had decided Haley had AB money and Gray acted deliberately to help the AB's effort to get it, which makes Gray a co-conspirator.

In short, the evidence admitted at trial thus far establishes sufficiently that the Aryan Brotherhood is a criminal enterprise that exists, that Justin Gray knew it and participated in it, and that he sought to advance the AB's interests while doing so, including by assisting Clement to acquire money from drug sales. Under clear precedent then, Clement and Gray are co-conspirators, and Clement's statements made to any party that are in furtherance of that conspiracy qualify as co-conspirator statements, admissible against Gray, under Federal Rule of Evidence 801(d)(2)(e), as non-hearsay statements.

## I. INTRODUCTION

### A. Co-conspirator Statements

Rule 801(d)(2)(E) provides that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). For a statement to qualify as a co-conspirator statement, the government must show by a preponderance of the evidence that (1) a conspiracy existed at the time the statement was made, (2) the defendant and declarant were both members of a conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 833–34 (9th Cir. 2024); *see also Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). In deciding this preliminary question of admissibility, "the court is not bound by evidence rules," Fed. R. Evid. 104(a), and the Court may consider the content of the statement itself as evidence that the speaker joined the conspiracy. *Bourjaily*, 483 U.S. at 181. "The Court has discretion to allow the government to introduce purported co-conspirator statements before the entire foundation is laid, with the understanding that the statements will be stricken if the government does not meet its foundational burden." *United States v. Ortega-Garcia*, No. CR 17-203 DSF, 2017 WL 11439800, at *1 (C.D. Cal. Dec. 11, 2017) (*citing United States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987)).

/ / /

/ / /

**1. Conspiracy**

It is well established among different jurisdictions that the "conspiracy" contemplated by Fed. R. Evid. 801(d)(2)(E) does not only encompass a conspiracy that is charged within an indictment. For purposes of a co-conspirator statement, the question is merely whether "there was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995); *see also United States v. Mazyak*, 650 F.2d 788, 791 (5th Cir. 1981), cert. denied, — U.S. —, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982) ("It is not necessary that the conspiracy upon which admissibility of these statements is predicated be the conspiracy charged."); *See also United States v. Postal*, 589 F.2d 862, 886, n.41 (5th Cir. 1979) ("Nor need the conspiracy or agreement be criminal in nature; it may be in the form of a joint venture"); *United States v. Santiago*, 582 F.2d 1128, 1130 (7th Cir. 1978) ("The co-conspirator hearsay exception applies with equal force to joint ventures"); *United States v. Talbot*, 470 F.2d 158 (6th Cir. 1972) (Finding that even in absence of conspiracy count, extrajudicial declarations made by codefendant outside presence of defendant are admissible); *United States v. Adkins*, 842 F.2d 210 (8th Cir. 1988) (Holding that the testimony of coconspirator with regard to statements made by another conspirator, was admissible under coconspirator exception to the hearsay rule, even though testifying coconspirator was not indicted); *United States v. Pimentel-Tafolla,* 60 Fed. Appx. 656, 2003 WL 42274 (9th Cir. 2003) (Statements made by unindicted co-conspirators in course and in furtherance of conspiracy were admissible against defendant). Statements made by unindicted co-conspirators in course and in furtherance of conspiracy were admissible against the defendant. *United States v. Pimentel-Tafolla*, 60 Fed. Appx. 656 (9th Cir. 2003).

This logic extends to gang conduct, in which the members may be involved in multiple separate conspiracies to commit crimes, but the aggregate operation of the gang forms an overarching conspiracy. *United States v. Marino*, 277 F.3d 11, 25–26 (1st Cir. 2002) ("We have already ruled that another conspiracy, larger than the one charged at trial, may provide the basis for the admission of the coconspirator's statements."). Rather, when gang members operate as part of the same gang with "shared common goals," the gang "writ large" and its shared criminal activities are a conspiracy for purposes of a co-conspirator statement. *Id.* at 26.

In light of this, Gray's claim that he is not a part of the conspiracy to help the AB to accrue profits from criminal activity on the streets generally—from drug sales or otherwise—is without merit, especially when compared against the evidence introduced thus far of the existence of the AB criminal enterprise and Gray's knowledge of it, and especially given the evidence of its drug trafficking by a Brother with whom Gray had a long-standing relationship. At trial, the government has presented multiple witnesses to establish the existence of the AB enterprise—including made members and associates, both in and out of prison, all of whom make up the enterprise—and its "shared common goals," which includes anything that enriches or benefits the AB and its members.[1] This includes the drug trafficking and the EDD fraud about which the jury has heard a significant amount of testimony. The AB "writ large" is just like that "other conspiracy, larger than the one charged at trial," discussed in *Marino*, that joins Gray and Clement in a criminal conspiracy. 277 F.3d at 26.

### 2. In Furtherance

Ninth Circuit precedent holds that the spectrum of statements identifiable as being "in furtherance" of a conspiracy is broad. To be "in furtherance" of a conspiracy, "the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy." *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). "Statements made to induce enlistment or further participation in the group's activities are considered to be 'in furtherance' of the conspiracy." *Id.* For purposes of a co-conspirator statement, the question is merely whether "there was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *United States v. Manning,* 56 F.3d 1188, 1197 (9th Cir. 1995). Statements made with the simple aim of keeping another "abreast of the activities of the conspiracy[]" are considered to be in furtherance of the conspiracy. *United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *on reh'g en banc*, 495 F.3d 1094 (9th Cir. 2007); *Yarbrough*, 852 F.2d at 1535. Other examples of statements that satisfy this requirement include statements made to "induce enlistment or further participation in the

[1] Uncontroverted evidence thus far has established that the AB subsumes all white gangs within its operations. Other white gangs are subordinate to the AB, which issues orders to all white criminals, without regard to any other gang affiliation one of those criminals may have. In this way, the AB enterprise is a singular entity for which all white criminals are working, and to which all must pay taxes, or face serious consequences.

group's activities," "prompt further action on the part of conspirators," "reassure members of a conspiracy's continued existence," and to "allay a co-conspirator's fears." *Yarbrough*, 852 F.2d 1535–36 (internal quotation marks omitted).

The statements from Clement to Haley, whether to convince her to hand over drug proceeds, or to threaten her, or both, advance Clement's criminal activities and thus are admissible at trial because they were made to advance the AB's interests.[2] The proof that Justin Gray knew this is that he gave Haley's telephone number to Clement near the time she had told Gray that she feared she was in possession of AB drugs. Gray even alerted Haley that "someone" would call her about the drugs. There can have been no other purpose in Gray's giving Clement Haley's telephone number, other than to get Clement access to the drugs, or the revenue from selling them. In other words, Gray acted to help Clement in his criminal efforts. It was near a certainty that Clement would call Haley and demand the drugs or the money made from selling them – the amount for which Clement ultimately decided was $5,000. Whether or not the drugs ever belonged to Clement does not matter. His aim was to channel the revenue from them to himself, an AB brother. His statements to Haley, therefore, were in furtherance of a conspiracy of which Gray was a part.

Knowingly furthering the interests of an AB brother is sufficient to establish Gray's involvement in the conspiracy. Given the evidence thus far, it is inconceivable that Gray would think that giving Clement Haley's telephone number was for any other reason but to benefit Clement. Under *Bourjaily*, the Court can rely on the uncontroverted facts elicited at trial thus far and find the evidentiary record is more than sufficient to satisfy the preliminary determination that the AB enterprise existed, that Gray knew Clement was a part of that enterprise, and that Gray provided Haley's telephone number to Clement to further Clement's interests and the interests of the AB, by extension. Clement's statements to Haley, telling her to pay him $5,000, were plainly in furtherance of enriching himself and the AB, as but one goal of his statements. It also appears from Haley's testimony that he was indeed trying to

---

[2] Again, the AB's violent reputation is what allows it to order others to carry out its business in the prisons and on the streets. Daniel Rubin testified that the AB is "built on violence." Therefore, a threatening statement from an AB representative is a statement in furtherance of the conspiracy, as it enhances the AB's violent reputation.

recruit her in some form – even if scaring her in the process, which would not appear to be an unintended consequence in context.

**B. Declarant**

The witness from which the co-conspirator statement is elicited need not be a co-conspirator themselves. *United States v. Wolfson*, 634 F.2d 1217, 1219 (9th Cir. 1980) ("when a witness is present at a meeting between a group of conspirators, and they orally, in his presence, agree upon the conspiracy, its objectives, and its modus operandi, the witness' testimony about what each of them said is not hearsay."). Additionally, the defendant need not be present at the time the unindicted co-conspirator made the declaration. *Sendejas v. United States*, 428 F.2d 1040, 1045 (9th Cir. 1970).

Lana Haley, as a person from whom the AB sought first to squeeze money, and later to recruit, witnessed numerous statements from Clement and Gray that qualify as co-conspirator statements, because they were in furtherance of a conspiracy. It is not required that Haley herself have been a participant in the criminal conspiracy, although there is now evidence in the record that she was on some level an unwilling participant. Therefore, Clement's statements to Haley, related to AB business—and all of Clement's statements to Haley the jury has heard thus far have been in furtherance of AB business—are admissible as non-hearsay statements of Gray's co-conspirator.

In short, the government has introduced sufficient evidence to establish each of the three necessary factors permitting admission of co-conspirator Clement's statements through Lana Haley's testimony. *Bourjaily*, 483 U.S. at 181; *United States v. Neal*, 78 F.3d 901, 904-05 (4th Cir. 1996)

Respectfully submitted,

Dated: August 20, 2026

ERIC GRANT
United States Attorney

By: /s/ JAMES CONOLLY
JAMES CONOLLY
Assistant United States Attorney